FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

MAY 2 8 2008

JAMES W. McCORMACK, CLERK
By:_____
DEP CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS

GYRONNE BUCKLEY,                §
                                §
        Petitioner,             §
                                §
    v.                          §      NO. 5 · 0 8 - C V - 0 1 5 7  JLH
                                §
LARRY NORRIS, DIRECTOR,         §
ARKANSAS DEPARTMENT of          §
CORRECTIONS,                    §      This case assigned to District Judge HOLMES
                                §      and to Magistrate Judge RAY
        Respondent.             §

## PETITION FOR WRIT OF HABEAS CORPUS
## PURSUANT TO 28 U.S.C. § 2254

TO THE UNITED STATES DISTRICT COURT:

This petition is brought on behalf of GYRONNE BUCKLEY, Petitioner,

through his counsel of record, J. THOMAS SULLIVAN, an attorney licensed to

practice before the Arkansas Supreme Court and who moves for leave to appear in

this proceeding *pro hac vice.* Petitioner complains of his incarceration in violation

of the protections afforded by the United States Constitution as set forth in this

petition:

1

## JURISDICTION

1.     Petitioner was convicted on an information alleging two counts of delivery of controlled substance, cocaine, in the Circuit Court of Clark County, Arkansas, in Cause No. 99-13 in the Circuit Court of Clark County, Arkansas.  He was sentenced to serve a life sentence on each of the two counts on which he was convicted.  The life sentences were ordered to be served consecutively.

2.     Petitioner's conviction was affirmed on direct appeal by the Arkansas Supreme Court.  However, the Court vacated the consecutive life sentences imposed by the circuit court and remanded for a resentencing proceeding based on improper admission of hearsay during the punishment hearing.  *Buckley v. State*, 341 Ark. 864, 20 S.W.3d 331 (2000) [*Buckley I*].

3.     Following resentencing, Petitioner again appealed.  The court affirmed the 56 year sentence [672 months imprisonment]--two 28 year sentences imposed on the counts on which Buckley was originally convicted, ordered to be served consecutively.  *Buckley v. State*, 349 Ark. 53, 76 S.W.3d 825 (2002) [*Buckley II*]. The mandate was recalled by the Arkansas Supreme Court to permit the filing of a petition for writ of certiorari in the United States Supreme Court.  That Court denied the petition.  *Buckley v. Arkansas*, 537 U.S. 1058, 123 S.Ct. 633 (2002).

4.    Petitioner then filed for post-conviction relief pursuant to Rule 37.1, alleging claims of prosecutorial misconduct arising in the conduct of his original trial and ineffective assistance of counsel at the resentencing proceeding.

5.    The trial court denied relief without ordering an evidentiary hearing or issuing findings of fact, as required by Rule 37.3. The Arkansas Supreme Court remanded the cause for evidentiary hearing and entry of written findings by the court below. *Buckley v. State,* Not Reported in S.W.3d, 2005 WL 1411654 (Ark.) [*Buckley III*]. In remanding, the court noted:

> Appellant's first four points for reversal concern allegations of perjury, and cite to examples in another drug case reviewed by the United States District Court for the Eastern District of Arkansas, where one of the drug task force officers whose testimony was used to convict appellant was found to have committed perjury. In his petition, appellant raised the issue of whether the prosecutor in his trial was aware of that perjury during appellant's trial. The State asserts that constitutional claims challenging the credibility of witnesses and sufficiency of the evidence, citing Gunn v. State, 291 Ark. 548, 726 S.W.2d 278 (1987)(per curiam); Beulah v. State, 352 Ark. 472, 101 S.W.3d 802 (2003); Cigainero v. State, 321 Ark. 533, 906 S.W.2d 282 (1995); and Malone v. State, 294 Ark. 127, 741 S.W.2d 246 (1987). None of those cases are dispositive of the claims here.

6.    The Circuit Court conducted an evidentiary hearing over three days in September, 2005, and then entered findings and conclusions denying relief on the Rule 37.1 petition.  A copy of the circuit court's order including its findings is appended to this petition as Exhibit A. Petitioner appealed from the denial of postconviction relief to the state supreme court.  On appeal, the court held that

issues relating to prosecutorial misconduct and use of false testimony at trial cannot be raised in Rule 37.1 proceedings. *Buckley v. State*, 2007 WL 1509323 (Ark.) [*Buckley IV*]. Instead, the court held that these allegations must be raised by petition for writ of error coram nobis. *Howard v. State,* 367 Ark. 18, --- S.W.3d ---- (2006). A copy of the supreme court's opinion affirming the denial of postconviction relief is appended to this petition as Exhibit B.

7.    Petitioner Buckley petitioned for rehearing which was denied by the Arkansas Supreme Court on September 13, 2007. While his rehearing petition was pending in that court, Petitioner also filed a petition for writ of error coram nobis in the supreme court, pursuant to its decision in *Buckley IV.* The court denied the petition on October 11, 2007. *Buckley v. State*, 2007 WL 2955980 (Ark.) [*Buckley V*]. A copy of the court's order denying the petition for writ of error coram nobis is appended to this petition as Exhibit C.

8.    Petitioner also filed for review by writ of certiorari in the United States Supreme Court from the decision upholding denial of postconviction relief. His petition was denied by the Court on February 19, 2008. *Buckley v. Arkansas*, 128 S.Ct. 1281 (2008).

9.    Petitioner Buckley has been continuously confined in the Arkansas Department of Corrections from the date of his conviction.



10. Petitioner brings this action pursuant to 28 U.S.C. § 2254 and invokes the jurisdiction of this Court to consider his constitutional claims for relief.

11. Petitioner asserts violations of his Fourteenth Amendment right to due process of law as a result of the State's failure to disclose exculpatory evidence and Sixth Amendment right to effective assistance of counsel arising from trial counsel's deficient representation at his resentencing hearing.

12. In this petition for writ of habeas corpus Petitioner cites to the transcripts of trial, the resentencing proceeding on remand from the Arkansas Supreme Court and the evidentiary hearing conducted on remand from that court in support of his factual claims and arguments herein, using the following designations: [T1, 1-10]—original trial; [T2, 1-10]—resentencing hearing; and [T3, 1-10]—evidentiary hearing on Rule 37.1 petition.

## CLAIMS FOR RELIEF

### I.

THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING RULE 37.1 RELIEF BASED ON APPELLANT'S CLAIM THAT THE PROSECUTING ATTORNEY FAILED TO DISCLOSE EXCULPATORY EVIDENCE TO THE DEFENSE, INCLUDING KNOWLEDGE THAT WITNESS KEITH RAY HAD BEEN FOUND TO HAVE COMMITTED PERJURY IN ANOTHER STATE COURT DRUG DELIVERY TRIAL.

II.

THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING RULE 37.1 RELIEF AFTER HEARING BASED ON APPELLANT'S CLAIM THAT OFFICERS BETHELL AND CARD COMMITTED PERJURY IN TESTIFYING FALSELY AT TRIAL AND AS MEMBERS OF THE PROSECUTION'S TEAM, THEIR FALSE TESTIMONY CONSTITUTED A VIOLATION OF BUCKLEY'S RIGHT TO DUE PROCESS OF LAW.

III.

THE CUMULATIVE EFFECT OF THE PROSECUTION'S FAILURE TO DISCLOSE EXCULPATORY EVIDENCE TO TRIAL COUNSEL VIOLATED BUCKLEY'S RIGHT TO DUE PROCESS OF LAW.

[The first three claims are based upon constitutional violations occurring in the original trial that resulted in Petitioner's conviction].

IV.

THE STATE SUPPRESSED THE VIDEOTAPED STATEMENT OF WITNESS LIVSEY THAT WAS IN THE POSSESSION OF THE PROSECUTING ATTORNEY OR MEMBERS OF THE PROSECUTION TEAM, BUT WAS NOT DISCLOSED TO PETITIONER PRIOR TO TRIAL OR AFTER LIVSEY TESTIFIED AT TRIAL.

[This claim is based on disclosures made by an officer who testified to the existence of this videotape at the hearing on Petitioner's application for postconviction relief conducted by the trial court on remand from the state supreme court in *Buckley v. State,* 2005 WL 1411654.]

V.

PETITIONER WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL, AS GUARANTEED BY THE SIXTH AMENDMENT, AT THE RESENTENCING PROCEEDING BECAUSE COUNSEL FAILED TO OBJECT TO THE JURY INSTRUCTIONS OR REQUEST AN INSTRUCTION ON THE BURDEN OF PROOF OF EXTRANEOUS OFFENSES OFFERED BY THE STATE IN PUNISHMENT.

[This and following claims were raised in Petitioner's application for state postconviction relief brought pursuant to Rule 37.1, Arkansas Rules of Criminal Procedure, based on trial counsel's conduct at the resentencing proceeding ordered by the Arkansas Supreme Court in Petitioner's initial direct appeal.]

## VI.

PETITIONER WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL, AS GUARANTEED BY THE SIXTH AMENDMENT, AT HIS RESENTENCING HEARING AS A RESULT OF COUNSEL'S FAILURE TO OBJECT TO ADMISSION OF AN EXTRANEOUS OFFENSE WHOLLY IRRELEVANT TO BUCKLEY'S CULPABILITY.

## VII.

PETITIONER WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL, AS GUARANTEED BY THE SIXTH AMENDMENT, AT THE RESENTENCING PROCEEDING AS A RESULT OF TRIAL COUNSEL'S FAILURE TO OBJECT TO OFFICER CARD'S TESTIMONY CONCERNING HER EFFORTS TO ESTABLISH PETITIONER'S SOURCE OF INCOME AND BUSINESS WHICH LED TO ARGUMENT THAT BUCKLEY WAS A MAJOR DRUG DEALER IN ARKADELPHIA.

## VIII.

PETITIONER WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL, AS GUARANTEED BY THE SIXTH AMENDMENT, AT THE RESENTENCING HEARING AS A RESULT OF TRIAL COUNSEL'S FAILURE TO OBJECT TO THE "GOLDEN RULE" ARGUMENT MADE BY THE PROSECUTOR IN CLOSING.

## IX.

PETITIONER WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL, AS GUARANTEED BY THE SIXTH AMENDMENT, AT THE RESENTENCING HEARING AS A RESULT OF TRIAL COUNSEL'S FAILURE TO OBJECT TO THE PROSECUTOR'S IMPROPER

CLOSING ARGUMENT OUTSIDE THE RECORD THAT PETITIONER HAD BEEN DEALING IN DRUGS FOR TEN YEARS.

### X.

PETITIONER WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL, AS GUARANTEED BY THE SIXTH AMENDMENT, AT THE RESENTENCING HEARING AS A RESULT OF TRIAL COUNSEL'S FAILURE TO TIMELY OBJECT TO IMPROPER QUESTIONING AND ARGUMENT BY THE PROSECUTING ATTORNEY REGARDING HIS ALLEGED DELIVERY OF DRUGS TO REGINALD BRIM LEADING TO A MURDER COMMITTED BY JOHNNY RUCKER.

### XI.

PETITIONER WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL, AS GUARANTEED BY THE SIXTH AMENDMENT, AT THE RESENTENCING HEARING AS A RESULT OF TRIAL COUNSEL'S FAILURE TO OBJECT TO THE TRIAL COURT'S ORDER THATPETITIONER'S SENTENCES BE SERVED CONSECUTIVELY WHERE THE COURT ABUSED ITS DISCRETION IN ORDERING CUMULATION BASED ON SPECULATION ABOUT PRIOR DRUG TRAFFICKING ACTIVITY.

### XII.

PETITIONER WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL, AS GUARANTEED BY THE SIXTH AMENDMENT, AT THE RESENTENCING HEARING AS A RESULT OF TRIAL COUNSEL'S CUMULATIVE DEFICIENCIES IN PERFORMANCE.

### SUMMARY OF THE CASE

*A. Summary of Trial Evidence*

13. The evidence at trial showed that South Central Drug Task Force Agent Ray obtained cooperation from a confidential informant, Livsey, following his arrest

for shoplifting, and that Livsey agreed to make a purchase of cocaine from Buckley under Ray's direction. Ray, a drug agent for the South Central Drug Task Force in Southwest Arkansas, wired Livsey so that other officers could tape the conversation between Livsey and Buckley during the transaction; searched Livsey before the operation to ensure that he had no drugs in his possession; and supplied Livsey with "marked" money to make the purchase. Officers Bethell and Card testified that they were positioned to observe the transaction, which occurred after sunset, from their patrol car at a location later shown to be over 240 yards from Buckley's residence. *Buckley v. State*, 341 Ark. 864, 866, 20 S.W.3d 331, 333 (2000) [hereinafter, *Buckley I*].

14.    Livsey reportedly made two "buys" of crack cocaine from Buckley on successive days, January 12 and 13, 1999. On each occasion he claimed to have purchased two "rocks" of crack cocaine from Buckley for $40 each time. *Id.* at 866-67; 333. The officers obtained a warrant for a search of Buckley's residence based on Livsey's buys, executing it on January 14th, when they recovered a small quantity of cocaine residue on items recovered outside Buckley's residence, but no substantial amount of drugs or money. Moreover, they did not recover the marked money reportedly used by Livsey in the two transactions. *Id.* at 867; 334. The tape recording was barely audible and contained no references to drugs or drug

transactions. This case was prosecuted by then-Clark County Prosecuting Attorney Henry Morgan.

15.    Based on the trial testimony of Ray, Livsey, Bethell, Card and other witnesses, Buckley was convicted at trial and sentenced to a life term for delivery of the controlled substance on both counts, resting respectively on the January 12th and 13th drug transactions. The trial court ordered the terms served consecutively. *Buckley I,* at 871; 336. Buckley, with no prior history of drug or other convictions, *id.* at 867; 334, was ordered to spend the remainder of his life in prison.

*B.    Disposition of Direct Appeal*

16.    On direct appeal, the state supreme court declined to consider Buckley's constitutional challenge to his sentence as "cruel and unusual" under the Eighth Amendment as disproportionate based on the severity of the sentence in light of the relatively minor amount of cocaine involved. *Buckley I,* at 878; 340.

17.    However, the court reversed and remanded for a new sentencing proceeding on a narrower, non-constitutional ground based on the trial court's error in admitting hearsay during the punishment hearing. *Buckley I,* 341 Ark. 864, 866, 20 S.W.3d 331, 333. The objectionable testimony was developed through Agent Ray, who testified that Buckley had been under surveillance of the Drug Task Force during the entire eight years that Ray had been employed and that other

"controlled buys" had been made by informants from Buckley in 1988, 1994, 1995 and 1996 before the Livsey "buys" in 1999. Trial counsel twice objected to admission of this evidence, *Id.* at 873-74; 338, and on cross-examination, Ray admitted that Buckley had never been prosecuted for these offenses and had no prior convictions. *Id.*

18.    While the supreme court did not hold that evidence of other offenses not resulting in conviction or even charging is not admissible in an Arkansas sentencing proceeding, it did find that Ray's testimony concerning the previous drug buys purportedly involving Buckley was not based on his personal knowledge. *Buckley I,* at 874; 338. Consequently, concluding that Ray's testimony concerning Buckley's character was based on hearsay, it reversed for a new sentencing proceeding finding the requisite prejudice in the jury's imposition of life sentences on each of the two counts. *Id.* at 875; 339.

C.    *The proceedings in the Rodney Bragg litigation*

19.    While Buckley's case was pending in the appellate process, the credibility of Agent Ray, upon whose testimony Buckley's convictions had been built, was undermined in a federal habeas action brought by another Arkansas inmate, Rodney Bragg.  Bragg was arrested and prosecuted for sale or delivery of a less than a quarter of a gram of crack cocaine in Nevada County, Arkansas.  Despite the

lack of any prior criminal record for drug trafficking or possession, the trial jury sentenced him to life imprisonment in the Arkansas Department of Corrections. *See Bragg v. State*, 328 Ark. 613, 617, 946 S.W.2d 654, 657 (1997).

20.    The case against Bragg was made entirely through the testimony of Agent Ray, known as "Buck," who testified at Bragg's state court trial that he personally purchased the crack cocaine from Bragg in March, 1993. *Bragg*, 328 Ark. at 618; 946 S.W.2d at 657.    Ray claimed that he was unable to positively identify Bragg at the time of the purchase or thereafter, but made an identification the following year, while supervising another undercover drug buy, this time in Arkadelphia, Clark County.    While observing the transaction, Ray claimed that he noted the license plate number on a vehicle driven by an individual that he remembered having bought the rock of crack cocaine a year earlier in Nevada County. *Id.* at 618, 657.

21.    Ray testified that he ran the license plate number through state automobile registration records and the automobile was linked to Rodney Bragg.    Based on that information, he then claimed that he identified Bragg from a police photograph taken as a result of Bragg's intervening arrest on a domestic battery charge. *Bragg*, 328 Ark. at 618-19, 946 S.W.2d at 657.    Bragg was tried on the drug charge and convicted on the basis of Ray's identification and testimony

12

concerning the 1993 drug transaction.  His direct appeal was affirmed by the Arkansas Supreme Court. *Bragg*, 328 Ark. at 617, 946 S.W.2d at 657.

22.    Bragg was also charged with delivery of cocaine in the Clark County drug transaction based on Ray's report of the undercover drug buy he supervised.  But the prosecuting attorney dismissed the case by nolle prosecui based on his representation that the informant who actually made the purchase refused to testify against Bragg at trial.  The subsequent forfeiture of Bragg's vehicle by Clark County authorities ultimately led to the unraveling of Ray's case that had resulted in Bragg's life sentence.

23.    Bragg filed a federal habeas action challenging his state court conviction and life sentence.  Among his claims of constitutional error were allegations of use of perjured testimony and *Brady* violations. *Bragg v. Norris*, 128 F.Supp.2d 587, 591 (E.D. Ark. 2000).  The district court focused on Agent Ray's state court identification of Bragg as the individual who had purportedly sold him crack cocaine in March, 1993.  Because Ray testified that he did not know this individual, he attempted to identify him through information provided by an informant who had directed him to the residence where he claimed to make the drug buy, but the named individual—"Rodney Mitchel"--proved not be the purported seller when Ray looked at his mugshot. *Id*. at 593.  But evidence

developed at the evidentiary hearing showed that Ray claimed to make the identification of Bragg based on observations at the undercover drug buy he supervised a year later in Arkadelphia, Clark County. At that time Ray claimed to have observed Bragg, recognizing him from the drug transaction a year earlier and checking the license plate on the car driven by the individual involved in the drug transaction, found it to be registered to Bragg. *Id.* at 594. Ray then claimed to have located a police photograph of Bragg and positively identified him as the seller in the March, 1993, Nevada County drug transaction. *Id.* at 594-95.

24. Ray's state court testimony was undone by documentary evidence uncovered by Bragg, himself, in preparing an unsuccessful pro se replevin action. *Bragg v. Morgan,* 2000 WL 1456929, *1 (Ark. App. 2000). Bragg's vehicle had been forfeited in an unconstested proceeding in 1994, after his arrest, pursuant to Ark.Code.Ann. § 5-64-509 (Repl.1997). The lead named defendant, Clark County Prosecuting Attorney Henry Morgan, was also the prosecuting attorney in Petitioner Buckley's case.

25. The district court opinion carefully notes information from Agent Ray's reports purportedly substantiating his testimony against Bragg. *Bragg v. Norris,* 128 F.Supp.2d at 594-95. Contrary to Ray's reports and testimony, the documentary evidence produced by Bragg showed that he purchased the

automobile Ray claimed to have observed him driving at the Arkadelphia drug transaction some three weeks after the date of that purported drug buy. The district court found that the car was purchased on March 22, 1994, and registered the next day, based on the record of the Arkansas Department of Finance and Administration showing issuance of the license tag on March 23rd. *Id.* at 595.

26.    Although Ray was called by the petitioner at Bragg's federal habeas hearing, his testimony did not rebut Bragg's evidence demonstrating falsification of Ray's report of the Arkadelphia drug transaction. He admitted that he had not actually ruled out the suspect identified by his informant by looking at his mugshot after the Nevada County Sheriff's Office confirmed that there were no photographs on file of the individual claimed to have been excluded by Ray. The district court found that "Agent Ray unquestionably tainted the criminal trial by deceiving jurors with his admittedly false testimony that he excluded Rodney Mitchel as a suspect through photographs." 128 F.Supp.2[d] at 595-96. Moreover, the federal habeas court noted that Ray had positively concluded at one point in his investigation notes that Rodney Mitchel and Rodney Bragg were the same person. Thus, his trial testimony that he had excluded Mitchel as the suspect based on the photograph he claimed to have viewed was also misleading. Additionally, Ray admitted that he had testified falsely on this point at Bragg's trial. *Id.* at 596

("Agent Ray further admitted that, when he stated at trial that he excluded Mitchel, he knew that testimony was false.").

27.    Prosecuting Attorney Morgan testified in the *Bragg* case in federal court, admitting that he learned of discrepancies in Officer Ray's reports concerning the Arkadelphia case in which Bragg was charged as a result of the replevin action. Morgan admitted that his investigation did not produce an acceptable explanation for the discrepancies in Ray's reports concerning Bragg's possession of the vehicle which was subject of the replevin action and that Ray's identification of the vehicle by its license plate number, XOM 157, was "crucial" to his case against Bragg. *Bragg v. Norris*, 128 F.Supp.2d at 596-97. Consequently, Morgan testified that he confronted Ray and his supervisor, Rip Wiggins, with the discrepancy and when Ray was not able to offer a credible explanation, Morgan told Ray that "he would no longer use Ray's testimony to prosecute cases." *Id.*  But, in fact, Morgan had already used Ray's testimony the previous month to convict Petitioner Buckley.

28.    Ultimately, the United States District Court concluded that Ray had committed perjury in *Bragg* and ordered him released, a ruling that was not appealed by the Arkansas Attorney General. *Bragg v. Norris*, 128 F.Supp.2d at 605.

D.    *The Resentencing Proceeding and Second Direct Appeal in* Buckley

29.    At the resentencing proceeding, the prosecution presented a different punishment case without calling Agent Ray as a witness. *Buckley v. State*, 76 S.W.3d 825 (Ark. 2002) [hereinafter, *Buckley II,*]. This time the jury imposed 28 year sentences on each count which the trial court again ordered to be served consecutively.    Ray was not called as a State's witness because, during the intervening period, he had been found to have committed perjury in the *Bragg* case, resulting in Bragg's release confinement on the life sentence he was serving. *Bragg v. Norris*, 128 F.Supp.2d at 595-96.    At the resentencing proceeding, Buckley himself told the trial court that he wanted to call Agent Ray as a witness because his trial attorney declined to do so.    Buckley sought to avoid resentencing by a newly-empanelled jury, moving the court to sentence him under the state's sentencing guidelines, as the supreme court explained.

30.    Prior to the resentencing trial, Buckley filed a motion with the trial court in which he attempted to waive a jury for sentencing. He asked the trial court to give him the minimum sentence available under the sentencing grid, and he claimed that he would be prejudiced because the same jury that found him guilty would not hear the testimony offered in the resentencing trial. Particularly, Buckley noted that the testimony and credibility of Keith Ray, a Drug Task Force officer on

17

whose testimony the State had relied heavily at the first trial, had been discredited in an unrelated federal habeas corpus proceeding. The State refused to agree to waive jury sentencing, and the trial court denied the motion on the ground that the State has a right to a jury trial. The court also ruled that either party could call Ray as a witness. *Buckley II*, 76 S.W.3d at 829.

31.     During the course of the resentencing proceeding, the prosecuting attorney engaged in numerous acts of misconduct that were not subject to objection by defense counsel.  On appeal, Buckley raised a number of unpreserved claims as fundamental error based on the conduct of the resentencing hearing, while conceding that these claims had not been preserved by timely objection at trial. The supreme court applied its traditional policy of rejecting unpreserved claims as "fundamental" or "plain" error, *Buckley II*, 76 S.W.3d at 832, holding that the limited Arkansas rule affording review of unpreserved issues on appeal did not apply and declined to consider them on the merits due to counsel's failure to preserve error by timely objection. Instead, it held that the proper forum for raising the claims is by collateral attack in the postconviction process afforded by Arkansas Criminal Procedure Rule 37.1. *Buckley II*, 76 S.W.3d at 833.

32.     The Supreme Court denied Buckley's certiorari petition arguing these unpreserved claims as federal constitutional issues subject to fundamental error review. *Buckley v. Arkansas*, 537 U.S. 1058 (2002).

E.     *Buckley's Rule 37.1 litigation*

33.     Following affirmance on his appeal from the resentencing proceeding and denial of certiorari relief by the Supreme Court, Buckley asserted federal constitutional claims in an application for state postconviction pursuant in a Rule 37.1 action, arguing two general theories for relief.

34.     Buckley first argued that his conviction was tainted by due process violations based on the prosecutor's failure to disclose to defense counsel the prosecutor's actual or imputed knowledge of Ray's perjury in the *Bragg* prosecution. Second, he argued that Officers Bethell and Card testified falsely at trial regarding their claimed observation of the first drug transaction which purported occurred at Buckley's residence on January 12, 1999. Four attorneys who had visited the scene of the offense testified that it was physically impossible for Officers Bethell and Card to have actually observed the transaction from where they stated that they were parked at the time of the claimed offense—some 240 yards from Buckley's front porch, after sunset. Buckley also argued that the

cumulative effect of nondisclosure of Ray's perjury in *Bragg* and the officers' false testimony required relief, relying on *Kyles v. Whitley*, 514 U.S. 419, 421 (1995).

35.    Buckley also argued that trial counsel rendered ineffective assistance at the resentencing proceeding.  He argued counsel was defective in defaulting on the claims raised as matters of fundamental error in *Buckley II* by failing to object to numerous instances of prosecutorial misconduct, resulting in the supreme court refusing to consider Buckley's issues on the direct appeal following the resentencing proceeding.

36.    The trial court initially rejected Petitioner's claims in the application by postconviction relief by summarily denying relief without conducting an evidentiary hearing or entering written findings, as required by Rule 37.3(a).  On appeal, the supreme court found the court failed to comply with the requirement for entry of written findings when postconviction relief is denied with evidentiary hearing and remanded the cause for hearing. *Buckley v. State*, 2005 WL 1411654, *1 (Ark.) [*Buckley III* ].

37.    On remand, the Clark County Circuit Court conducted a three day evidentiary hearing at which both the Petitioner and Prosecuting Attorney presented testimony and documentary evidence on all claims raised in Buckley's Rule 37.1 petition.

38.   Petitioner called four attorneys who testified concerning the accuracy of trial testimony related by Officers Bethell and Card, each of whom had visited the scene and attempted to duplicate their observations forming the basis of their testimony at the original trial and the resentencing proceeding.   Each attorney testified that it was not physically possible to duplicate the observations claimed by Officer Bethell and Agent Card in their testimony at trial and at the resentencing proceeding based on the distance at which they testified they observed interaction between Livsey and Buckley on the front porch of Buckley's residence.

39.   Petitioner's evidence showed that the distance between the location of Officers Bethell and Card and the Buckley residence was at least 240 yards, measured by an electronic range finder.   Bethell testified that he did not have binoculars when he made his observations; Card stated that she used binoculars, but also testified that she was operating the tape recorder receiving the transmission from the wire worn by Livsey at the same time.

40.   Each of Petitioner's attorney witnesses also testified that they attempted to duplicate Card's observations using binoculars, but were unable to do so at the distance involved.

41.   Further, the trial court took judicial notice of US Naval Observatory data showing that the controlled buy and observations made by Bethell and Card

21

occurred after sundown on the date of the first claimed transaction. The testimony also showed that the sunset occurred behind the Buckley residence, so that the front porch was totally shaded at the time of sunset on that date.

42. Petitioner also presented extensive testimony concerning the allegations of misconduct of Agent Ray in the Rodney Bragg prosecution and the knowledge of this misconduct by Prosecuting Attorney Morgan that led to his dismissal of Ray as a prosecution witness in Clark County cases approximately six weeks after Ray testified against Buckley at trial.

43. Petitioner also established through the testimony of trial counsel that Morgan never disclosed knowledge of Ray's false report and perjury in the *Bragg* case to him prior to, during, or after the trial of Petitioner's case.

44. Although the state supreme court did not expressly remand the case for hearing on the allegations of ineffective assistance in counsel's representation in the resentencing hearing, Prosecuting Attorney Morgan called counsel to testify in response to the allegations advanced by Petitioner in the Rule 37.1 petition.

45. Undersigned counsel, who testified as a witness for Petitioner in the Rule 37.1 hearing, was also questioned by Prosecuting Attorney Morgan as to the allegations of ineffective assistance in the resentencing proceeding. Petitioner

qualified undersigned counsel as an expert witness and elicited additional testimony from undersigned counsel in response.

46.     The circuit court then entered written findings and denied relief on all claims raised by Petitioner.

F.      *Disposition of the appeal from denial of Rule 37.1 relief*

47.     On appeal from the denial of Rule 37.1 relief, the Arkansas Supreme Court, upheld the denial of relief by the trial court.

48.     With respect to the misconduct claims predicated on the State's failure to disclose evidence of Ray's misconduct in the *Bragg* case, the supreme court upheld that denial of relief. *Buckley v. State*, 2007 WL 1509323 (Ark.) [*Buckley IV*].

49.     The supreme court held that claims of misconduct based on the prosecutor's duty to disclose exculpatory evidence cannot be raised in a Rule 37.1 petition, applying *Howard v. State*, 367 Ark. 18, --- S.W.3d ---- (2006), in holding "that claims of prosecutorial misconduct are not cognizable in a proceeding pursuant to Rule 37.1." *Buckley IV*, at *2.

50.     The supreme court explained its rationale for its application of *Howard* to Petitioner's case, which had been pending and remanded by the court for evidentiary hearing prior to the decision in *Howard*:

> Prior to that decision and our order remanding for findings of fact, we had disposed of a number of claims in Rule 37.1 proceedings without directly

addressing that issue, and the State had conceded what was, at the time, the open possibility that we might entertain claims of prosecutorial misconduct in the form of perjury in a Rule 37.1 proceeding. Our decision in Howard now forecloses further consideration of those claims in this proceeding. A petitioner may seek relief for prosecutorial misconduct at trial, in a motion for new trial, or through error coram nobis proceedings, but not through a petition for postconviction relief under Rule 37.1.

*Buckley VI*, at *2.

51.     The court held that Petitioner's claim that newly discovered evidence of Ray's misconduct warranted relief even if it did not demonstrate prosecutorial misconduct constituted an impermissible attack on the judgment and, likewise, was not cognizable under Rule 37.1. *Buckley IV*, at *2.

52.     The supreme court also rejected each of Petitioner's claims relating to counsel's defective performance at the resentencing proceeding. *Buckley IV*, at *3--*7.

53.     The supreme court did decline to review two of these claims on the merits based on its conclusion that the circuit court had failed to rule specifically on those claims. These claims related to counsel's failure to request a jury instruction on the burden of proof the prosecution was required to meet before the jury could use evidence of other criminal offenses in determining the proper sentence and counsel's failure to object to trial court's order that Petitioner's sentences be served consecutively. *Buckley IV*, at *3. The court held that Petitioner's failure to secure

a ruling specifically denying relief on those two claims precluded appellate review on appeal from the order denying relief on the petition. *Id.*

54.   In concluding its decision, the supreme court did not rest its rejection of Petitioner's claims relating to prosecutorial misconduct or the newly discovered evidence of Ray's perjury on procedural default of these claims. Instead, the court specifically upheld the denial of relief ordered by the trial court:

> The trial court was not clearly erroneous in denying appellant's claims of prosecutorial misconduct or newly discovered evidence, or in finding that counsel was not ineffective. Having found no reversible error in the trial court's order, we affirm the denial of postconviction relief.

*Buckley IV*, at *7.

55.   Petitioner filed a petition for rehearing from the supreme court's decision specifically addressing the court's refusal to consider the trial court's denial of relief on the two claims of ineffective assistance referred to in ¶ 53 in this petition as an improper application of procedural default principles. The court denied the petition for rehearing on September 11, 2007, and Petitioner filed his petition for certiorari in the United States Supreme Court, which denied relief. *Buckley v. Arkansas*, 128 S.Ct. 1281 (2008).

G.   *Petitioner's application for writ of error coram nobis*

56.   Following denial of relief on appeal in *Buckley IV*, Petitioner filed his motion for leave to file petition for writ of error coram nobis and the petition in the

Arkansas Supreme Court while his petition for rehearing was still pending in that court.

57.   In the petition for writ of error coram nobis, filed in response to the court's reliance on *Howard v. State, supra,* and in order to fully exhaust an available state remedy pursuant to 28 U.S.C. §2254(c), Petitioner re-asserted his due process claims arising from the misconduct of the prosecution in relying on the false testimony of Officers Bethell and Card and failure to disclose the perjury of Agent Ray in the *Bragg* case.

58.   In addition, Petitioner raised a claim that the prosecuting attorney's office had failed to produce a videotape of witness Livsey that Agent Card disclosed during the evidentiary hearing on the Rule 37.1 petition.   Petitioner included the affidavit of hearing counsel, Patrick Benca, who stated that the prosecutor had agreed to make the tape available to Petitioner following the hearing, but that the disclosure had never been made.

59.   The supreme court treated the petition as a motion to reinvest the trial court with jurisdiction to consider the writ.   *Buckley v. State,* 2007 WL 2955980 (Ark.) [*Buckley V*], at *1.

60.   The court held that Petitioner failed to show due diligence in asserting his claims relating to the testimony of Officers Bethell and Card and Agent Ray's perjury in the *Bragg* case. *Buckley V*, at *2.

61.   With respect to the claim that Officers Bethell and Card testified falsely at Petitioner's trial, the court concluded that this testimony was subject to impeachment at trial and that trial counsel, who testified at the Rule 37.1 hearing, did attempt to impeach their testimony, but that the issue had not been raised on direct appeal. *Buckley V*, at *2.

62.   The court then held that because the federal habeas court's decision in Bragg was handed down in 2000, Petitioner "delayed filing his request for error coram nobis relief for over six years." The court acknowledged that Petitioner had raised this issue by Rule 37.1 and that it had rejected the State's argument that a claim of prosecutorial misconduct was not cognizable in Rule 37.1 in remanding for the evidentiary hearing ordered in *Buckley III*. *Buckley V*, at *3.

63.   The court, however, concluded that Petitioner had mistakenly assumed that its decision to remand recognized Rule 37.1 as a proper procedural vehicle for litigating his misconduct claims. It did so by noting that Petitioner had not raised an issue regarding availability of coram nobis as a remedy for misconduct claims, then observed that the court itself had not resolved the issue until its decision in

27

*Howard v. State, supra*, issued in 2006. It conceded that the question of whether

Rule 37.1 provided an appropriate forum for litigating claims of prosecutorial

misconduct in failing to disclose exculpatory evidence was an "open question." It

also held that it had declined to consider the question when remanding the Rule

37.1 proceedings for an evidentiary hearing over the State's objection.

64.    In addressing the State's argument on appeal from the initial denial of relief

on Petitioner's Rule 37.1 by the trial court, the supreme court, in fact, had said:

> In his petition, appellant raised the issue of whether the prosecutor in his trial was aware of that perjury during appellant's trial. The State asserts that none of these points should be addressed because they are freestanding constitutional claims challenging the credibility of witnesses and sufficiency of the evidence, citing Gunn v. State, 291 Ark. 548, 726 S.W.2d 278 (1987)(per curiam); Beulah v. State, 352 Ark. 472, 101 S.W.3d 802 (2003); Cigainero v. State, 321 Ark. 533, 906 S.W.2d 282 (1995); and Malone v. State, 294 Ark. 127, 741 S.W.2d 246 (1987). None of those cases are dispositive of the claims here.
>
> *2) Each of the cases cited by the State deals with challenges to the sufficiency of the evidence presented at trial or newly discovered evidence the defendant would offer to support a claim of innocence that are, indeed, direct attacks upon the verdict. It is true that even constitutional issues must be raised at trial or on direct appeal. Williams v. State, 346 Ark. 54, 56 S.W.3d 360 (2001). But, we do not apply that rule in cases where the errors are so fundamental as to render the judgment of conviction void and subject to collateral attack. Sasser v. State, 338 Ark. 375, 993 S.W.2d 901 (1999). Here, the appellant does not challenge the sufficiency of the evidence at trial, but alleges that the evidence consisted of perjury resulting from prosecutorial misconduct at the time of trial, and as such may be cognizable under Ark. R.Crim. P. 37.1.



The State acknowledges that perjury claims may be cognizable under Ark. R.Crim. P. 37.1, but asserts the present case is not supported by more than opinion testimony, citing us to Campbell v. State, 264 Ark. 575, 572 S.W.2d 845 (1978). Again, appellant's claims focus on prosecutorial misconduct, and appellant has supported his allegation with his citation to Bragg v. Norris, 128 F.Supp.2d 587 (E.D.Ark.2000). In Bragg, the prosecuting attorney at trial, who was also the prosecuting attorney in appellant's trial, indicated that, prior to the date of appellant's trial, he had at least become aware through a replevin action of evidence of misconduct by the police officer in the Bragg case. The misconduct by the officer was detailed by the district court, included knowingly giving false testimony against the defendant, and was found to constitute perjury.

In Andrews v. State, 344 Ark. 606, 42 S.W.3d 484 (2001), the appellant also claimed that the State had withheld exculpatory evidence. There, as here, the State advanced the argument that the claim was not cognizable under the postconviction relief rules. But, in Andrews, we were able to affirm the trial court's holding that there was no showing of prosecutorial misconduct because the testimony at the postconviction relief hearing supported those findings. Here, we do not have the court's findings, and no hearing was conducted.

*Buckley III*, at *1--*2.

65.    The court declined to review Petitioner's first two claims in the petition for writ of error coram nobis on the merits, holding that he "could have pursued the writ while the Rule 37.1 proceedings were pending, but elected not to do so." *Buckley V*, at 3.

66.    The court did hold that Petitioner had exercised due diligence in attempting to present his third claim relating to the videotape of Livsey not previously disclosed to defense counsel. However, without the tape itself in evidence, it held

that the claim was not meritorious because he could not demonstrate that the videotape was exculpatory under the standard for disclosure set out in *Brady v. Maryland*, 373 U.S. 83 (1963). *Buckley V*, at 4.

67.    The supreme court denied the petition treated as a petition to reinvest the trial court with jurisdiction to consider coram nobis relief. *Buckley V*, at 5.

## SUMMARY OF PETITIONER'S CLAIMS FOR RELIEF

68.    In this petition Buckley challenges disposition of his federal constitutional claims brought in state proceedings. His first three claims arise from the State's failure to disclose to the defense prior to trial Agent Ray's perjury committed in the *Bragg* prosecution, the reliance on the false trial testimony of Officer Bethell and Agent Card, and failure to disclose the videotape of the informant, Livsey. His other claims address the rejection of his ineffective assistance claims based on counsel's conduct at the re-sentencing proceeding ordered by the state supreme court after reversing the two life sentences imposed at trial based on improperly admitted hearsay through Agent Ray concerning his claim of Buckley's extensive drug activity.

## ARGUMENT IN SUPPORT OF THE WRIT

### I.

THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING RULE 37.1 RELIEF BASED ON APPELLANT'S CLAIM THAT THE PROSECUTING ATTORNEY FAILED TO DISCLOSE EXCULPATORY EVIDENCE TO THE DEFENSE, INCLUDING KNOWLEDGE THAT WITNESS KEITH RAY HAD BEEN FOUND TO HAVE COMMITTED PERJURY IN ANOTHER STATE COURT DRUG DELIVERY TRIAL.

*Summary of Material Facts*

69.     Subsequent to Buckley's trial, South Central Drug Task Force Agent Keith Ray was found to have committed perjury in another state court drug trial involving an undercover buy from Rodney Bragg.   Bragg who prevailed in a federal habeas action on proof that Ray fabricated evidence and perjured himself in Bragg's Nevada County trial.  *Bragg v. Norris*, 128 F.Supp.2d 587, 605 (E.D. Ark. 2000).  Ray was in charge of the undercover buys in Buckley's case and directed witness Livsey, who participated in the buys in exchange for non-prosecution of charges stemming from a shoplifting arrest and for a cash reward. [T/447-53].

70.     Prosecuting Attorney Morgan testified at the federal hearing in *Bragg* that he learned of Ray's falsification of evidence in a *Clark County* case Ray had made against Bragg. [DEF. EX. 3, Transcript of Morgan testimony in *Bragg v. Norris*, at 22-25; T3, 517]  Morgan  nolle prossed that case in 1995 [ST. EX.1, Time Line; T3, 510] and was later served with a replevin action filed by Bragg for return of his

31

automobile seized at the time of his arrest. [DEF. EX. 3, 21-22/ T3, 517]. Bragg filed his replevin action in 1998 and Morgan answered on March 18, 1998. [T; 80].

71.    Morgan testified in federal court that he confronted Ray on July 6, 1999 concerning his activities, leading to Ray's August 25, 1999, resignation as a law enforcement officer.  128 F.Supp.2d at 596-97.  Morgan testified at the hearing that confronted Ray after Buckley's trial. [T3, 325-335].  He denied having knowledge of Ray's perjury in the *Bragg* case prior to that time. [T3, 334].  Morgan admitted that he never notified the trial court, the Attorney General or anyone else when he learned of Ray's perjury in the Bragg case. [T3, 336-337].

72.    Morgan never told trial counsel Porter about information he learned about Agent Ray in investigating the Bragg replevin action. [T3, 211-212].

*Disposition of the claim by the trial court*

73.    The trial court rejected Buckley's claim for relief, finding that evidence of Ray's perjury and false statement in the Clark County case involving Bragg constituted impeachment evidence, but not exculpatory evidence, that did not undermine the reliability of Buckley's conviction.  [Exhibit A, Order, ¶ 8].

74.    The trial court addressed the question of the evidence supporting the Bragg replevin claim in its findings, but incorrectly found that Bragg objected that Ray's statement that he learned that Bragg owned the subject vehicle on March 1, 1994

was contained in Bragg's answer to the State's summary judgment filed *on October 26, 1998.* [Exhibit A, Order ¶ 3]. Bragg actually gave notice of this claim on September 4, 1998, as the Clerk's file mark on the Response to Answer to Complaint clearly shows. [DEF. EX. 2, at p. 1].

75.    The court also found that until the investigation of the records after the July, 1999, trial proof that Agent Ray's testimony was false was not *conclusive.* [Exhibit A, Order ¶ 4]. The court then found that Morgan did not know of the falsity of Ray's statement until after Buckley's trial. [Exhibit A, Order ¶ 5]. The court also found that Morgan gave notice of Ray's misconduct to counsel before the resentencing hearing, [Exhibit A, Order ¶ 5].

76.    The trial court thus denied relief on Buckley's claim, finding that although the evidence of Ray's perjury would have provided impeachment evidence at trial, the failure of the prosecution to disclose this evidence to trial counsel did not undermine confidence in the outcome because the jury also had the testimony of Bethell and Card, the informant Livsey, and the tape recording of the drug buys. [Exhibit A; Order, ¶ 8].

*Disposition of the claim by the Arkansas Supreme Court*

77.    The Arkansas Supreme Court affirmed the denial of relief by the trial court on the merits, holding:

The trial court was not clearly erroneous in denying appellant's claims of prosecutorial misconduct or newly discovered evidence, or in finding that counsel was not ineffective. Having found no reversible error in the trial court's order, we affirm the denial of postconviction relief.

*Buckley IV*, at *7.

78.    Although the state court's decision appears to rest on multiple grounds, including procedural default in bringing his prosecutorial misconduct in state postconviction proceedings under Rule 37.1 of the Arkansas Rules of Criminal Procedure, this does not constitute an "adequate and independent" state law ground barring federal review for two reasons. First, the court issued a affirming the trial court's ruling denial relief on the merits of Petitioner's federal constitutional claim applying the "clearly erroneous" standard of review. Second, the court's decision admits that its retroactive application of *Howard v. State, supra*, as precedent for denial of relief on the merits, addressed a previously unresolved issue and, consequently, it did not reflect a consistently applied rule of procedural default. Instead, the supreme court's disposition reflects an "exorbitant application" of a "generally sound rule," of procedural default, *Lee v. Kemna*, 542 U.S. 362, 376 (2002). Here, the "rule" that *Brady* misconduct claims are not cognizable in Rule 37.1 proceedings has not been consistently or traditionally applied to default those claims, as the court's opinions in *Buckley II*I and *IV* demonstrate.

34

79.    Because the state court upheld the denial of relief on the merits, its reliance on *Howard* as a bar to review on the merits cannot be seen as a plain statement that its judgment rests on state grounds. *Michigan v. Long*, 463 U.S. 1032, 1042, and n. 7 (1983).

*Standard for federal habeas relief*

80.    In order to obtain federal habeas relief for violation of a federal constitutional right in the course of state criminal proceedings, Petitioner must demonstrate that the state court disposition of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254 (d).

*Argument and Authorities*

81.    Buckley was sentenced on May 27, 1999. [R, 2,]. Thus, within less than two months after Buckley's conviction, Morgan had actual knowledge of Ray's perjury and took action to terminate his relationship with South Central Drug Task Force. 128 F.Supp.2d at 596-97. Morgan had actual knowledge of the replevin action filed by Bragg a year earlier, however, when he filed an answer in that case.

Nevertheless, Morgan never disclosed any information concerning Ray's perjury or his own suspicions to Buckley's trial counsel, Austin Porter. [T3, 211], thus depriving Porter of any opportunity to use the facts in *Bragg* to develop impeachment of Ray at Buckley's trial.

A.    *Buckley's due process claim*

82.    Failure to disclose exculpatory evidence constitutes a 14th Amendment due process violation, *Brady v. Maryland*, 373 U.S. 83 (1963), particularly when that evidence would demonstrate perjury, *United States v. Agurs*, 427 U.S. 97 (1976), or serve to impeach the credibility of a prosecution witness. *United States v. Bagley*, 473 U.S. 667 (1985). Moreover, the undisclosed evidence was certainly known to Ray, a member of the prosecution team. *Kyles v. Whitley*, 514 U.S. 419, 437-38 (1995); *Lewis v. State*, 286 Ark. 372, 691 S.W.2d 864 (1985).

2.    *Application of standard of review for Federal habeas relief*

83.    Petitioner recognizes that federal habeas relief must be predicated on a more rigorous showing than mere error in the disposition of this federal constitutional claim by state courts in the criminal trial and postconviction processes. Instead, the standard for federal habeas relief based on legal error committed by the state courts in considering a preserved federal constitutional claim is whether the state court's disposition:

... resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . .

28 U.S.C. § 2254(d)(1), or resulted in an unreasonable disposition in light of the facts developed in the state court proceedings. *Id.* at (d)(2).

84.    The state courts' disposition of Petitioner's claim rests on the trial court's erroneous view of controlling United States Supreme Court precedent in several significant respects.

85.    Buckley argued that Agent Ray's perjury in the Rodney Bragg case was material to his credibility at Buckley's trial and that the State violated his right to due process of law in failing to disclose evidence relating to Ray's act in filing a false report to trial counsel prior to the original trial in this case. The state post-conviction court recognized that while the filing of the false report in the Bragg prosecution did not constitute "exculpatory information, it would certainly have been used for impeachment purposes by the Defendant's Attorney." [Exhibit A, ¶ 8].

86.    Nevertheless, the state post-conviction court denied relief for two different reasons. First, it concluded that prosecutor Morgan did not actually learn that Ray had filed a false report until he investigated Bragg's claims in his replevin action following Buckley's conviction. [Findings, Exhibit A, at ¶¶ 3-5]. Second, it

concluded that while evidence of Ray's false report could have been used to impeach Ray's trial testimony, the non-disclosure was not harmful because the jury also heard evidence from Livsey, Officers Bethell and Card, and the tape recordings of the purported drug transactions.

> A.    The trial court misconstrued Supreme Court precedent regarding the due process requirement for disclosure of favorable evidence

87.    The trial court's findings demonstrate an almost total misreading of key components of the prosecutor's duty to disclose favorable evidence to the defense articulated in the Supreme Court's decisions, especially *Brady v. Maryland*, 373 U.S. 83 (1963) and *Kyles v. Whitley*, 514 U.S. 419 (1995).

88.    First, the court found that there was no willfulness in the failure to disclose evidence relating to Ray's perjury in *Bragg* that would have been relevant to impeach his trial testimony against Buckley. But the Court held in *Brady* 373 U.S. at 87, that the prosecutor's bad faith or lack of it is not necessarily an issue in the determination as to whether a failure to disclose evidence favorable to the defense violates due process. *Accord, Illinois v. Fisher*, 540 U.S. 544, 547 (2004) ("We have held that when the State suppresses or fails to disclose material exculpatory evidence, the good or bad faith of the prosecution is irrelevant: a due process violation occurs whenever such evidence is withheld.").

38

89.    Second, the court found that prosecutor Morgan did not have actual knowledge of Ray's perjury in *Bragg* until he investigated the underlying claim and documentary evidence developed in Bragg's replevin action. [Findings, Exhibit A, ¶¶ 3-5]. Proof of the prosecutor's actual knowledge of the evidence subject to disclosure is not required under the Court's decision in *Kyles v. Whitley*, 514 U.S. at 437-38, because evidence known to the police, as members of the prosecution team, is imputed to the prosecutor.    Arkansas had previously adopted this approach.  *Lewis v. State*, 691 S.W.2d 864 (1985); *Williams v. State*, 593 S.W.2d 8 (1980).  Here, Ray clearly knew of his own perjury in the *Bragg* case, as the District Court concluded in summarizing his admissions of false testimony in *Bragg v. Norris*, 128 F.Supp.2d at 595-598.  Under *Kyles*, Ray's own knowledge is imputed to the prosecutor, Morgan, regardless of his actual knowledge of Ray's perjury.

90.    Third, Morgan was certainly under a duty to determine whether there was evidence subject to disclosure, having been made aware of the allegations in Bragg's replevin action that would have established Ray's culpability in filing the false report leading to Bragg's arrest for a drug offense in Clark County.  The record in the court below shows that Bragg served copies of the documentary evidence establishing Ray's misrepresentations in filing the false report on Morgan

in the replevin action in September, 1998, some four months before Buckley's arrest in the sting supervised by Ray. [DEF. EX. 2 and 3, Bragg v. Norris Tr. 22-25; Tr. Vol. 3, at 517]. Prosecutor Morgan, like any other party personally served in a civil action cannot plead that he did not have constructive notice of Bragg's documentary evidence until he investigated the case following Buckley's trial and the trial on Bragg's replevin action in July, 1999.

91. Instead, Morgan was under a duty to investigate allegations concerning Agent Ray once he was placed on notice of Ray's falsification of an official report. *Kyles*, 514 U.S. at 437-38 (requiring prosecutor to determine existence of favorable evidence). Moreover, Rule 17.3 of the Arkansas Rules of Criminal Procedure, expressly directs the prosecuting attorney to make a diligent effort to determine the existence of favorable evidence in the possession of law enforcement officials or other governmental personnel. Here, Morgan failed to investigate Ray's credibility after being placed on notice that Ray had falsified the arrest report leading to Bragg's Clark County arrest that would have confirmed that Ray had, indeed, falsified the record. Had he done so, the same evidence he used to discredit Agent Ray after Buckley's conviction would have been in Morgan's actual possession or knowledge before the Buckley trial, subject to the constitutional disclosure duty.

92.    The state post-conviction court's analysis of controlling United States Supreme Court precedent defining the scope of the prosecution's duty to disclose exculpatory or impeachment evidence was wholly flawed.    Thus, its legal reasoning, affirmed by the state supreme court, was directly contrary to or constituted an unreasonable application of Supreme Court precedent.

> B.    *The trial court's prejudice analysis was based on an incorrect reading and application of Supreme Court precedent regarding the requirement for establishing a due process violation based on failure to disclose favorable evidence.*

93.    Moreover, the post-conviction court applied an incorrect standard in finding that Buckley suffered no prejudice as a result of the State's failure to disclose Ray's perjury in the *Bragg* case.  The court concluded:

> . . . there was sufficient credible evidence presented at the trial independent of Agent Ray's testimony to sustain the jury's verdict and the sentence of the Court.

[Exhibit A, at page 6].  The prejudice requirement for demonstrating a due process violation is not couched in terms of sufficiency of evidence to support conviction, however, and the Court expressly rejected any showing of evidentiary insufficiency as a requirement in *Kyles*. 514 U.S. at 434-35, esp. n. 8.  The fact that the evidence was otherwise support conviction does not negate the inference that there was a reasonable probability that disclosure of Ray's falsification of the record in Bragg would have resulted in a different outcome had Buckley's trial

counsel impeached Ray's trial testimony with that information. Similarly, disclosure of Ray's perjury during the Bragg state drug trial would have likely impacted the verdict or sentence, if any, imposed against Buckley.

94.    The post-conviction court wholly failed to apply the "reasonable probability" test consistently used by this Court to determine whether non-disclosure violates an accused's right to due process. *Bagley*, 473 U.S. at 682; *Kyles*, 514 U.S. at 437. The fact that other evidence might have supported conviction even had Ray been impeached with his misconduct in the *Bragg* case does not negate the likelihood that the impeachment would have made a difference in the outcome of Buckley's own case. The postconviction court's conclusion was based on a standard *contrary to* Supreme Court precedent established in *Kyles, supra,* demonstrating legal error meeting the standard for federal habeas relief under Section 2254(d)(1).

95.    In addition, the state post-conviction court's conclusion that the non-disclosure was not prejudicial reflects an unreasonable application of the *Brady/Kyles* rule in light of the facts. The court concluded that the testimony of Livsey, Officers Bethell and Card, and the tape recording of the drug buys were sufficient to support the jury verdict. The court concluded:

> The information of Agent Keith Ray's false statement in a 1994 drug report
> was   not exculpatory information, but would certainly have been used for

impeachment purposes by the Defendant's Attorney. However, this evidence did not undermine the confidence in the outcome of the trial and there was no prejudice to the Defendant because the jury heard the testimony of Officer Bethell, Officer Card, and Cory Livsey and heard the tape recording and was able to judge the credibility of the evidence. The tape recording of the drug buys, which was monitored by Officers Bethel (sic) and Card, supports the credibility of their testimony.

[Findings, Exhibit A, ¶ 8].

96.　But, in fact, the supporting evidence relied upon by the post-conviction court was so flimsy that its findings are wholly lacking in credibility. The transcripts of trial, [hereinafter T1/page], and the evidentiary hearing, [T3/page] show the following:

### (1).　Testimony of Officers Bethell and Card

97.　First, Officers Bethell and Card, parked 240 yards from the front porch of Buckley's residence never testified to any personal knowledge of the transaction. They observed Livsey go to the porch and saw another man on the porch after Livsey apparently knocked on the door. But the transaction itself, according to Livsey, occurred inside the residence, outside of the view of Bethell and Card. [T1/358, 507-08].

98.　Agent Card admitted at the post-conviction hearing that she was mistaken with respect to the sequence of events she testified at trial she had seen during the January 12th controlled buy. [T3/454-455]. She testified at trial that she observed

43

Buckley reach up into the rafters on his front porch and this provided probable cause for the search warrant of his residence. [T1/498]. Yet, she admitted at the evidentiary hearing that she did not include any reference to seeing Buckley reach up to the rafters on his front porch in her official report. [T3/438]. Instead, she admitted that she had testified that she saw someone, a large person, reach up into the rafter, rather than identifying this individual as the Petitioner. [T3/453-54].

99.    Officers Bethell and Card provided no direct evidence relating to the drug transaction since they never testified that they could or did observe the transaction, nor properly identified Buckley as the individual in the residence.

(2).    Testimony of informant Livsey

100.    Livsey himself testified that he participated in the buys because he had been arrested for shoplifting and police agreed to drop the charges in return for his help; that in addition, he was paid $100 to participate; that he had prior felony convictions in Illinois and pending felony charges at the time of trial. [T1/386-89; 401].

101.    Livsey's credibility was significantly undermined by impeachment relating to his prior convictions and motive to testify based upon the fact that he participated in the sting in order to avoid prosecution on a shoplifting charge that

44



he said police claimed to charge as a burglary due to his flight and payment for participation in the sting.

### (3).   Tape recording of drug transactions

103.   The state post-conviction court's prejudice analysis is significantly flawed by its wholly inaccurate view of the evidence, including the tape recording of the purported transactions.   The court concluded that the tape recording corroborated the testimony of witnesses Bethell, Card and Livsey.   But, the tape contained no references to drugs or money, as the informant, Livsey, testified at trial.   [T1/393]. And, the court's reliance on the tape recording as credible evidence supporting the live testimony is contrary to the state supreme court's conclusions.   On the initial direct appeal, that court noted:

> According to Livsey, he pulled forty dollars from his pocket and asked to buy crack cocaine, using slang terms to ask for the drugs.   *The audio tape, however, itself contained no conversation clearly indicating that a drug transaction was taking place.*

*Buckley I*, 20 S.W.3d at 833. (emphasis added).   The court drew the same conclusion in its order affirming the denial of post-conviction relief:

> Livsey testified that he made the buys using slang terms, *but the tape did not contain conversation clearly indicating that a drug transaction was taking place.*

*Buckley IV*, 2007 WL 1509323, *3. (emphasis added).

### (4).    Evidence of Ray's lack of credibility

104.   Ray's involvement in the undercover drug buy purportedly made by the confidential informant, Livsey, was substantial.  First, Officer Bethell admitted that Ray was the only officer in contact with the informant, Livsey, before and after the purported undercover cocaine buy.   [T3/380].   Second, Ray managed the controlled buy, according to his own trial testimony, [T1/447-54], and the prosecution vouched for his credibility in closing. [T1/655-59].

105.   In addition, there was a significant discrepancy in the amount of crack cocaine supposedly purchased by Livsey, as testified to by Ray, and the amount recorded by the State Crime Lab forwarded after the purported buys.  The evidence showed that the amount of drugs measured by the State Crime Lab from the two purported controlled buys directed by Ray was less than one/half the amount supposedly sold.  Livsey supposedly bought two rocks of crack cocaine, or .4 of a gram of crack, for $40 on January 12th [T1/391, 394] and made a second purchase of the same amount the next day.  [T1/442-443], meaning that he should have bought a total of .8 of a gram of crack  in the two transactions.  Agent Card testified that each ten dollar purchase would equal roughly .1 of a gram of crack cocaine,  [Tr.3/446], based on her 15 years of experience as an officer.  *But the Crime Lab reported that Agent Ray turned in less than one/half the amount*

*supposedly purchased-- .2 grams on one buy, and .199 gram on the other.* [T3/ 91]. The evidence showed that Agent Ray himself would keep crack cocaine from seizures and use it to pay off informants on occasion. [T3/90]. Agent Card admitted that she was aware that Ray had done that [T3/445-46, 447] and testified at the evidentiary hearing: "Everybody sitting in this courtroom has got access to cocaine." [T3/448].

### *(5).   Findings of federal habeas court in* Bragg v. Norris

106. The federal court's findings of Ray's perjury in *Bragg* went beyond the falsified arrest report in the Clark County case Ray made against Bragg and prosecutor Morgan ultimately dismissed, to include substantial findings of perjury committed by Ray at Bragg's state court trial. These findings by the District Court in *Bragg v. Norris*, 128 F.Supp.2d at 595-598, are consistent with the conclusion that he manipulated Livsey and the circumstances to make a false case against Buckley. The implications logically drawn from his perjury in *Bragg* suggest nothing less than that he manufactured the crack cocaine case against Livsey, using his power of Livsey to gain his cooperation.

*Conclusion*

107. In *Bracy v. Gramley*, 520 U.S. 899 (1997), the Court held that misconduct by the petitioner's trial judge in accepting bribes in other cases bore sufficient

relevance to the judge's possible bias in his own case that the defense was entitled to disclosure of information uncovered during the investigation of the judge relating to his misconduct in those cases. Here, Agent Ray engaged in misconduct in the *Bragg* prosecution, so conclusively established in Bragg's federal habeas litigation that the Attorney General did not even appeal the district court's findings when it ordered Bragg released. The tie between Ray's misconduct to Buckley's prosecution is far stronger than that demonstrated between Bracy and his trial judge because Ray's perjury was disclosed through his actions in a case originally filed, then dismissed, by prosecutor Morgan, who subsequently used Ray's testimony to convict and sentence Buckley. Only after Ray provided this testimony did Morgan proceed to repudiate him for his illegal actions in filing a false report against Bragg.

108. If due process considerations compelled disclosure of the judicial misconduct in *Bracy*, then those considerations certainly compel the disclosure to the defense of perjury committed by a member of the prosecution team in another case. 520 U.S. at 905 (rejecting argument that petitioner's theory was "too speculative" to warrant relief). Petitioner recognizes, of course, that *Bracy* only ordered discovery of the potentially exculpatory material, whereas here, he seeks relief. But on these facts, even as found by the state post-conviction, relief is

48

warranted on his claim precisely because Ray's perjury in *Bragg* would have provided significant impeachment evidence subject to the disclosure duty under *Bagley v. United States,* 473 U.S. 667, 682 (1985)..

109. Any other view of the prosecution's disclosure duty would constitute an unreasonable interpretation of the Court's holding in *Kyles v. Whitley*. Petitioner Buckley now argues that the Court should grant certiorari and in ordering relief, make explicit the rule that non-disclosure of perjury committed by a member of the prosecution team, when relevant or admissible as impeachment evidence, constitutes a due process violation regardless of the prosecuting attorney's actual knowledge of that perjury, if non-disclosure meets the *Brady/Kyles* test for probable prejudice.

110. Here, the disposition of Petitioner Buckley's federal constitutional due process claim by the state courts reflects egregious error in interpretation and application of controlling United States Supreme Court precedent governing *Brady* claims. Not only does the record unequivocally demonstrate a *Brady* violation in the failure to disclose Ray's perjury in the *Bragg* prosecution—as established by the findings of the United States District Court in *Bragg v. Norris*—also was so unreasonable as to constitute error warranting the grant of habeas relief in this proceeding.

111. The prosecution's failure to disclose evidence known or which it should have known concerning the reliability of its key witness, Ray, constitutes a due process violation requiring relief. Morgan's denial of actual knowledge is not a defense to this violation of Appellate Buckley's rights under federal and state law because knowledge in the possession of members of the prosecution team, including Agent Ray, is imputed to the prosecuting attorney. Further, this information, as the trial court found, would have afforded trial counsel a basis for impeaching Agent Ray's trial testimony.

112. Second, the trial court's conclusion that the non-disclosure was essentially harmless in light of the other evidence available to the prosecution at trial is clearly erroneous.

113. The suppressed evidence of Ray's perjury in the *Bragg* would have created a reasonable doubt not otherwise raised by the evidence given the uncontroverted evidence that Ray ran the undercover drug buy operation; that he personally took the cocaine from Livsey before turning it over for processing; and that he had previously fabricated evidence in another cocaine prosecution. Moreover, in both cases, the amount of cocaine purportedly purchased was significantly greater than that actually weighed by the State Crime Lab. Consequently, because Ray had access to cocaine and used it on occasion to pay for information and assistance

from users, impeachment with his prior perjury would have undermined the credibility of the drug buy, particularly since Buckley had no prior drug convictions.

114.  Additionally, the trial court failed to use the proper standard for assessing a due process violation, whether there is a reasonable probability that but for the suppression of the exculpatory evidence—here, the evidence of Ray's perjury in fabricating testimony resulting in the conviction of Rodney Bragg—the outcome of the case would have been different.  In other words, had jurors known of Ray's perjury in the Bragg case, is there a likelihood that they would not have convicted or would not have imposed as severe a sentence in Petitioner's case?  *United States v. Agurs*, 427 U.S. 97 (1976).  Here, it is clear that the undisclosed evidence would have undermined the credibility of the prosecution case and met the prejudice requirement for a due process violation.  *Strickler v. Greene*, 527 U.S. 263, 383, n.24 (1999).

115.  The Court should issue the writ and upon review of the record of trial, resentencing and the evidentiary hearing, order relief from the conviction and sentence in this cause, remanding for new trial or a new sentencing proceeding.

II.

THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING RULE 37.1 RELIEF AFTER HEARING BASED ON APPELLANT'S CLAIM THAT OFFICERS BETHELL AND CARD COMMITTED PERJURY IN TESTIFYING FALSELY AT TRIAL AND AS MEMBERS OF THE PROSECUTION TEAM, THEIR FALSE TESTIMONY CONSTITUTED A VIOLATION OF BUCKLEY'S RIGHT TO DUE PROCESS OF LAW.

*Summary of Material Facts*

116. At trial Officers Bethell and Card testified that they were positioned to observe controlled drug buys on January 12 and 13, 1999 [T1, 357] without being seen. [T1, 485]. Bethell stated that he saw Livsey enter Buckley's front door on the 12th through his binoculars, [T1, 357], and the same procedure was followed on the 13th. [T, 244]. Bethell and Card reiterated their trial testimony resentencing. [T2, 237; T2, 267]. Card testified specifically that she observed Buckley reach up to the rafters on his front porch on the 12th and withdraw something. [T1, 498]. She testified at trial and at resentencing that she recovered the pill bottle from this same area during the January 14th search of his residence, [T2, 277-78].

117. At the Rule 37 hearing, Buckley offered the testimony of four attorneys who went to the scene and attempted to duplicate the sightings reported by Bethell and Card. Trial counsel Austin Porter, Jr., took photographs of the scene admitted as Defense Exhibits 10 and 11 in March, 1999, within forty-five days of the arrest. [T3, 201-04] and denied that it would have been possible for Bethell and Card to

have seen the activity on Buckley's porch that they claimed. [T3, 2008-09].  UALR School of Law Professor J. Thomas Sullivan, undersigned counsel here, testifying as a witness at the hearing after having withdrawn as counsel for Petitioner, concurred, based upon his five visits to the scene, including one trip in January, 2003, to duplicate the time of year when the arrest occurred [T3, 118], testifying that it was not possible to observe anything on the front porch from the location where the officers were parked. [T3, 118-121].  He measured the distance with an electronic rangefinder as being approximately 240 yards [T3, 116] and concluded that Agent Card could not have made the observations she testified to with her naked eye. [T3, 122].  Malvern attorney Louis Loyd recalled visiting the scene with Sullivan in January, 2003, [T3, 242].  Loyd confirmed that he observed the same scene as described by Bethell and Card, [T3, 243], and in his opinion, there was no way Agent Card could have observed the activity on the Buckley front porch to which she testified without binoculars, because he was not able to see Sullivan moving on the front porch even with binoculars. [T3, 245-49].  Loyd determined the distance to be 250 yards from the Bethell/Card location to a car parked just past the Buckley residence. [T3, 248].  Arkansas Deputy Public Defender Erin Vinett testified that she could not observe any activity on the Buckley front porch from the location testified to by Bethell and Card, based upon

her own review of the trial and resentencing transcripts, concluding it was not even a close call. [T3, 302-304]. On cross, she stated that the elevation difference between the officers' location and Buckley residence, the privacy fence, and distance played much greater roles in obscuring vision of the front porch than vegetation, even given the difference between January and August, when she visited the scene. [T3, 309-311, 319].

 *A. Disposition of the claim by the state trial/postconviction court*

118. The trial court conducted an evidentiary hearing on remand from this Court. After hearing testimony, the trial court concluded:

> Considering the passage of time from May 25, 1999, to September, 2005, the Court finds that the testimony of Officer Roy Bethell and Officer Linda Card is consistent and credible. Although the Defendant has argued at all stages of this case that the officers could not have observed the Defendant and the confidential informant, the Defendant has failed to provide proof that the officers view of the scene was not as they testified at the original trial and the subsequent hearings.

[*See* Exhibit A, Order denying relief on Rule 37.1 petition, at ¶ 7].

 *B. Disposition of claim on appeal from denial of postconviction relief*

119. On direct appeal, however, the Arkansas Supreme Court held that Petitioner's claims could not be considered on the merits because post-trial allegations of prosecutorial misconduct must be raised by petitioner for writ of error coram nobis. The court held:



> We affirm the denial of postconviction relief as to all of appellant's arguments concerning prosecutorial misconduct in his first three points on appeal, regardless of whether the trial court in fact addressed appellant's third issue, because our decision in Howard v. State, 367 Ark. 18, --- S.W.3d ---- (2006), clearly holds that claims of prosecutorial misconduct are not cognizable in a proceeding pursuant to Rule 37.1 . . . . Our decision in Howard now forecloses further consideration of those claims in this proceeding. A petitioner may seek relief for prosecutorial misconduct at trial, in a motion for new trial, or through error coram nobis proceedings, but not through a petition for postconviction relief under Rule 37.1.

*Buckley v. State*, 2007 WL 1509323, at *2.

120. The court, while expressly declining to review Petitioner's misconduct claims on the merits, concluded its opinion affirming the denial of post-conviction relief:

> The trial court was *not clearly erroneous* in denying appellant's claims of prosecutorial misconduct or newly discovered evidence, or in finding that counsel was not ineffective. Having found no reversible error in the trial court's order, we affirm the denial of postconviction relief.

*Buckley v. State*, 2007 WL 1509323, at *7 (emphasis added).

  C.  *Disposition of claim on petition for writ of error coram nobis*

121. Following affirmance of the denial of postconviction relief, Petitioner filed a petition for writ of error coram nobis in the Arkansas Supreme Court pursuant to its order upholding the trial court's denial of relief. The state supreme court addressed the factual basis for Petitioner's claim, but concluded that the issue relating to the ability of the officers to view the scene as they testified was known

to trial counsel who did attempt to impeach their trial testimony. *Buckley V*, at *2.

The court denied leave to file the coram nobis petition on this ground because the

issue could have been, but was not raised on direct appeal. *Id.* According to the

court, coram nobis was not a proper remedy for this claim because it was not in

any way "hidden" from the trial court was "addressed at trial." *Id.*

*Standard of review for Federal habeas relief*

122. 28 U.S.C. § 2254 provides, in pertinent part, that relief may be ordered:

> **(d)** An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be granted with
> respect to any claim that was adjudicated on the merits in State court
> proceedings unless the adjudication of the claim-
>
> **(2)** resulted in a decision that was based on an unreasonable determination of
> the facts in light of the evidence presented in the State court proceeding.

Subsection e(1) provides that the habeas petitioner has the burden of demonstrating

that a state court factual determination was not correct by clear and convincing

evidence.

*Argument and Authorities*

123. At the outset, Petitioner notes that the state court ruled adversely on the

merits of his prosecutorial misconduct claims in its concluding paragraph in the per

curiam order issued affirming the trial court's denial of post-conviction relief. *See*

*Buckley IV, supra.*

124. The trial court's ruling was a ruling on the merits, finding that Petitioner had not proved that Officer Bethell and Agent Card had testified falsely at his trial.

125. But the state supreme court in both the appeal from denial of relief on Petitioner's Rule 37.1 claims and in rejecting his motion for leave to file the petition for writ of error coram nobis, characterized this as a *Brady* claims that could not be brought in Rule 37.1 because coram nobis was the appropriate remedy for arguing prosecutorial misconduct in failing to disclose exculpatory evidence. In responding to the motion for leave to file coram nobis petition, the court then concluded that the issue was properly before the trial court because trial counsel attempted to impeach the testimony of the two officers at trial and did not raise an issue concerning their testimony on direct appeal.

126. The state supreme court misapprehended the nature of the claim and the proper test for its resolution. Petitioner argued in his Rule 37.1 petition and on appeal from the denial of relief by the trial court that Officer Bethell and Agent Card testified falsely at trial and at the resentencing proceeding. Thus, Petitioner's claim is based on knowing use of perjured testimony to obtain his conviction, with the knowledge of Bethell and Card being imputed to the prosecuting attorney.

127. A conviction based on perjured testimony violates due process under the 14th Amendment. *Mooney v. Holoran*, 294 U.S. 103 (1935). The knowing use of

perjured testimony requires reversal of the conviction if there is any reasonable likelihood that the conviction could be attributed to the perjured testimony. *Giglio v. United States,* 405 U.S. 150, 153 (1972); *United States v. Agurs,* 427 U.S. 97 (1976). False testimony of investigating officers--members of the prosecution team--is imputed to the prosecutor relying on the testimony. *Kyles v. Whitley,* 514 U.S. 419, 437-38 (1995); *Bragg v. Norris,* 128 F.Supp.2d 587, 605 (E.D. Ark. 2000) (investigating officers part of the "prosecution team" under *Brady*); *Lewis v. State,* 286 Ark. 372, 691 S.W.2d 864 (1985) (same).

128. Here, the officers' testimony was material to the critical issue of Buckley's guilt, particularly insofar as it was used to bolster that of Livsey, an informant with a substantial criminal record who agreed to cooperate in return for dropping of his pending charges. [T1, 349-52].

129. Moreover, the prosecutor's closing argument stressed the ability of Bethell and Card to observe the transactions in support of the credibility of the case. [T1, 660]. He stressed that Card saw Buckley reach up into the rafters to support her search that recovered the pill bottle that purportedly contained the contraband. [T1, 663]. The prosecutor reiterated this line of argument in rebuttal, emphasizing that Livsey never left the sight of Bethell and Card. [T1, 684].

130. In the state court proceedings, Petitioner emphasized that perjury by a member of the prosecution team represents the type of fundamental error cognizable in collateral proceedings. *Larimore v. State*, 341 Ark. 397, 175 S.W.3d (2000) (upholding *coram nobis* relief); *Larimore v. State*, 327 Ark. 271, 277-78, 938 S.W.2d 818, 820-21 (1997) (perjury warrants relief), *Hoover v. State*, 270 Ark. 978, 978, 606 S.W.2d 749 (1970), *accord.*

131. The state supreme court, in its order denying leave to file the petition for writ of error coram nobis, concluded that because trial counsel had sought to impeach Bethell and Card at trial, this issue was ripe at trial and failure to fully develop it there and in the direct appeal precluded review by coram nobis. *Buckley V*, at *2.

132. Were this simply a question of witness credibility or failed impeachment the claim might not merit federal review. But under United States Supreme Court precedent, trial counsel was under no duty to anticipate that the prosecution team itself would engage in perjury, as a matter of federal due process. *Strickler v. Greene*, 527 U.S. 263, 276, n.12, 283, n. 24 (1999). Defense counsel is not obligated to assume a prosecutorial misstep, such as reliance here on perjured testimony by the investigating officers. *Id.* at 286-87.

133. Here, the trial court heard evidence in direct conflict with the trial and resentencing testimony of Bethell and Card offered through four attorneys who are officers of the Court. None of these attorneys was impeached for bias that would have prompted them to testify falsely, yet the trial court concluded that Buckley had not offered sufficient proof that the scene was not such as Bethell and Card testified to. The *uncontroverted* testimony was that the officers were parked 240 to 250 yards from Buckley's front porch, which was partially obscured by a six foot high fence [T3, 111] and Card claimed she saw Buckley reach into the rafters above the porch on January 12th.

134. Moreover, the trial court took judicial notice of the U.S. Naval Observatory record showing that at 5:35 p.m.–the time of the observation, as Bethell admitted [T3, 386], the sun had already set [T3, 472] at the point in time Card claimed to witness Buckley's act from 250 yards without the benefit of binoculars. [T3, 391]. Sullivan testified that he had duplicated the time of sunset the evening before the hearing commenced; that the sun set behind the Buckley residence, leaving the porch in darkness. [T3, 473-478]. He explained that nothing could be seen on the Buckley front porch after sunset from the location where Bethell and Card were parked, even with the aid of binoculars. [T3, 477-478].

135. The trial court's finding following the evidentiary hearing was based expressly on its conclusion that there was no change in the location where they had viewed the transactions at the time of Livsey's claimed purchase of cocaine from Petitioner until the time of the evidentiary hearing. The trial court concluded:

> Considering the passage of time from May 25, 1999, to September, 2005, the Court finds that the testimony of Officer Roy Bethell and Officer Linda Card is consistent and credible. Although the Defendant has argued at all stages of this case that the officers could not have observed the Defendant and the confidential informant, the Defendant has failed to provide proof that the officers view of the scene was not as they testified at the original trial and the subsequent hearings.

[*See* Exhibit A, Order, ¶ 7].

136. The trial court thus expressly found that the scene had not changed between the date on which the officers were involved in the undercover drug buy and the date of the evidentiary hearing, despite the passage of the intervening six years. In short, despite Prosecuting Attorney Morgan's attempts to show changed vegetation that might have obscured the vision of the four attorneys who testified as defense witnesses who testified at the evidentiary hearing, the trial court did not find that there had been a change of the scene.

137. The testimony offered by Bethell and Card was inherently incredible and unreliable, being predicated on visual observations made after sunset from a

distance of at least 240 yards, particularly in light of Agent Card's testimony that she did not have the assistance of binoculars.

138. Arkansas has traditionally held that evidence must lead to a conclusion without recourse to speculation and conjecture in order to support conviction. *McFarland v. State*, 337 Ark. 386, 989 S.W.2d 899 (1999); *Bailey v. State*, 334 Ark. 43, 972 S.W.2d 239 (1998). When evidence fails to meet that standard, it requires reversal of conviction. *Bly v. State*, 263 Ark. 138, 562 S.W.2d 605 (1978). In *Barnes v. State*, 258 Ark. 565, 574, 528 S.W.2d 370, 376 (1975), the Supreme Court observed:

> [T]he testimony of a witness should be disregarded only when it is physically impossible, or that there is no reasonable probability that his version is correct. See Baldwin v. Wingfield, 191 Ark. 129, 85 S.W.2d 689. Where the testimony is conflicting, this court does not pass upon the credibility of the witnesses and has no right to disregard the testimony of any witness after the jury has given it full credence, at least where, as here, it cannot be said with assurance that it was inherently improbable, physically impossible or so clearly unbelievable that reasonable minds could not differ thereon. King v. State, 194 Ark. 157, 106 S.W.2d 582; Linebaugh v. State, 192 Ark. 1178, 97 S.W.2d 61.

139. Here, the uncontroverted evidence adduced by Petitioner at the evidentiary hearing established the improbability, physical impossibility, or lack of credibility that the trial court's finding is not entitled to deference. There was no evidence that conditions had been altered at the scene during the intervening six years, or during those times when the record established that defense witnesses—attorneys

licensed to practice in Arkansas courts—visited the precise scene and made the observations to which they testified. Officer Bethell admitted that there his view of the Buckley front porch was partially obstructed by a tree and a fence at the time of the controlled buy, for instance. [T3, 375].

140. Moreover, Officer Bethell established that the controlled buy on the first of two days when Petitioner purportedly sold cocaine to the informant, Livsey—January 12th--occurred at 5:35 p.m. [T3, 386].

141. The evidence unequivocally shows that Bethell and Card testified that they observed actions on the Petitioner's front porch involving Buckley and the informant, Livsey, from a distance of at least 240 yards—based on the uncontroverted testimony of four attorneys called to testify by Petitioner—and that these observations would have been made after sunset on January 12th, the date of the first purported drug transaction. Card supposedly made her observations from the same location *without* the benefit of binoculars. At trial, she testified that she was also operating the tape recorder during the controlled buy as part of her duties in the investigation. [T2, 273]. Officer Bethell testified to both of these facts, that Card did not have binoculars and that she was working the tape monitoring equipment. [T3, 391]. Even if Bethell were telling the truth, based on his use of binoculars, Agent Card could not have been.

142. Officer Bethell also admitted that he was not aware whether he could have made any observations without the benefit of binoculars. [T3, 392].

143. Agent Card testified at the resentencing hearing that during the controlled buy purportedly executed on the second day, January 13th, the informant, Livsey, was not in sight because he did not find Petitioner at home when he knocked on Petitioner's door that day. Instead, Petitioner was supposedly across the street when the transaction purportedly occurred. [T2/270]. This testimony was the same as the trial testimony of Officer Bethell. [T1, 362].

*Application of Federal habeas standard for relief*

144. The trial court's conclusion regarding the testimony of Officer Bethell and Agent Card was predicated on their testimony regarding their visual observations relating only to the controlled buy purportedly made on January 12, 1999, from a distance of at least 240 yards after sunset. Agent Card testified that she did not use binoculars. Yet, the unimpeached testimony of four attorneys who went to precisely the same scene and were unable to make any visual observations of activity on Petitioner's front porch from that same distance—even using binoculars—established that the testimony offered by Bethell and Card was physically impossible. Petitioner thus meets his statutory burden of showing that

the factual determination by the trial court is unreasonable, overcoming the presumption of correctness, by clear and convincing evidence.

145. Section 2254(d)(2) expressly provides that federal habeas relief is appropriate when the decision of a state court on a claim of federal constitutional error:

> **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

146. The trial court abused its discretion in rejecting the testimony offered by Buckley in support of his petition for collateral relief. The conclusion drawn by the state postconviction court was based on an *unreasonable* determination of facts. Although state courts are afforded deference in terms of factfinding by federal habeas courts, that deference is predicated on reasaonableness of factual determinations. Unlimited deference to trial court decisions would foreclose relief in every case challenging trial testimony as false. Although state court factfinding is entitled to a presumption of correctness, subsection (e)(1) of Section 2254, provides that the presumption may be overcome but only by clear and convincing evidence. The unequivocal testimony of Petitioner's witnesses—all attorneys and officers of the Court—must be sufficient to meet the standard recognized in the statute as necessary to overcome the presumption; otherwise, Congress had imposed a wholly unreasonable standard of proof on federal habeas petitioners.

147. On the facts presented in this case, the trial court's decision was not reasonable. In *United States v. Agurs*, the Supreme Court held:

> [A] conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury. *Agurs*, 427 U.S., at 103

148. In the instant case, the state postconviction court's findings unequivocally demonstrate that jurors could likely have credited the testimony of Livsey because of corroboration provided by the testimony of Officer Bethell and Agent Card. The court expressly found:

> The information of Agent Keith Ray's false statement in a 1994 drug report was not exculpatory information, but would certainly have been used for impeachment purposes by the Defendant's Attorney. *However, this evidence did not undermine the confidence in the outcome of the trial and there was no prejudice to the Defendant because the jury heard the testimony of Officer Bethell, Officer Card, and Cory Livsey and heard the tape recording and was able to judge the credibility of the evidence. The tape recording of the drug buys, which was monitored by Officers Bethel (sic) and Card, supports the credibility of their testimony.*

[Exhibit A, Order, at ¶ 8, emphasis added].

149. But the facts show that Bethell and Card never personally witnessed any of the purported drug transaction between Livsey and Buckley on January 12th, and they admitted that they could not observe the claimed transaction on January 13th. [*See* ¶¶ 95-97, *supra*, in support of Petitioners Claim I].

150.   Further, the state supreme court itself found that the tape recording that Card made and which the trial court found corroborated their "observations" contained no explicit references to drugs or a drug transaction, as Livsey himself admitted. [*See* ¶ 100, *supra,* in support of Petitioners Claim I].

151.   The factfinding of the state postconviction court, relied upon by the state supreme court in upholding the denial of Rule 37.1 relief, is unreasonable and supports a grant of habeas relief.   Only if this Court can reasonably find that Petitioner's postconviction hearing witnesses, licensed attorneys and officers of the Court, deliberately lied in misrepresenting their observations of the physical scene and specific facts relating to the ability of Officer Bethell and Agent Card to have witnessed events to which they testified, could the trial court's finding be deemed reasonable.

152.   In this instance, the evidence shows an unreasonable factual determination that Bethell and Card testified falsely at trial.   The trial court's findings in postconviction demonstrates the likely influence of their testimony upon jurors seeking corroboration for Livsey's trial testimony. Here, there was a reasonable likelihood that the testimony of Bethell and Card contributed to Petitioner's conviction and sentence, thus meeting the test of *United States v. Agurs* for relief based on reliance on perjured or false testimony imputed to the prosecution.

153. Thus, the use or reliance on perjury by the prosecution to obtain Petitioner's conviction through the false testimony of members of the prosecution team— Officer Bethell and Agent Card-- warrants federal habeas relief. This Court should grant the petition for writ of habeas corpus and order relief based on the inherent physical impossibility of the testimony offered by Officer Bethell and Agent Card at the trial and resentencing and confirmed in their post-conviction hearing testimony.

III.

THE CUMULATIVE EFFECT OF THE PROSECUTION'S FAILURE TO DISCLOSE EXCULPATORY EVIDENCE TO TRIAL COUNSEL VIOLATED BUCKLEY'S RIGHT TO DUE PROCESS OF LAW.

*Summary of Material Facts*

154. Buckley relies on the factual summaries set forth in the preceding grounds for relief that demonstrate that Officers Bethell and Card testified falsely at trial concerning their ability to observe transactions purportedly occurring between Buckley and the confidential informant, Livsey, and that Officer Ray had committed perjury in another drug prosecution and falsified official records in a second prosecution, both involving an individual named Rodney Bragg.

155. Ray's perjury in the *Bragg* case, *Bragg v. State*. 328 Ark. 613, 946 S.W.2d 654 (1997), was never disclosed to Buckley's trial counsel, Austin Porter, Jr. even

after the Prosecuting Attorney determined in July, 1999, less than six weeks after Buckley's conviction, that Ray was not a reliable witness. *Bragg v. Norris*, 128 F.Supp.2d 587, 605 (E.D. Ark. 2000). Morgan had dismissed a Clark County drug case in which Ray arrested Bragg in 1995. [ST. EX. 2, Time Line; T3, 510, references to exhibits, *infra,* refer to exhibits admitted at state postconviction hearing].

156. Morgan himself was on notice of Ray's incredibility as a result of the replevin action filed by Bragg and answered by Morgan in 1998. 128 F.Supp.2d 596-97. Moreover, he was on constructive notice, if not actual notice, as a result of the Response filed by Bragg in the replevin action, [DEF. EX. 2, filed under separate cover, including service of process on Morgan and exhibits]. The exhibits attached to the Response, filed on September 4, 1998, were the same documents that Morgan admitted in Bragg's federal trial that he relied on in concluding that Ray had filed a false report in the Clark County prosecution against Bragg. [T3, 76-77]. Morgan admitted these facts in his testimony at the Rule 37 hearing. [T3, 321-329].

*Disposition of the claim by the trial court*

157. The trial court rejected Buckley's claim for relief, finding that evidence of Ray's perjury and false statement in the Clark County case involving Bragg

69

constituted impeachment evidence, but not exculpatory evidence, that did not undermine the reliability of Buckley's conviction. [Exhibit A, Order, ¶ 8].

158. The trial court addressed the question of the evidence supporting the Bragg replevin claim in its findings, but incorrectly found that Bragg objected that Ray's statement that he learned that Bragg owned the subject vehicle on March 1, 1994 was contained in Bragg's answer to the State's summary judgment filed *on October 26, 1998.* [Exhibit A, Order ¶ 3]. Bragg actually gave notice of this claim on September 4, 1998, as the Clerk's file mark on the Response to Answer to Complaint clearly shows. [DEF. EX. 2, at p. 1].

159. The court also found that until the investigation of the records after the July, 1999, trial proof that Agent Ray's testimony was false was not *conclusive.* [Exhibit A, Order ¶ 4]. The court then found that Morgan did not know of the falsity of Ray's statement until after Buckley's trial. [Exhibit A, Order ¶ 5]. The court also found that Morgan gave notice of Ray's misconduct to counsel before the resentencing hearing, [Exhibit A, Order ¶ 5].

160. Based on these factual findings, the court held that Ray's false statement known to Morgan was not exculpatory, but was impeachment evidence that would not have overcome the testimony of Bethell, Card, Livsey, and the tape recording of the drug buys. [Exhibit A, Order ¶ 8]. The court concluded:

> The information of Agent Keith Ray's false statement in a 1994 drug report was not exculpatory information, but would certainly have been used for impeachment purposes by the Defendant's Attorney. However, this evidence did not undermine the confidence in the outcome of the trial and there was no prejudice to the Defendant because the jury heard the testimony of Officer Bethell, Officer Card, and Cory Livsey and heard the tape recording and was able to judge the credibility of the evidence. The tape recording of the drug buys, which was monitored by Officers Bethel (sic) and Card, supports the credibility of their testimony.

[Exhibit A, Order, ¶ 8].

161. As to Petitioner's claim relating to the Bethell/Card false testimony, the postconviction court essentially found that he had not carried his burden of proving the falsity of their testimony:

> Considering the passage of time from May 25, 1999, to September, 2005, the Court finds that the testimony of Officer Roy Bethell and Officer Linda Card is consistent and credible. Although the Defendant has argued at all stages of this case that the officers could not have observed the Defendant and the confidential informant, the Defendant has failed to provide proof that the officers view of the scene was not as they testified at the original trial and the subsequent hearings.

[Exhibit A, Order, ¶ 7].

*Disposition of claim on appeal by supreme court*

162. On appeal from the denial of Rule 37.1 relief by the trial court, the State argued that this issue had not been preserved because the trial court did not rule on the claim. *Buckley IV*, at *1. In response, the court noted that Petitioner had

argued that the denial of the misconduct claims by the trial court necessarily included a rejection of this claim, based on cumulative misconduct. *Id.*

163.    The supreme court did not address the issue of whether the trial court's ruling encompassed this claim, however, based on the court's general holding that no misconduct claims were subject to review since they had not been litigated in coram nobis proceedings. *Buckley IV*, at 2.

*Argument and Authorities*

164.    Petitioner's cumulative error claim based on prosecutorial misconduct in the failure to disclose exculpatory or impeachment evidence relating to Agent Ray's perjury in the *Bragg* case and reliance on the false testimony of Officer Bethell and Agent Card at trial in his own case was fully and fairly litigated in the Rule 37.1 proceeding. The trial court was clearly placed on notice of Petitioner's reliance on United States Supreme Court precedent in support of his claim, *Kyles v. Whitley*, 514 U.S. 419, 421 (1995) and the trial court clearly denied relief on his petition, including the cumulative misconduct ground.

165.    The trial court rejected Petitioner's proof on the perjury claim [Exhibit A, Order, ¶ 7]; concluded that Prosecutor Morgan did not commit misconduct, [Exhibit A, Order, ¶¶ 3-5]; and held that Ray's perjury in Bragg, although proper impeachment evidence, would not have altered the outcome given other evidence.

Consequently, no other conclusion could be drawn than that the trial court also denied relief on the cumulative misconduct claim. The court's order denying Rule 37.1 relief was sufficient to demonstrate a ruling on the merits of Petitioner's cumulative misconduct claim. *Harris v. Reed*, 489 U.S. 255 (1989).

166. The State's failure to disclose the exculpatory evidence to trial counsel relating to the false or perjured testimony of Officers Bethell and Card at his trial and Ray's perjury in the *Bragg* case deprived Buckley of due process. The prejudice from disclosure failures must be assessed cumulatively. *Kyles v. Whitley*, 514 U.S. 419, 421 (1995). Here, the false testimony of all three officers was known to them and is thus imputed to the prosecutor under *Kyles, id.* at 437-38. Just as the prosecutor's failure to correct a false impression resulting from the perjured testimony of a prosecution witness results in a due process violation, *Alcorta v. Texas*, 355 U.S. 28, 31-32 (1957); *Napue v. Illinois*, 360 U.S. 264, 269 (1959), the false impression created by Bethell and Card, coupled with failure to disclose Ray's perjury in *Bragg* deprived Buckley's trial counsel of a fair opportunity to defend Buckley, a violation of due process under the Fourteenth Amendment..

167. The trial court's denial of relief constitutes a disposition affording Petitioner relief under Section 2254(d)(2) because the court's findings constitute

73

unreasonable findings of fact with regard to the allegations of misconduct. Further, in failing to then apply the correct standard for review of misconduct claims, the cumulative error rule of *Kyles v. Whitley, supra*, the court rendered a decision that is contrary to Supreme Court precedent.

168. Petitioner is entitled to federal habeas relief on his claim of cumulative misconduct in the prosecution's failure to disclose exculpatory or impeachment evidence and reliance on false testimony, the combination of which served to influence jurors in favor of conviction. There was a reasonable likelihood that but for the cumulative effect of these acts of misconduct the results of Petitioner's court trial or resentencing proceeding would have been different and thus, he has demonstrated a violation of federal due process. Because the trial court's conclusions are unreasonable in terms of factual determinations and reflect a failure to properly apply *Brady, Agurs,* and *Kyles* to his claim, contrary to these United States Supreme Court precedents, Petitioner is entitled to relief from his convictions and sentence.

## IV.

THE STATE SUPPRESSED THE VIDEOTAPED STATEMENT OF WITNESS LIVSEY THAT WAS IN THE POSSESSION OF THE PROSECUTING ATTORNEY OR MEMBERS OF THE PROSECUTION TEAM, BUT WAS NOT DISCLOSED TO PETITIONER PRIOR TO TRIAL OR AFTER LIVSEY TESTIFIED AT TRIAL.

*Summary of Material Facts*

169. Former South Central Drug Task Force Agent Linda Card, who testified against Petitioner at his trial, was called by the prosecuting attorney as a witness at the evidentiary hearing conducted pursuant to this Court's remand order. During re-direct examination of Agent Card, the prosecuting attorney elicited testimony that Card had made a videotaped statement of the State's undercover informant, Corey Livsey, after his purported purchases of cocaine from Petitioner upon which the charges were based in this case. [T3, 459].

170. Card testified that she did not know where the videotape was at the time of the hearing. The trial court sustained defense counsel's objection to the prosecutor's question as to whether, in her opinion, the tape contained exculpatory evidence based on the interview with witness Livsey. [T3, 459].

171. Defense counsel then called Henry Morgan, the prosecuting attorney, who denied any knowledge of the videotaped statement of the informant, Livsey. [T3, 465]. He expressly denied that he ever received the videotape, [T3, 467], and then testified that witness Card never told him about the existence of the videotape.

75

[T3, 468]. He then admitted that because he never received the videotape, he did not provide it to defense counsel. [T3, 469]. He then testified that he would not necessarily have supplied it to defense counsel, even had he known about the tape, because he did not believe that he was required to do so under state law unless the defense requested production of any statement made by a witness. He denied that either trial counsel Austin Porter or counsel on resentencing, Jack Lassiter, requested the statement of the witness after Livsey testified. [T3, 469].

172. After the defense rested its case, the prosecutor recalled witness Card to make a proffer on the record. [T3, 488]. Card testified that she had located the videotape and reviewed it and it contained no exculpatory evidence. [T3, 489]. She explained that there was nothing on the tape that could have been used to impeach the witness, Livsey. [T3, 489].

173. Subsequently, the deputy prosecuting attorney, Caren Curry, agreed to provide a copy of the videotape to Petitioner's counsel in the Rule 37.1 proceeding, Patrick Benca. The tape has never been provided to defense counsel for examination. [Affidavit of Patrick Benca, Petitioner's direct appeal counsel, appended to this petition as Exhibit D].

*Disposition of federal constitutional claim in Arkansas Supreme Court*

174. Because Petitioner had no knowledge of the existence of the Livsey tape until Card referred to it at the evidentiary hearing conducted on his Rule 37.1 petition, no claim based on failure to disclose the tape was before the postconviction court.

175. Petitioner raised his claim relating to the Livsey tape in his motion for leave to file the petition for writ of error coram nobis filed in the Arkansas Supreme Court after that court upheld the denial of postconviction relief by the trial court.

176. The supreme court discussed the claim in its order denying leave to file the petition for writ of error coram nobis. *Buckley v. State*, WL 2955980, *4. The court held that this claim was cognizable in coram nobis and that Petitioner demonstrated due diligence in attempting to establish the claim.

177. However, the court denied the motion for leave to file the petition for writ of error coram nobis because Petitioner was unable to show that any exculpatory evidence was actually suppressed by the State. The court held:

> Until petitioner can point to specific exculpatory evidence in the videotape, petitioner cannot make a showing as to how the disclosure of any evidence could have prevented rendition of the judgment of conviction. We cannot say that he has as yet stated facts so as to justify reinvesting jurisdiction in the trial court to consider a petition for writ of error coram nobis on this claim.

*Buckley V*, at *4.

178. Consequently, the fact that the prosecutor refused to provide the videotape to Petitioner's counsel frustrated counsel's ability to make a definitive showing of suppression of exculpatory or favorable evidence. The court noted: "That videotape was not made available to petitioner before trial, and petitioner avers that the videotape has not yet been produced, despite repeated requests." *Buckley V*, at *4.

*Standard for federal habeas relief*

179. Petitioner was unable to develop a factual basis for the merits of his claim based on non-disclosure in the state courts because of the prosecutor's apparent willful failure to provide defense counsel with a copy of the videotape of the informant, Livsey.

180. Pursuant to Section 2254(e)(2), failure to develop a factual or evidentiary basis for a federal constitutional claim may require an evidentiary hearing where the record shows:

> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence.

181. The federal habeas statute apparently makes no provision for the circumstances of Petitioner's claim regarding the existence of potentially exculpatory evidence that remains suppressed by the prosecution.

*Argument and Authorities*

182. Under the Arkansas Rules of Criminal Procedure, Rule 17.1(d), the State is obligated to provide defense counsel with all exculpatory evidence in the possession of the prosecuting attorney or members of the prosecution team. This includes the duty to request information in the possession of other governmental entities, pursuant to Rule 17.3.

183. A prosecutor is also required to disclose the prior statements of any witness to defense counsel for use in cross-examination once the witness has testified at trial upon request by counsel. Ark. Code Ann. § 16-89-115.

184. Prosecuting Attorney Morgan testified that he would have turned over Livsey's prior statement upon request by trial counsel, but this response is disingenuous because Morgan denied knowing about the existence of the videotaped interview. He expressly denied that he ever received the videotape, [T3, 467], and then testified that witness Card never told him about the existence of the videotape. [T3, 468-69]. He then admitted that because he never received the videotape, he did not provide it to defense counsel. [T3, 469], while claiming that he would not necessarily have provided it to defense counsel because neither trial counsel Porter nor resentencing counsel Lassiter ever requested the tape. [T3, 469].

185.   Agent Card testified at some length that there was nothing on the tape that could have been used to impeach Livsey.  [T3, 489-490].  But Agent Card is not an attorney and under the United States Supreme Court's decision in *Kyles v. Whitley*, 514 U.S. at 438-39, demonstrates that it is the *prosecutor's* duty to make the determination as to whether evidence must be disclosed as exculpatory:

> This in turn means that the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police. But whether the prosecutor succeeds or fails in meeting this obligation (whether, that is, a failure to disclose is in good faith or bad faith, see *Brady*, 373 U.S., at 87, 83 S.Ct., at 1196-1197), the prosecution's responsibility for failing to disclose known, favorable evidence rising to a material level of importance is inescapable.

Moreover, as a member of the prosecution team, *Lewis v. State*, 286 Ark. 372, 691 S.W.2d 864 (1985), Card should have disclosed the existence of the videotape to Morgan prior to trial so that he could make a determination as to the possible exculpatory value of Livsey's videotaped statement in impeachment of this witness before the jury.

186.   Thus, based on *Kyles, supra*, the fact that Prosecuting Attorney may not have acted in bad faith because he was not aware of the existence of the tape is not controlling here; it is simply the case that he could not have exercised his constitutionally-required function of evaluating the Livsey videotape because a member of the prosecution team failed to disclose it to him prior to trial.

187. The existence of the videotape was not made known to the prosecuting attorney prior to trial. Consequently, Mr. Morgan could not make the required exculpatory evidence determination required by *Brady* and *Kyles*; nor could he have provided the tape after Livsey testified, as required by Arkansas law.

188. In fact, the defense has never had any opportunity to review the tape in order to evaluate its potential use in impeachment of Livsey at trial.

189. On the facts of this case, there is a high probability that the tape contained evidence of an impeaching or exculpatory nature. Livsey's credibility was critical to the prosecution's case because he was the only witness who claimed personal knowledge in testifying about the purported drug purchases from Petitioner.

190. Livsey himself testified that he participated in the buys because he had been arrested for shoplifting and police agreed to drop the charges in return for his help; that in addition, he was paid $100 to participate; that he had prior felony convictions in Illinois and pending felony charges at the time of trial. [T1/386–89; 401].

191. Livsey's credibility was significantly undermined by impeachment relating to his prior convictions and motive to testify based upon the fact that he participated in the sting in order to avoid prosecution on a shoplifting charge that

he said police claimed to charge as a burglary due to his flight and payment for participation in the sting.

192. The state postconviction court referenced the tape recording of the purported transactions as significant evidence supporting Buckley's convictions. The court concluded that the tape recording corroborated the testimony of witnesses Bethell, Card, and Livsey. But, the tape contained no references to drugs or money, as the informant, Livsey, testified at trial. [T1/393].

193. Moreover, the postconviction court's reliance on the tape recording as credible evidence supporting the live testimony is contrary to the state supreme court's conclusions. On the initial direct appeal, that court noted:

> According to Livsey, he pulled forty dollars from his pocket and asked to buy crack cocaine, using slang terms to ask for the drugs. *The audio tape, however, itself contained no conversation clearly indicating that a drug transaction was taking place.*

*Buckley I*, 20 S.W.3d at 833. (emphasis added).    The court drew the same conclusion in its order affirming the denial of postconviction relief:

> Livsey testified that he made the buys using slang terms, *but the tape did not contain conversation clearly indicating that a drug transaction was taking place.*

*Buckley IV*, 2007 WL 1509323, *3. (emphasis added).

194. Consequently, Livsey's testimony was critical because it was not, in fact, corroborated by the tape recordings, the state supreme court's factfinding being

entitled to deference in this court. *Sumner v. Mata*, 449 U.S. 539 (1981); Section 2254(e)(1). His testimony was impeached for bias based on his prior felony convictions, his admitted interest in participating in the undercover drug buys in order to escape prosecution for an additional offense—which he testified was going to be charged as a felony—based his arrest at WalMart for shoplifting, and the promise of payment of $100 for his participation in the drug buys.

195. Given the extent of impeachment and lack of actual corroboration from the tape recordings, virtually any information concerning Livsey that could be conveyed by the videotape, the continued suppression of the videotape by the prosecution effectively precludes Petitioner from properly developing his claim in this court, just as he was unable to develop his claim in his motion for leave to file and petition for writ of error coram nobis in the Arkansas Supreme Court.

196. Therefore, Petitioner moves the Court order disclosure of the videotape and evidentiary hearing on this issue for determination as to whether the failure to disclose this evidence compromised Petitioner's right to a fair trial and fair sentencing proceeding.

## V.

PETITIONER WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AT THE RESENTENCING PROCEEDING BECAUSE COUNSEL FAILED TO OBJECT TO THE JURY INSTRUCTIONS OR REQUEST AN INSTRUCTION ON THE BURDEN OF PROOF OF EXTRANEOUS OFFENSES OFFERED BY THE STATE IN PUNISHMENT.

*Summary of Material Facts*

197. The State elicited evidence of prior offenses allegedly committed by Buckley from witnesses Reginald Brim, [T2, 354-56], and Officer Summerville. [T2, 340-42]. There was also testimony from Officer Card concerning a drug transaction involving another individual, Eli McGhee, which did not even implicate Buckley. [T2, 248-50]. Counsel neither requested an instruction or objected to the lack of such instruction on the burden of proof of extraneous offenses. [T2, 407-412]. This Court rejected Buckley's fundamental error claim on direct appeal. *Buckley II*, 349 Ark. at 66-67, 76 S.W.3d at 833-34.

198. At the hearing, witness Sullivan responded on cross-examination by Prosecuting Attorney Morgan that he believed counsel should have requested a limiting instruction on the burden of proof required for the jury's consideration of extraneous offenses, as is required in federal court. [T3, 160-161]. Trial counsel testified that he had no recollection of why he did not ask for an instruction limiting the jury's consideration of extraneous offenses. [TR3, 264].

84

*Disposition of the claim by the trial court*

199. The court did not specifically address this claim. Rather, it found that:

> [C]ounsel's decision to call or not call witnesses, and objections to evidence at trial were matters of strategy determined by the Petitioner's attorneys. Those decisions are in the discretion of each attorney and there is no evidence that any of these strategic decisions rendered their representation of the Petitioner ineffective.

[Exhibit A, Order, ¶ 11].

200. The trial court denied relief on all of Petitioner's claims.

*Disposition of federal claim on appeal to the state supreme court*

201. On appeal, the State argued that counsel had failed to obtain a ruling on this claim of ineffective assistance. *Buckley IV*, at *3.

202. In the *per curiam* order upholding the denial of post-conviction relief, the court agreed with the State that:

> . . . the trial court failed to provide a ruling on this issue and on another issue of ineffective assistance raised in appellant's eleventh point, that counsel was ineffective for failure to object to the trial court's decision to run the sentences consecutively. We do not agree that the trial court's general finding that counsel was not ineffective should suffice. The trial court did provide some additional findings as to appellant's other claims of ineffective assistance, and clearly neglected to address the issues of the jury instruction and the decision to run the sentences consecutively. Failure to obtain a ruling on an issue at the trial court level, including a constitutional issue, precludes review on appeal. See Howard, 367 Ark. at 31, --- S.W.3d at ----; Beshears v. State, 340 Ark. 70, 8 S.W.3d 32 (2000).

*Buckley IV*, at * 3. The supreme court generally concluded that despite the sentence imposed, Petitioner could not demonstrate ineffective assistance of counsel because the sentence was within the range authorized by law:

> Nor did appellant meet his burden to show prejudice. The State asserts, and appellant does not contest, that the sentences received by appellant were well within the statutory range for the charges. A defendant who has received a sentence less than the maximum sentence for the offense cannot show prejudice from the sentence itself. Smith v. State, --- Ark. ----, --- S.W.3d ---- (Feb. 1, 2007) (citing Franklin v. State, 351 Ark. 131, 89 S.W.3d 865 (2002)). Under that holding, we must conclude that prejudice was not shown as a matter of law because appellant received less than the maximum sentence for the offense charged. Appellant would challenge our holding in Smith on the basis that it conflicts with the United States Supreme Court's decision in Glover v. United States, 531 U.S. 198 (2001). Yet Glover is not applicable to the case before us.

*Buckley IV*, at *5. *State*, 2007 WL 1509323, at *3 (Ark).

203. Buckley petitioned for rehearing, arguing that the court's ruling improperly placed the burden of forcing a postconviction court to make specific findings on the defense. In *Beshears v. State*, 340 Ark. 70, 8 S.W.3d 32 (2000), the supreme court held that it would not review a claim where it could not determine from the record that the postconviction court had considered an issue and rejected it. The court concluded:

> It is the appellant's obligation to obtain a ruling at trial in order to properly preserve an issue for review. Oliver v. State, 323 Ark. 743, 918 S.W.2d 690 (1996). We stated in Oliver that when the trial court does not specifically rule on an issue when it denies Rule 37 relief, *and when we cannot tell from the court's order whether the issue was considered or decided, the issue is*

86

> *not preserved for appellate review and we will not address the point.* Id.; see also Matthews v. State, 333 Ark. 701, 970 S.W.2d 289 (1998).

340 Ark. at 72, 8 S.W.3d at 34 (emphasis added).

*Argument and Authorities*

    a.    *Preservation of federal claim for review*

204.  As Petitioner argued in his rehearing petition, the record in the instant case unequivocally demonstrates that this issue was litigated before the trial court during the evidentiary hearing—which had been ordered by the supreme court itself precisely because the trial court had originally dismissed the claims without the written findings required by Rule 37.3(a). *Buckley III*, at *1.

205.  This issue was litigated aggressively during the evidentiary hearing. In fact, the record shows that the prosecuting attorney, Mr. Morgan, first opened up these questions in his cross-examination of witness Sullivan, who had been called by the Petitioner, by inquiring about trial counsel's failure to request an instruction on the burden of proof of extraneous offenses submitted for the jury's consideration in the punishment hearing. [T3, 160-161]. The prosecuting attorney then called trial counsel, Mr. Lassiter, in his case, and inquired about counsel's failure to request a limiting instruction. Mr. Lassiter testified that he could not recall why he did not request the instruction. [TR3, 264]. Thus, the trial court clearly heard testimony directly related to the claim for relief, testimony initiated by the prosecuting

attorney. Moreover, trial counsel offered no strategic explanation for his failure to request an appropriate instruction.

206. The trial court's findings and order rejected relief on the claims asserted by Petitioner in his Rule 37.1 petition.

207. Petitioner argued that although the supreme court in *Beshears* had held that it is the Rule 37 petitioner's duty to essentially force the postconviction court to make an explicit finding that a claim had been rejected, there was actually no procedural device available to force a court to rule in any event. The court itself had noted that there is no procedure for rehearing in a Rule 37.1 proceeding, but in *Beshears*, relief had been rejected where the petition failed to obtain a specific ruling by moving for reconsideration of a claim upon which relief had not been granted.

208. In a comparable situation, the failure of a trial court to rule on an evidentiary matter, Petitioner noted that under Ark. R. Evid. 103(a)(2) exclusion of evidence may be considered where "the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked." Otherwise, Petitioner argued in his rehearing petition in the supreme court that a trial court always avoid reversal by refusing to make a definitive ruling on the record. The only issue in Petitioner's case was whether his federal

constitutional claim was clearly presented, litigated and was rejected. The trial court's general denial of relief was sufficient to constitute a ruling under *Harris v. Reed*, 489 U.S. 255 (1989).

209. Moreover, here, the supreme court itself had remanded the case for evidentiary hearing and factfinding. The Court had expressly directed the trial court to make appropriate findings with respect to the claims set forth in the Rule 37.1 petition, including findings on claims on which the trial court might not have decided to hear evidence. The Court's language is unambiguous:

> If the trial court does determine upon remand, with benefit of our ruling on this appeal, that no hearing is necessary on any of those remaining points, then the order must reflect the trial court's findings on those points, and those parts of the record upon which the trial court has based its findings as required by Ark. R. Cr. P. 37.3(a).

*Buckley III*, 2005 WL 1411654, at *3. Similarly, the supreme court also remanded for written findings in *Beshears* and subsequently held that the trial court's failure to expressly rule on specific claims barred appellate review on the merits.

210. The pattern of trial court behavior displayed in both *Beshears* and the instant case demonstrates the inherent unfairness in permitting post-conviction courts to abdicate their responsibilities and, essentially, flagrantly disregard the remand orders of this Court and shifting the burden of obtaining precise rulings to the post-conviction litigant. If a trial court may simply disregard the express directive of

the state supreme court in a remand order, then it is unreasonable to expect the litigant or counsel to force a trial court to render specific findings. Moreover, in this case, the trial court's failure to rule on Petitioner's claims of ineffective assistance is particularly suggestive of impropriety precisely because trial counsel did not offer a reasonable explanation for his failure to preserve error on two claims, including the instant claim, on which the supreme court held that it could not engage in merits review due to lack of a formal ruling.

211. The supreme court's disposition reflects an "exorbitant application" of a "generally sound rule," *Lee v. Kemna*, 542 U.S. 362, 376 (2002). The court required Buckley to ask for reconsideration in seeking a more definite ruling in the trial court, a process not contemplated in the Rule 37 process, and authorized only by implication in *Beshears v. State*, 8 S.W.3d 32 (Ark. 2000). A fair reading of the trial court's findings leave no doubt that its deference to counsel's judgment was complete and its rejection of Petitioner's constitutional claims just as unequivocal. There was no ambiguity in the trial court's order fairly leading counsel to believe that a more specific ruling was necessary to preserve error for appellate review. Because there was no reasonable application of application of a sound rule of procedural default barring appellate review on this claim, Buckley argues that this court's review on the merits is not precluded under *Harris v. Reed*, 489 U.S. 255,



262 (1989), particularly in light of the court's summary ruling upholding the postconviction court's findings in denying relief.

### b.  Merits of the ineffective assistance claim

212. Counsel did not object to admission of extraneous offenses, which were arguably admissible as relevant in sentencing under *Hill v. State*, 318 Ark. 408, 887 S.W.2d 277 (1994). Admission of unproved offenses, however, may require reversal of the sentence imposed. *Ward v. State*, 308 Ark. 415, 827 S.W.2d 1110 (1992). Here, the State offered not only evidence of other offenses allegedly committed by Buckley, but an unrelated offense involving Eli McGhee, yet there was no instruction given the jury on the prosecutor's burden of proving claims of extraneous offenses before they could be considered in the punishment decision. Arkansas law requires that standard of proof to meet constitutional standard of preponderance of the evidence. *Walls v. State*, 336 Ark. 490, 499, 986 S.W.2d 397, 402-03 (1999), following *Nichols v. United States*, 511 U.S. 738 (1994) and *United States v. Watts*, 519 U.S. 1144 (1997). Other offenses proved by this standard may be used by jurors in assessing punishment. *Marshall v. State*, 342 Ark. 172, 177-78, 27 S.W.3d 392, 395-96 (2000).

213. The jury instructions were fatally defective, yet the supreme court held that Buckley's claim was waived on direct appeal based on counsel's failure to preserve

error. Failure of trial counsel to object to an erroneous jury instruction may constitute ineffective assistance, *Reynolds v. State*, 341 Ark. 387, 18 S.W.3d 331 (2000), but a claim based on failure to request an instruction is subject to the second prong of *Strickland* analysis under Arkansas law.  *Strickland v. Washington*, 466 U.S. 668, 686 (1984) *State v. Franklin*, 351 Ark. 131, 140, 89 S.W.3d 865, 869 (2002). Here, counsel's deficient performance resulted from his failure to request an instruction on the law not otherwise covered by the instructions.  Counsel offered no strategic reason for not requesting an instruction requiring the State to assume a proper burden of proof of extraneous offenses offered during the punishment phase.

214.  Strategic decisions must still be supported by reasonable professional judgment pursuant to the standards set forth in *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *State v. Dillard*, 338 Ark. 571, 576, 998 S.W.2d 750, 753 (1999) (rejecting decision not to call witness who would have impeached complainant's veracity as unreasonable strategy) . Not all "strategic reasons" advanced to explain counsel's actions are objectively reasonable and when they are unreasonable, they do not rebut a claim of defective performance. *Simmons v. Luebbers*,  299 F.3d 929, 938 (8ᵗʰ Cir. 2002); *U.S. v. Villalpando*,  259 F.3d 934, *939 (8ᵗʰ Cir. 2001).

215.  The failure to protect Buckley's right to a fair sentencing proceeding

deprived him of effective assistance of counsel under *Strickland* and *Glover v. United States*, 531 U.S. 198 (2001) (effectiveness required during sentencing). Moreover, counsel's failure to object to the lack of an appropriate instruction on the burden of proof waived error for appellate review, also resulting in ineffective representation. *Smith v. Robbins*, 528 U.S. 259 (2000).

216.  Buckley's jury imposed a sentence of 28 years on each count, despite the fact that he was convicted of delivery of only a very small quantity of cocaine on the two occasions.  Because the jury did not impose the minimum sentence, there is a reasonable probability that jurors relied on the extraneous offenses to impose a sentence greater than the minimum deemed appropriate by the General Assembly. Counsel's failure to preserve error by requesting an appropriate jury instruction on the State's burden of proof left jurors to consider unproved offenses based on hearsay and the irrelevant transaction involving Eli McGhee in sentencing Buckley.  There was a reasonable probability that but for counsel's failure to seek an instruction on the State's burden, Buckley's sentence would have been less onerous.  Counsel's representation was defective under *Glover*.

## VI.

PETITIONER WAS DENIED EFFECTIVE ASSISTANCE OF TRIAL COUNSEL AT HIS RESENTENCING HEARING AS A RESULT OF COUNSEL'S FAILURE TO OBJECT TO ADMISSION OF AN EXTRANEOUS OFFENSE WHOLLY IRRELEVANT TO BUCKLEY'S CULPABILITY.

*Summary of Material Facts*

217. The State offered evidence of a drug transaction involving the informant, Livsey, and Eli McGhee, which occurred during the time when police were using Livsey to make undercover purchases from Buckley. [Bethell, T2, 248-49; Card, 5/T2, 273-74; Livsey, T2, 304-06]. This transaction did not result in Buckley being charged with anything. Nevertheless, trial counsel did not object to this evidence during the testimony of Bethell, Card or Livsey.

218. Defense counsel's hearsay objection to Bethell's testimony was initially sustained after Bethell had already testified that he recognized McGhee's voice on the audiotape saying "Gyronne told me to give you this. . . ." [T2, 248-49]. Counsel did not otherwise object to the admission of the evidence of the extraneous offense involving McGhee.

219. Trial counsel testified that he had originally objected to evidence relating to the transaction involving McGhee and his objection was sustained, but when it was mentioned later, he could not recall why he did not object. [T3, 264, 266-267]. He

stated that he *assumed* he did not want to call the jury's attention to the testimony.

[T3, 267].

*Disposition of claim by the trial court*

220. The court relied on its general finding that the decision not to object was a matter of strategy for trial counsel. The court held:

> [C]ounsel's decision to call or not call witnesses, and objections to evidence at trial were matters of strategy determined by the Petitioner's attorneys. Those decisions are in the discretion of each attorney and there is no evidence that any of these strategic decisions rendered their representation of the Petitioner ineffective.

[Exhibit A, Order, ¶ 11].

*Disposition of federal claim on appeal by state supreme court*

221. The supreme court generally rejected Petitioner's claims of ineffective assistance, holding:

> Matters of trial strategy and tactics, even if arguably improvident, fall within the realm of counsel's professional judgment and are not grounds for a finding of ineffective assistance of counsel. . . . Even though another attorney may have chosen a different course, trial strategy, even if it proves unsuccessful, is a matter of professional judgment.

*Buckley IV*, at * 4 (citation omitted). At the outset, Petitioner argues that this general approach is contrary to the requirement for effective assistance of counsel set forth in *Strickland v. Washington*, 466 U.S. 668, 689 (1984), because only objectively reasonable strategic decisions are insulated from retrospective

characterization as defective in terms of counsel's performance. Here, the supreme

court speculated that counsel's strategy might have been reasonable, explaining:

> When counsel was questioned, he did not have a distinct recollection of his reasons but concluded that he most likely did not want to call further attention to the testimony. Without the testimony, the jury could have determined that the evidence did not show a connection between the appellant and this particular drug sale; but, considering the sale's proximity in time and place to the transaction in which Livsey approached appellant for drugs, the weight of that evidence was properly within the jury's prerogative to determine. Judicial review of counsel's performance must be highly deferential, and a fair assessment of counsel's performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from counsel's perspective at the time. Andrews v. State, 344 Ark. 606, 42 S.W.3d 484 (2001) (per curiam). We cannot say that counsel's decision was not supported by reasonable professional judgment.

*Buckley IV*, at *5.

222.    The supreme court generally concluded that despite the sentence imposed,

Petitioner could not demonstrate ineffective assistance of counsel because the

sentence was within the range authorized by law:

> Nor did appellant meet his burden to show prejudice. The State asserts, and appellant does not contest, that the sentences received by appellant were well within the statutory range for the charges. A defendant who has received a sentence less than the maximum sentence for the offense cannot show prejudice from the sentence itself. Smith v. State, --- Ark. ----, --- S.W.3d ---- (Feb. 1, 2007) (citing Franklin v. State, 351 Ark. 131, 89 S.W.3d 865 (2002)). Under that holding, we must conclude that prejudice was not shown as a matter of law because appellant received less than the maximum sentence for the offense charged. Appellant would challenge our holding in Smith on the basis that it conflicts with the United States Supreme Court's

decision in Glover v. United States, 531 U.S. 198 (2001). Yet Glover is not applicable to the case before us.

*Buckley IV*, at *5.

*Argument and Authorities*

223. Evidence of a drug transaction involving Livsey and Eli McGhee that did not implicate Buckley or result in charges against him was completely irrelevant and prejudicial, failing to meet the criteria for admissibility under *Hill v. State*, 318 Ark. 408, 413, 887 S.W.2d 275, 278 (1994).

224. Trial counsel's failure to object to the multiple admissions of this evidence both failed to protect Buckley from the effects of the evidence on the jury at trial and resulted in a failure of preservation of error on appeal. Consequently, on direct appeal, the state supreme court rejected Buckley's claim of error as unpreserved. *Buckley II*, 349 Ark. at 67-68; 76 S.W.3d at 834.

225. Failure to protect Buckley at trial constituted deficient performance under *Strickland v. Washington*, 466 U.S. 668, 686 (1984) and *Glover v. United States*, 531 U.S. 198 (2001) (effectiveness required during sentencing), while the Court has recognized that failure to preserve error for appellate review may also constitute ineffective assistance. *Smith v. Robbins*, 528 U.S. 259 (2000). This could not be termed an objectively reasonable strategy on counsel's part for two reasons: first, it left the impression with jurors that Buckley was involved in other

unprosecuted drug trafficking because it was mentioned at his trial and; second, because trial counsel had already called attention to this offense by his initial objection.    In fact, counsel's failure to object to further discussion of the Livsey/McGhee transaction could only have served to leave jurors with the impression that counsel considered this evidence relevant and material and, thus, beyond objection.

226.    Counsel's explanation fails to rebut the showing of defective performance in failing to object. *See e.g. State v. Dillard*, 338 Ark. 571, 576, 998 S.W.2d 750, 753 (1999) (rejecting decision not to call witness who would have impeached complainant's veracity as unreasonable strategy).    Not all "strategic reasons" advanced to explain counsel's actions are objectively reasonable and when they are unreasonable, they do not rebut a claim of defective performance.    *Simmons v. Luebbers*,  299 F.3d 929, 938 (8th Cir. 2002); *U.S. v. Villalpando*,  259 F.3d 934, *939 (8th Cir. 2001).

227.    The deliberate development of this extraneous offense evidence was particularly significant because jurors could only be left to speculate that it was, in fact, related to Buckley's own criminality. The prosecuting attorney argued that Buckley had engaged in extensive drug trafficking over a number of years during his closing. [T2, 414-16].    There was no objectively reasonable strategic reason for

counsel's failure to object to this improper evidence and but for its admission, there is a reasonable likelihood that the jury would have imposed a more favorable sentence than the 28 years on each count resulting in cumulation to a 56 year prison term.  Petitioner relied on *Glover v. United States*, 531 U.S. 198 (2001). In support of his claim that counsel rendered ineffective assistance subjecting him to a higher sentence based on the improper admission of evidence relating to unproved drug trafficking activity.

228.  The supreme court generally concluded that despite the sentence imposed, Petitioner could not demonstrate ineffective assistance of counsel because the sentence was within the range authorized by law:

> Nor did appellant meet his burden to show prejudice. The State asserts, and appellant does not contest, that the sentences received by appellant were well within the statutory range for the charges. A defendant who has received a sentence less than the maximum sentence for the offense cannot show prejudice from the sentence itself. Smith v. State, --- Ark. ----, --- S.W.3d ---- (Feb. 1, 2007) (citing Franklin v. State, 351 Ark. 131, 89 S.W.3d 865 (2002)). Under that holding, we must conclude that prejudice was not shown as a matter of law because appellant received less than the maximum sentence for the offense charged. Appellant would challenge our holding in Smith on the basis that it conflicts with the United States Supreme Court's decision in Glover v. United States, 531 U.S. 198 (2001). Yet Glover is not applicable to the case before us.

*Buckley IV*, at *5.  Thus, because Buckley's sentence was not in excess of that authorized under the statute, the court held that regardless of counsel's defective

performance, Petitioner could not meet the required showing under the prejudice or second prong of *Strickland v. Washington.*

229.    The state supreme court's rejection of *Glover v. United States* is contrary to the holding of the Supreme Court, or represents an unreasonable application of *Glover* in terms of its holding attempting to distinguish *Glover.*    The court concluded that *Glover* was not applicable because counsel's ineffectiveness there was based on improper calculation of sentence that could be imposed under Federal sentencing guidelines.    Instead, the court observed that the sentencing question in Petitioner's case was focused on *trial strategy* that might subsequently be criticized.    *Buckley IV,* at *5.

230.    Presumably, the state supreme court's analysis of Petitioner's ineffectiveness claims relates to each of these claims raised in his Rule 37.1 petition since those claims were all predicated on the conduct of counsel during the resentencing hearing.

231.    If *Glover* is not directly applicable to Petitioner's case, it represents a concrete extension of the Court's Sixth Amendment effective assistance jurisprudence to non-capital sentencing situations.    The Supreme Court had, of course, discussed the Sixth Amendment protection in the context of capital

prosecutions; in fact, *Strickland* itself arose in the context of a capital sentencing proceeding.

232. Although the court noted the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000), in its prejudice analysis, it did so only in concluding:

> Under these circumstances, we consider the fundamental fairness of the proceedings, in addition to whether the decision might have been different, and conclude that *no legitimate prejudice occurred here because appellant did not receive the maximum sentence.*

*Buckley IV*, at *5 (emphasis added). The state supreme court's allusion to "no legitimate prejudice" having occurred as a result of counsel's decisions during the resentencing proceeding is, at best confusing, because the court does not explain what constitutes "legitimate" and, presumably, "illegitimate" prejudice, nor explain which category of prejudice would warrant relief under *Strickland*'s second prong.

223. *Williams v. Taylor, supra,* reaffirms the Sixth Amendment requirement for effectiveness in representation in habeas proceedings brought after the amendment of the federal habeas statute by the Antiterrorism and Effective Death Penalty Act of 1996. Under *Williams*, claims of ineffective assistance are cognizable in federal habeas using the *Strickland* formula based on defective performance of counsel. *Smith v. Robbins* extends Strickland to claims based on appellate counsel's performance, while *Glover* applies *Strickland* in non-capital sentencing contexts. The position taken by the Arkansas Supreme Court is wholly irrational because it

would logically preclude any finding of ineffective assistance whenever the

sentence imposed is less than the maximum that could have been imposed,

regardless of counsel's defective performance. In fact, the contrary is correct:

defective performance in sentencing logically requires relief when a sentence in

excess of the minimum is imposed if but for counsel's defective performance, there

is a reasonable probability that a less onerous sentence would have been imposed.

That is the logical reading and application of *Glover, supra.*

234. Here, counsel's failure to protect Petitioner from the undeniably prejudicial

effects of disclosure of other alleged, but unprosecuted drug trafficking, constituted

defective performance. The supreme court speculated that counsel's strategy

might have been strategic. The court explained:

> When counsel was questioned, he did not have a distinct recollection of his
> reasons but concluded that he most likely did not want to call further
> attention to the testimony. Without the testimony, the jury could have
> determined that the evidence did not show a connection between the
> appellant and this particular drug sale; but, considering the sale's proximity
> in time and place to the transaction in which Livsey approached appellant
> for drugs, the weight of that evidence was properly within the jury's
> prerogative to determine. Judicial review of counsel's performance must be
> highly deferential, and a fair assessment of counsel's performance requires
> that every effort be made to eliminate the distorting effects of hindsight, to
> reconstruct the circumstances of counsel's conduct, and to evaluate the
> conduct from counsel's perspective at the time. Andrews v. State, 344 Ark.
> 606, 42 S.W.3d 484 (2001) (per curiam). We cannot say that counsel's
> decision was not supported by reasonable professional judgment.

*Buckley IV*, at *5.

235. The supreme court's deference to trial counsel's purported exercise of judgment in this instance is wholly unreasonable in light of the record precisely because trial counsel could not offer any explanation for his failure to object based on actual recollection of the trial, according to the court's own review of the record. Counsel's assumption that he failed to object based upon a determination that attempting to limit testimony would call attention to it is based on supposition, rather than a strategic determination counsel could actually recall. The court's willingness to assume a strategic reason for permitting the jury to hear evidence relating to an uncharged drug offense involving another individual, rather than attempting to limit the influence of such evidence by objection and request for admonition, reflects an unreasonable factual determination that does not bind this Court under Section 2254(d)(2).

236. Moreover, trial courts routinely admonish jurors to disregard evidence improvidently or erroneously adduced and these admonishments or cautionary instructions are routinely presumed to have corrected or cured the potential for improper influence from this evidence or testimony. Arkansas recognizes the use of curative instructions to disregard improperly developed testimony as an effective means for curing error and avoiding prejudice that would result if jurors did not disregard the testimony. *Green v. State*, 365 Ark. 478, 509, 231 S.W.3d

638, 662 (2006). Such instructions are uniformly employed to cure error in Arkansas courts, as the supreme court noted in *Zachary v. State*, 358 Ark. 174, 178, 188 S.W.3d 917, 920 (2004):

It is well settled that an admonition to the jury usually cures a prejudicial statement unless it is so patently inflammatory that justice could not be served by continuing the trial.

237. Consequently, trial counsel's assumed strategic reason for not objecting simply does not hold water under Arkansas law because Petitioner lost the benefit of the curative instruction that would have been available to cure the error from admission of evidence of the other, unrelated drug transaction.

238. Further, the supreme court's explanation is patently false: it effectively held that jurors could consider the extraneous drug transaction involving McGhee could have been considered by jurors in setting Petitioner's punishment. The court concluded:

Without the testimony, the jury could have determined that the evidence did not show a connection between the appellant and this particular drug sale; *but, considering the sale's proximity in time and place to the transaction in which Livsey approached appellant for drugs, the weight of that evidence was properly within the jury's prerogative to determine.*

*Buckley IV*, at *5 (emphasis added).

239. In short, the court held that jurors could consider the transaction not shown to have involved Petitioner and for which he was not charged in considering his



sentence because of that "sale's proximity in time and place to the transaction in which Livsey approached appellate for drugs." This method of sentencing is wholly unconstitutional because it permits punishment for conduct wholly unrelated to an accused's charged offense based on the fact that it occurred in his neighborhood.

240. Petitioner is entitled to relief because the state courts' disposition is contrary to or reflects an unreasonable application of Supreme Court precedent and is also based on an unreasonable determination of facts relating to trial counsel's assumed strategy and the prejudice resulting from his defective performance.

VII.

PETITIONER WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AT THE RESENTENCING PROCEEDING AS A RESULT OF TRIAL COUNSEL'S FAILURE TO OBJECT TO OFFICER CARD'S TESTIMONY CONCERNING HER EFFORTS TO ESTABLISH PETITIONER'S SOURCE OF INCOME AND BUSINESS WHICH LED TO ARGUMENT THAT BUCKLEY WAS A MAJOR DRUG DEALER IN ARKADELPHIA.

*Summary of Material Facts*

241. Officer Card testified concerning her efforts to establish Appellant's source of income. [T2, 279-80]. She stated that she could not confirm evidence of his business activity because there was no license in his name to do business in Arkadelphia and the IRS did not respond to her inquiries. There was no objection

to this testimony by defense counsel, who testified that he had researched the issue

and concluded this evidence was admissible. [T3, 268]

*Disposition of claim by the trial court*

242. The court relied on its general finding that the decision not to object was a

matter of strategy for trial counsel. [Exhibit A, Order, ¶ 11].

*Disposition of claim on appeal by state supreme court*

243. The supreme court generally rejected Petitioner's claims of ineffective

assistance, holding:

> Matters of trial strategy and tactics, even if arguably improvident, fall within
> the realm of counsel's professional judgment and are not grounds for a
> finding of ineffective assistance of counsel. . . . Even though another
> attorney may have chosen a different course, trial strategy, even if it proves
> unsuccessful, is a matter of professional judgment.

*Buckley IV*, at * 4 (citation omitted). The state supreme court's general approach is

contrary to the requirement for effective assistance of counsel set forth in

*Strickland v. Washington*, 466 U.S. 668, 689 (1984), because only objectively

reasonable strategic decisions are insulated from retrospective characterization as

defective in terms of counsel's performance. On appeal, the Arkansas Supreme

Court referred to trial counsel's testimony that his research had shown that

evidence relating to Petitioner's earnings history was admissible at the sentencing

phase of trial. *Buckley IV*, at *6. The court noted:

. . . counsel's conclusion that the evidence was generally admissible was supported by our decision in Buckley I. In appellant's first direct appeal, we stated that evidence of his prior drug sales may be admissible during the sentencing phase, but the evidence would still be subject to the rules of evidence. Buckley I, 341 Ark. at 874-875, 20 S.W.3d 338-339. Counsel's strategic decision bearing upon how to limit the prejudice of that evidence falls into the same category with that in his sixth point of error.

*Buckley IV*, at *6.

244. The court then concluded that Petitioner also failed to meet his burden of demonstrating prejudice flowing from this failure of trial counsel to object to the admission of Agent Card's testimony because the sentence imposed was within the lawful range provided by statute. It held:

> Once again, appellant cannot show that he was prejudiced by any error of this type because he did not receive the maximum sentence.

Buckley IV, at *6.

*Standard for federal habeas relief*

245. Section 2254 provides, in pertinent part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

107

At the outset, Petitioner notes that the state supreme court's general rule that matters of strategy are committed to the discretion of trial counsel and are not subject to claims of ineffectiveness is contrary to the Supreme Court's holding in *Strickland, supra*, 466 U.S. at 689.

*Argument and Authorities*

246. In closing, the prosecutor argued that Buckley was "in the business" of selling drugs. He asked jurors to consider what "this man. . . has done to our community." [T2, 414]. The prosecutor then argued that the "drug task force was looking into [Petitioner's] business records" for over ten years. [T2, 414]. He continued, arguing that others will do "anything to get more money to go pay Gyronne Buckley his money that he *lives so high on the hog on.*" [T2, 415]. This argument was based on Card's testimony that she could not determine the source of Buckley's income, yet the evidence in the case showed that Livsey purportedly purchased only $40 of crack cocaine on two separate occasions from Buckley.

247. There was no evidence of Buckley's income from either lawful or other unlawful sources offered at trial. Card's testimony was irrelevant. Unable to demonstrate significant income from drug trafficking—officers admitted they did not recover any money in the search of Buckley's residence [Bethell: T2, 255;

Card: T2, 281]—the prosecutor used Card's failure to locate a source of income as "evidence" that Buckley derived significant income from drug trafficking.

248.   Moreover, the prosecutor inferred in punishment—again without objection—that the lack of IRS records proved Buckley was living on proceeds of drug trafficking: "You don't report drug money, you know." [T2, 417].

249.   Admission of irrelevant evidence may require reversal when prejudicial use by the jury is likely. *Lowe v. State*, 464 Ark. 205, 570 S.W.2d 253 (1978); *Philmon v. State*, 267 Ark. 1121, 593 S.W.2d 504 (Ct. App. 1980). Trial counsel not only failed to object to the testimony, he also failed to move in limine to preclude its prejudicial effect on jurors.

250.   Counsel's explanation that he did not want to look like he had something to hide [T3, 268] is not strategically reasonable because he should have objected to this testimony outside the jury's presence. Otherwise, logically, counsel should never object to admission of any irrelevant, prejudicial evidence because jurors might draw an adverse inference that counsel has something to fear. Of course counsel does have something to fear—that the irrelevant, prejudicial evidence will adversely affect the client. That is precisely why counsel must protect the defendant's rights by objecting before and during trial. Here, counsel's explanation is insufficient to rebut the inference of defective performance. *Simmons v.*

109

*Luebbers*, 299 F.3d 929, 938 (8th Cir. 2002); *U.S. v. Villalpando*, 259 F.3d 934, *939 (8th Cir. 2001).

251. Here, the supreme court's decision is not subject to deference precisely because the court concluded that trial counsel's strategy was acceptable because in *Buckley I*, the court had indicated that evidence of *prior drug sales may be admissible* at resentencing, but that admissibility would be governed by the Rules of Evidence. The problem with the supreme court's analysis is that Petitioner's objection went to Agent Card's testimony relating to her inability to establish the source of his income, not to any testimony relating to prior drug transactions.

252. Thus, the issue of Petitioner's income was never properly before the jury. Trial counsel offered no Arkansas authority for proposition that Agent Card's inability to discern the source of his income would be admissible. In fact, she testified that the IRS did not respond to her inquiry concerning his earnings.

253. In short, the supreme court effectively held that Agent Card's inability to establish Petitioner's earnings was admissible to support the prosecutor's argument before the jury claiming that Petitioner was a major drug dealer in the community. Her testimony was not admissible under the Arkansas Rules of Evidence because this evidence was not relevant or probative on any element of the prosecution's

case. It was, at best, only an admission by Agent Card that her investigation had proved nothing.

254. In holding that evidence of prior drug offenses might be admissible in punishment, the supreme court did not refer to any Arkansas authority holding that admission of evidence of the State's inability to determine an accused's source of income would be admissible. Agent Card's testimony failed to meet the materiality and relevance tests for admissibility generally and trial counsel's failure to object cannot be predicated on a reasonable trial strategy.

255. The deference to trial counsel's exercise of professional discretion by the postconviction and state supreme courts is simply unreasonable. Counsel failed to provide effective assistance and there is no reasonable basis for deferring now to the state courts' determination on this record.

256. The prosecutor relied on Agent Card's testimony relating to her inability to ascertain Petitioner's source of income in his highly prejudicial closing argument. The jury's imposition of a sentence in excess of the minimum—28 years on each count rather than 10 years--for the two rather insignificant sales of cocaine on which he had been convicted demonstrates that counsel's failure to protect Petitioner's right to fair trial constituted ineffective assistance.

257.  Contrary to the supreme court's conclusion that Petitioner could not establish prejudice where he was sentenced to less than the maximum, instead of showing a sentence in excess of the minimum, Petitioner relies on *Glover v. United States*, 531 U.S. 198 (2001), in support of his claim for federal habeas relief. Because his sentence exceeds the statutory minimum, counsel's defective performance demonstrates probable prejudice meeting the second prong of *Strickland v. Washington*, 466 U.S. 668, 686 (1984).

258.  Petitioner relies on his previous argument concerning the unreasonable application of *Glover* by the Arkansas Supreme Court, an application also contrary to the Court's decision in that case, in support of his claim herein.  Petitioner expressly incorporates the argument advanced in ¶¶ 227-233, directly challenging the state supreme court's unreasonable and erroneous attempt to distinguish *Glover*, in this petition, in support of this claim for relief.

## VIII.

PETITIONER WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AT THE RESENTENCING HEARING AS A RESULT OF TRIAL COUNSEL'S FIALURE TO OBJECT TO THE "GOLDEN RULE" ARGUMENT MADE BY THE PROSECUTOR IN CLOSING.

*Summary of Material Facts*

259. Although Buckley was resentenced on conviction for two drug transactions involving less than one/half gram of cocaine [T2, 282-83], the prosecutor argued to the jury:

> This is not a youthful offender. This is not a first time offender. *This man has been selling drugs–he just hasn't been caught–over, and over, and over again in Arkadelphia, Arkansas, to your friends and family.*

[T2, 416, emphasis added]. Counsel did not object to this argument.  On direct appeal the Court held that the error was not preserved because of lack of a contemporaneous objection.  *Buckley II*, 349 Ark. at 68; 76 S.W.2d at 834.  At the Rule 37 hearing, trial counsel stated that he did not object because he did not consider the argument to violate the Golden Rule prohibition. [T3, 268].

*Disposition of claim by the trial court*

260.  The court relied on its general finding that the decision not to object was a matter of strategy for trial counsel. [Exhibit A, Order, ¶ 11].

*Disposition of federal constitutional claim by the supreme court*

261.  On appeal from the denial of relief the supreme court addressed the argument on the merits, observing:

> The first remark by the prosecutor of which appellant complains was a statement that appellant characterizes as a "golden rule" argument. The prosecutor argued to the jury, "This man has been selling drugs--he just hasn't been caught--over, and over, and over again in Arkadelphia, Arkansas,  to your friends and family." The State contends this statement was a "send-a-  message" argument, rather than a "golden rule" argument, citing Lee v.   State, 340 Ark. 504, 11 S.W.3d 553 (2000). As we noted in Lee, a "golden  rule" argument is an impermissible argument where the jury is implored to   put themselves in the position of the victim, while a "send-a-message"     argument is allowed because it urges the jury to deter criminal behavior and    foster respect for the law. Id. at 517, 11 S.W.3d at 561. While the     prosecutor's remark here was similar to that

in King v. State, 317 Ark. 293, 877  S.W.2d  583  (1994),  where  the prosecution urged the jury to send a    message to those who might harm the jury's own family members, and         would have supported an objection, we cannot say that this was the type of        misstatement    that    is    so egregious that it requires counsel to object during  closing argument.

*Buckley IV*, at *6.

262. Thus, the supreme court ruled that while the prosecutor violated the

prohibition against the "Golden Rule" argument, it concluded that this line

of argument was not so *egregious* that it required counsel to object.

263. The court then speculated that counsel might have strategically

decided not to object in any event, had he realized the argument was

impermissible. The court contended:

Appellant argues that trial counsel did not make a strategic decision to        withhold his objection, pointing to counsel's testimony that he believed at  the time that the argument was not objectionable. Yet, even had he realized  that an objection would be sustained, counsel might well have made a        strategic decision not to call attention to the statement through an objection.       Had counsel raised the objection, the likely result would have been a specific      limiting instruction as was provided in King. An attorney may reasonably  decide not to object under those circumstances, preferring not to draw     attention to the remark. For that reason, appellant has not met his burden to       show the omission could not have been the result of reasonable professional       judgment. The action was not error under the circumstances, even if actually    based    upon    an    erroneous assumption, because it could still have been the     result    of    reasonable professional judgment. In other words, the misstatement  was       not    so egregious as to merit departure from our general rule concerning        objections during closing arguments.

*Buckley IV*, at *7.

115

264.   The supreme court generally rejected Petitioner's claims of

ineffective assistance, holding:

>   Matters of trial strategy and tactics, even if arguably improvident, fall within the realm of counsel's professional judgment and are not grounds for a finding of ineffective assistance of counsel. . . . Even though another attorney may have chosen a different course, trial strategy, even if it proves unsuccessful, is a matter of professional judgment.

*Buckley IV*, at * 4 (citation omitted).   At the outset, Petitioner argues that this general approach is contrary to the requirement for effective assistance of counsel set forth in *Strickland v. Washington*, 466 U.S. 668, 689 (1984), because only objectively reasonable strategic decisions are insulated from retrospective characterization as defective in terms of counsel's performance.

*Argument and Authorities*

265.   Trial counsel's failure to object subjected Buckley to the recognized prejudicial impact of a "golden rule" argument condemned by this state supreme court.  *King v. State*, 317 Ark. 293, 877 S.W.2d 583, 586 (1995) (specific admonition may cure prejudice); *Adams v. State*, 229 Ark 777, 318 S.W.2d 599 (1958) (general admonition insufficient to cure prejudice).

266.   Here, the prosecutor's argument crossed the line of permissible argument.  There was no evidence that anyone but Livsey ever purchased

drugs from Buckley, and certainly no evidence that any jurors, or their children and family members, had been victimized by drugs he allegedly sold. Nevertheless, the jury imposed a 28 year sentence on each count which involved a total of less than one/half gram of cocaine. Counsel's failure to object to this "golden rule" argument resulted in a reasonable likelihood that he was prejudiced by the effects of this inflammatory argument on the jury, reflected in a verdict influenced by passion. Because counsel did not object to the argument, the jury was not instructed not to consider the prosecution's rationale in setting punishment and the error was not cured by admonition. *See King, supra.*

267. The supreme court's conclusion that the argument was not so egregious as to require an objection by trial counsel is unreasonable, in light of the standard for effective assistance established by the Court in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Because Petitioner's sentence exceeded the statutory minimum, the defective performance resulted in probable prejudice to Buckley in the jury's decision in setting punishment. Counsel's ineffectiveness in failing to protect the accused from a harsher sentence than the minimum is subject to relief in federal habeas based on application of the *Strickland* standard by the Court in *Glover v. United States*, 531 U.S. 198 (2001). Petitioner relies on his previous analysis of the

state supreme court's misreading of *Glover* in support of this argument and incorporates ¶¶ 227-233 *supra*, herein for this purpose.

268.    Moreover, counsel did not even assert that his decision not to objection was strategic.  Instead, he did not object because he did not think the argument was objectionable; therefore, his defective performance is not protected by the "strategic decision" component of *Strickland*.  His failure to recognize that the argument violated the Arkansas "Golden Rule" prohibition precludes a finding that his lack of objection was in any sense a *strategic* decision.

269.    The supreme court attempted to salvage counsel's failure to object and admission that he did not consider the argument to violate the "Golden Rule" prohibition by finding that counsel performing appropriately might still make an objectively reasonable, strategic decision not to object.  In so speculating, the court attempted to bring counsel's failure to act based upon lack of understanding of applicable law within the exception to defective performance claims recognized by the Court in *Strickland*.

270.    The court's analysis is flawed for a number of reasons.  First, it credits trial counsel's defective performance as objectively reasonable action based on the court's speculation that even had counsel understood Arkansas law relating to "Golden Rule" argument, he might not have made the appropriate

objection anyway.    Using this line of analysis, trial counsel's actual motivation in not objecting would never be in issue because the state court would always conclude that, in any event, it might have been better for the client for the lawyer not to have objected.    This approach unreasonably extends the holding in *Strickland* to cover, hypothetically, virtually every situation in which counsel has failed to act by assuming that proper action in preserving error or protecting the client's rights might always have bad results.

271.   Second, the court apparently recognizes that counsel's objection might have resulted in a curative instruction. The converse is also true. The objection might have been overruled, preserving this issue for appellate review.   Of course, the issue was not preserved for appellate review in Petitioner's case, as the court itself held in *Buckley II*, 349 Ark. at 68, 76 S.W.3d at 834 (". . . this court has required a contemporaneous objection in order to preserve a "golden rule" issue for appeal. See Johnson v. State, 333 Ark. 673, 972 S.W.2d 935 (1998)").  Petitioner could not obtain review on the merits of his claim on direct appeal from the resentencing proceeding precisely because trial counsel failed to preserve error.

272.   Even assuming it is appropriate for a state court to base its rejection of a petitioners federal constitutional claim on its own speculation, rather than

the record, the Arkansas Supreme Court's speculative disposition in this instance is unreasonable on the record. The argument that counsel might render effective assistance in deliberating not objecting to improper comment during closing, or risk admonition by the trial court highlighting an objectionable comment, this conclusion is not reasonable on the record in this case. Here, the prosecutor deliberately argued that jurors should set punishment not based on the two minor drugs for which Petitioner had been convicted, but based on the prosecutor's unsworn opinion that he was a major drug dealer in the community, making drugs available to the children and friends of jurors. The tenor of this argument was to suggest to jurors that the State was aware of far more extensive drug trafficking by Petitioner than just these two minor transactions.

273. Further, when viewed in light of other argument advanced by the prosecution, this argument was particularly inflammatory, one of a series of unobjected-to comments that were outside the record, and clearly designed to influence jurors to sentence more harshly than the statutory minimum— more in line with the life sentences imposed by the original trial jury.

274. On the basis of this record and the tenor and implicit intent in the prosecutor's closing argument, the supreme court's conclusion that the argument in this case was not sufficiently egregious to require objection is



unreasonable. That court's conclusion is not entitled to deference in this proceeding and should be rejected, pursuant to Section 2254(d)(2). Petitioner is entitled to habeas relief form the sentence imposed in by the jury in his case.

## IX.

PETITIONER WAS DENIED EFFECTIVE ASSISTANCE OF COUSNEL AT THE RESENTENCING HEARING AS A RESULT OF TRIAL COUNSEL'S FAILRUE TO    OBJECT TO THE PROSECUTOR'S IMPROPER CLOSING ARGUMENT OUTSIDE THE RECORD THAT   PETITIONER HAD BEEN DEALING IN DRUGS FOR TEN YEARS.

*Summary of Material Facts*

275.   During closing the prosecutor argued that "the drug task force was looking into [Buckley's] business records" for over ten years. [T2, 414]. He continued:

> This is not a youthful offender. This is not a first time offender. This man has been selling drugs–he just hasn't been caught–over, and over, and over again in Arkadelphia, Arkansas, to your friends and family.

[T2, 416].

276.   There was no objection to the argument that Buckley had been dealing in drugs for over ten years. On direct appeal, this Court found that the claim of error had not been preserved for review due to the lack of an objection at trial. *Buckley II*, 349 Ark. at 69, 76 S.W.2d at 834-35.

277. Trial counsel explained at the Rule 37 hearing that he did not object because the prosecutor had actually just misstated ten years for the correct time frame, eight years. [T3, 268].

*Disposition of claim by the trial court*

278. The court relied on its general finding that the decision not to object was a matter of strategy for trial counsel. [Exhibit A, Order, ¶ 11].

*Disposition of federal claim on appeal by state supreme court*

279. The state supreme court relied on its discussion with respect to the preceding claim in addressing the issue Petitioner asserts in this claim for relief. The court then observed:

> Similar reasoning leads us to the same conclusion in connection with the second contested statement by the prosecution. In appellant's ninth point, he argues that counsel should have objected when the prosecutor indicated that the drug task force had been investigating appellant's business records for over ten years. Appellant argues that the prosecutor was making substantially the same argument made during appellant's first trial that was based upon impermissible hearsay evidence. But the testimony of Officer Card during the resentencing hearing supported this argument, with the exception that the investigation had covered a period of eight years rather than ten. Counsel testified that he did not want to object to a misstatement of two years. We cannot say that decision was not supported by reasonable professional judgment.

*Buckley IV*, at *7.

*Argument and Authorities*

288.  The state supreme court reversed the sentence imposed at the first trial based on admission of hearsay relating to "alleged prior drug activity of Buckley, for which Buckley was never charged, tried or convicted." *Buckley I*, 341 Ark. at 873, 20 S.W.2d at 337.  At the resentencing hearing, the source of the hearsay testimony, Ray, was *not* called by the State and Morgan was aware that Ray had been found to have committed perjury in the *Bragg* case because Morgan had testified in the federal proceedings in *Bragg v. Norris*, 128 F.Supp.2d at 597.  Nevertheless, prosecutor Morgan argued the substance of Ray's testimony at resentencing, argument completely outside the record and contrary to this Court's basis for reversal in *Bragg I*.  In fact, he expanded upon Ray's testimony of eight years of prior surveillance based on the two-year delay between the first trial and resentencing.

289.  There was no evidence in the record upon which Morgan based the argument and, thus, trial counsel had no strategic reason for not objecting. Even assuming Buckley was under investigation for ten years, there was no credible evidence of him engaging in drug trafficking over that period of time.  The argument was designed to inflame the passion of the jury in support of the life sentence requested by Morgan in closing. [T2, 416].

290. On direct appeal from the original trial, the supreme court found this argument sufficiently compelling to warrant reversal of the sentence and remand for a new sentencing proceeding. Consequently, there can be no mistake that the prosecutor's allusion to Petitioner's purported history of drug trafficking--not supported by evidence in the record--was prejudicial to Petitioner's right to a fair trial and sentence based only upon the extent of culpability actually proved and supporting his conviction of the two counts originally charged.

291. Moreover, based on the reversal that counsel obtained on appeal from the original proceedings, counsel here should certainly have anticipated that this line of argument would have prejudiced Petitioner's right to fair trial by leading to imposition of an excessive sentence based on the facts of the offenses upon which convictions had been obtained. Nevertheless, counsel took no prophylactic action, such as the filing of a motion in limine, or corrective action, by timely objection, to protect Petitioner from this line of prejudicial argument.

292. Of course, given the fact that the supreme court had already reversed and remanded for resentencing, counsel might well have not expected the prosecutor to engage in this improper argument and, thus, the lack of a motion in limine might be explained by counsel's reliance on the reversal to

124

induce the prosecutor not to suggest that Petitioner had a lengthy history of drug trafficking under investigation by authorities.

293. But, once the prosecutor advanced this argument, defense counsel should also have known how potentially inflammatory the allusion to an unsubstantiated history of drug trafficking could be—evidenced by the imposition of two life sentences by the jury at Petitioner's original trial—and thus could not have *reasonably* decided not to object due to a belief that the argument would not prejudice his client. The supreme court generally rejected Petitioner's claims of ineffective assistance, holding:

> Matters of trial strategy and tactics, even if arguably improvident, fall within the realm of counsel's professional judgment and are not grounds for a finding of ineffective assistance of counsel. . . . Even though another attorney may have chosen a different course, trial strategy, even if it proves unsuccessful, is a matter of professional judgment.

*Buckley IV*, at * 4 (citation omitted). The state supreme court's general approach is contrary to the requirement for effective assistance of counsel set forth in *Strickland v. Washington*, 466 U.S. 668, 689 (1984), because only objectively reasonable strategic decisions are insulated from retrospective characterization as defective in terms of counsel's performance.

294. In addressing trial counsel's explanation that he did not object because he believed the prosecution had simply misstated the number of years under

which Petitioner had been investigated. This explanation is completely incredible because regardless of the number of years for which Petitioner had supposedly been investigated, the state supreme court had held that the general reference to the uncharged, unproved activity testified to by Agent Ray at the original trial required reversed. Thus, counsel's explanation did not even address the basis for the court's reversal and remand for resentencing and did not provide an objectively reasonable strategic basis for his failure to object.

295. Further, in showing prejudice based on the failure to object, Petitioner relies on *Glover v. United States, supra*, in support of his claim that counsel's failure to object constitutes defective performance and that the sentence imposed in excess of the statutory minimum demonstrates the second prong of *Strickland v. Washington*. Petitioner relies on his argument concerning the Arkansas Supreme Court's unreasonable effort in distinguishing and not applying *Glover*—set forth in ¶¶ 227-233 herein—and incorporates that analysis in support of this claim for relief.

296. The heavy sentence imposed reflects the prejudice in counsel's failure to contest the prosecutor's claim of Buckley's long-term drug trafficking that was wholly outside the record of trial. Counsel's inexplicable failure to object constituted ineffective assistance in failing to protect Buckley from

this inflammatory argument, *Strickland and Glover, supra,* as well as failing to preserve error for appeal. *Smith v. Robbins,* 528 U.S. 259 (2000).

X.

PETITIONER WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AT THE RESENTENCING HEARING AS A RESULT OF TRIAL COUNSEL'S FAILURE TO TIMELY OBJECT TO IMPROPER QUESTIONING AND ARGUMENT BY THE PROSECUTING ATTORNEY REGARDING HIS ALLEGED DELIVERY OF DRUGS TO REGINALD BRIM LEADING TO A MURDER COMMITTED BY JOHNNY RUCKER.

*Summary of Material Facts*

297. The State offered the immunized testimony of Reginald Brim, who testified on threat of contempt and revocation of his probation if he did not testify "truthfully" [T2, 308-11], to prove that Buckley sold drugs to him [Brim], who then shared them with Johnny Rucker, who subsequently committed murder. [T2, 331-32]. This evidence was never offered at the original trial or sentencing proceeding.

298. Brim ultimately testified that he had obtained drugs from Buckley which he then shared with Rucker. [T2, 355-56]. On cross, Brim denied that Buckley had anything to do with the murder committed by Rucker. [T2, 357].

299. During his cross-examination of Buckley's character witness, Swan, Prosecuting Attorney Morgan asked:

"-surprise you to find that his own cousin got on the stand and admitted that he bought drugs from him and gave it to some person who was on a binge that killed somebody that same night?"

The witness denied knowledge of that. [T2, 403]. Then, in closing, Morgan told the jury:

> You heard his own witness, who works with people with drugs, one crack cocaine for somebody, and they can be hooked for life. It's hard to get them off. And when they go on binges–as Johnny Rucker did, when he killed Cindy Sawyer–when they go on binges, they will steal–they will do anything to get more money to go pay Gyronne Buckley his money that he lives so high on the hog on.

[T2, 415].

300.  On direct appeal, the state supreme court held that trial counsel's failure to object to the question propounded of Swan and during the closing argument failed to preserve error for appellate review. *Buckley II*, 349 Ark. at 70, 76 S.W.3d at 835.

301.  At the Rule 37 hearing, trial counsel explained that he cross-examined Brim, but stated that evidence of even unconvicted acts was admissible in the punishment phase. [T3, 269]. Counsel stated that he did not object because he thought he would be overruled. [T3, 269].

*Disposition of claim by the trial court*

302.  The court relied on its general finding that the decision not to object was a matter of strategy for trial counsel. [Exhibit A, Order, ¶ 11].

*Disposition of federal claim on appeal by state supreme court*

303.   The state supreme court combined its discussion of Petitioner's claims concerning admission of Card's testimony relating to her unsuccessful effort to discern the source of Petitioner's income without objection and the prosecutor's deliberate attempt to link Petitioner to a murder committed by another individual. The court referred to the second claim:

> . . . and the tenth point directed at Brim's testimony that related to a drug transaction where the drugs sold were then shared with the killer in a notorious murder case. These issues also included assertions that counsel failed to make objections based upon the danger of unfair prejudice outweighing the probative value of the evidence. Appellant argues as to the latter point that the evidence was so inflammatory as to violate his right to due process.

*Buckley IV*, at *6.

304.   The supreme court then referred to counsel's explanation for his failure to object to this line of evidence and argument:   "As to the transaction involving the murder, he chose instead to bring out on cross-examination that appellant was not involved with the murder." *Buckley IV*, at *6.

305.   The supreme court did not otherwise directly address the admission of Brim's testimony relating to obtaining drugs from Petitioner and the murder committed by Brim.  The remainder of the paragraph address the two points

together involving Card's testimony and Brim's testimony focusing on the former. The court specifically addressed the admission of evidence of previous drug transactions, noting "[c]ounsel's strategic decision bearing upon how to limit the prejudice of that evidence falls into the same category with that in his sixth point of error." *Buckley IV*, at *6. But the opinion never provides any definitive ruling on counsel's explanation that he did not object because he assumed the objection would be overruled.

306. However, the supreme court concluded its combined discussion of the claims relating to the Card testimony and the Brim testimony by applying its position that prejudice could not be demonstrated where Petitioner did not receive the maximum sentence. *Buckley IV*, at *6.

*Argument and Authorities*

307. The prosecutor argued that jurors should punish Buckley based on the crime committed by Rucker, who was convicted of a sensational local capital murder in Arkadelphia in which he claimed to have been high on crack cocaine at the time. *Rucker v. State*, 320 Ark. 643, 646, 899 S.W.2d 447, 448 (1995).

308. This was a deliberate strategy on Morgan's part, as he admitted in questioning witness Sullivan at the evidentiary hearing. [T3, 171: " We don't have a lot of murders. Surely somebody on the jury could possibly of

130

known that."]. The deliberate strategy to implicate Buckley in the murder committed by Rucker was wholly improper. *Walls v. State*, 336 Ark. 490, 500, 986 S.W.2d 397, 402 (1999) (sentence reversed where punishment based on offenses committed by someone in contact with the accused, but not by the accused).

309. This line of argument violated Buckley's right to due process, *Darden v. Wainwright*, 477 U.S. 168 (1986) (inflammatory argument may be so prejudicial as to violate due process). Trial counsel's failure to timely object to the interjection of this extraneous and highly prejudicial offense into Buckley's sentencing for delivery of less than one/half gram of cocaine to Livsey deprived Appellant of both a fair trial and sentencing proceeding, *Strickland* and *Glover, supra*, as well as an opportunity for review on direct appeal. *Smith v. Robbins, supra*.

310. There was no objectively reasonable strategic basis for counsel's failure to object to this improper argument or interjection of this issue in Buckley's trial. The explanation he advanced at the evidentiary hearing was that he believed even evidence of prior acts not resulting in conviction is admissible—as the court itself suggested in its opinion, *Buckley IV*, at *6— while noting that admissibility is subject to the rules of evidence.

311. The supreme court generally rejected Petitioner's claims of ineffective

assistance, holding:

> Matters of trial strategy and tactics, even if arguably improvident, fall within the realm of counsel's professional judgment and are not grounds for a finding of ineffective assistance of counsel. . . . Even though another attorney may have chosen a different course, trial strategy, even if it proves unsuccessful, is a matter of professional judgment.

*Buckley IV*, at * 4 (citation omitted). This general approach is contrary to the requirement for effective assistance of counsel set forth in *Strickland v. Washington*, 466 U.S. 668, 689 (1984), because only objectively reasonable strategic decisions are insulated from retrospective characterization as defective in terms of counsel's performance. Counsel's failure to protect Petitioner from the deliberately inflammatory nature of the prosecution's theory for punishment cannot be attributed to a reasonable strategy on this record.

312. Here, there was no showing that this attempt to link Petitioner and Brim to the murder committed by Rucker would have been admissible under any legitimate theory of evidence. There was not even any showing that Petitioner had reason to believe Brim would share drugs he purportedly obtained from Petitioner with Rucker, much less that Petitioner could have known or anticipated that Rucker would commit a murder while on drugs— even assuming that the murder was committed while Rucker was under the influence of drugs originating with Petitioner Buckley. This chain of

suppositions was simply too attenuated to be valid punishment phase evidence in a prosecution for delivery of two small quantities of cocaine— the offenses for which Petitioner had been convicted.

313. The prosecutor's admitted purpose in calling Brim to testify was to inflame the passions of jurors against Petitioner. Brim was never called at the original trial, but once the state supreme court vacated the two life sentences imposed by the first jury, the prosecutor deliberately used this strategy in an effort to again obtain maximum sentences against Petitioner.

314. The fact that the resentencing jury did not impose maximum punishment does not disprove the prejudice prong of *Strickland* predicated on counsel's apparently deliberate and incorrect decision not to object to the cross-examination of Swan or the prosecutor's closing argument linking Petitioner to the murder of Cindy Sawyer by Rucker. In fact, jurors imposed a sentence in excess of the statutory minimum and Petitioner relies on his argument that the state supreme court's disposition is wholly contrary to the Supreme Court's holding in *Glover v. United States*, 531 U.S. 198 (2001).

315. Petitioner incorporates his prior discussion of *Glover*--¶¶ 227-233, herein—in support of this claim for relief.

316. The sentence imposed in excess of the statutory minimum for these offenses demonstrates the likelihood of prejudice resulting from the

argument and trial counsel's failure to protect Appellant and the record.

*Sta6te v. Dillard*, 338 Ark. 571, 576, 998 S.W.2d 750, 753 (1999).  This

argument was so inflammatory that it constituted a violation of Petitioner's

right to due process of law under *Darden v. Wainwright, supra.*

XI.

PETITIONER WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AT THE RESENTENCING HEARING AS A RESULT OF TRIAL COUNSEL'S FAILURE TO OBJECT TO THE TRIAL COURT'S ORDER THAT PETITIONER'S SENTENCES BE SERVED CONSECUTIVELY WHERE THE COURT ABUSED ITS DISCRETION IN ORDERING CUMULATION BASED ON SPECULATION ABOUT PRIOR DRUG TRAFFICKING ACTIVITY.

*Summary of Material Facts*

317.  After the jury imposed 28 years plus a $25,000 fine on each count

[T2, 427-28], the prosecutor argued for consecutive sentencing. [T2, 429].

Counsel countered that the sentences imposed suggested that jurors intended

Buckley to serve 28 years because that figure represented a specific term.

[T2, 429], but Morgan responded that the sentences should be stacked

because of the amount of drug activity and injury to the community that had

been shown. [T2, 430].  The court stacked the sentences, [T2, 430], without

objection.

318.  On direct appeal, the court rejected the challenge to the cumulation of

sentences. *Buckley II*, 349 Ark. at 70, 76 S.W.3d at 835-36.  At the Rule 37

134

hearing, counsel stated that he understood the court had complete discretion to order consecutive sentencing. [T3, 269-270].

*Disposition of claim by the trial court*

319. The court relied on its general finding that the decision to object was a matter of strategy for trial counsel. [Exhibit A, Order, ¶ 11].

*Disposition of federal claim on appeal to state supreme court*

320. The supreme court held that this claim, along with Petitioner's Claim V, were not preserved by specific ruling by the trial court in the postconviction process. *Buckley IV*, at *3--*4.

*Argument and Authorities*

321. Counsel's failure to object to the cumulation order waived his claim on direct appeal. *Mixon v. State*, 330 Ark. 171, 954 S.W.2d 214 (1997).

322. In the postconviction process, Petitioner argued that counsel's failure to preserve error through objection to the trial court's cumulation order resulted in ineffective assistance because the failure to preserve error frustrated Petitioner's right to argue against the cumulation as a result of procedural default.

a.    *Preservation of federal constitutional claim*

323. The trial court's rejection of all federal constitutional claims asserted in the petition for postconviction relief resulted in a decision on the merits under *Harris v. Reed,* 489 U.S. 255, 262 (1989).

324. The state supreme court's disposition, rejecting review on the merits of the claim, does not constitute application of a reasonable state rule of procedural default entitled to deference and barring review of this claim in federal habeas. Petitioner incorporates herein the arguments advanced in support of Claim V on the issue of default--¶¶ 204-211—in support of this claim for relief.

b.    *Merits of the federal constitutional claim*

325. Although the court had discretion to stack the sentences under Ark. Crim. Code § 5-4-403(a), it made no findings based on evidence in the record supporting cumulation and its order represents arbitrary imposition of punishment violating the Eighth and Fourteenth Amendments to the Constitution. The jury was not instructed and did not recommend that the sentences should be served cumulatively.

326. There was no objectively reasonable strategy for trial counsel's failure to object to the cumulation order. Here, the credible sentencing evidence did not support the prosecutor's argument that cumulative sentencing was

136

justified by his claim of Buckley's criminality and there were no findings

upon which a reviewing court could have determined whether there was any

rational basis for ordering the sentences stacked. Trial counsel's failure to

preserve error permitting a constitutional attack upon the sentencing order of

the trial court in this case constituted ineffective assistance. *Smith v.*

*Robbins*, 528 U.S. 259 (2000).

XI.

PETITIONER WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL, AS GUARANTEED BY THE SIXTH AMENDMENT, AT THE RESENTENCING HEARING AS A RESULT OF TRIAL COUNSEL'S CUMULATIVE DEFICIENCIES IN PERFORMANCE.

*Disposition of claim by the trial court*

327. The court held there was no error subject to cumulation. [ADD-5; R, 018, Order, ¶ 10].

*Disposition of the federal constitutional claim by state supreme court*

328. On appeal, Petitioner preserved his federal constitutional claim and the supreme court noted:

> Appellant's last point is an argument alleging that trial counsel's errors should be considered cumulatively to determine whether counsel failed to provide effective assistance. Appellant acknowledges that we do not recognize the doctrine of cumulative error. In fact, this court has consistently refused to recognize the doctrine of cumulative error in allegations of ineffective assistance of counsel. We decline to reconsider that holding now.

*Buckley IV*, at *7.

*Argument and Authorities*

329. Arkansas does not recognize the doctrine of cumulative error on ineffective assistance claims.

330. Petitioner recognizes that the Eighth Circuit also rejects application of cumulative error analysis in reviewing claims of ineffective assistance. *E.g.,* *Scott v. Jones,* 915 F.2d 1188, 1191 (8th Cir.1990). Other jurisdictions follow this approach. *See e.g, Fisher v. Angelone,* 163 F.3d 835, 852 (4th Cir.1998); *Scott v. Jones,* 915 F.2d 1188, 1191 (8th Cir.1990); *Hunt v. State,* 940 So.2d 1041, 1071 (Ala.Crim.App. 2005); *Brown v. State,* 846 So.2d 1114, 1126 (Fla. 2003); *Garcia v. State,* 678 N.W.2d 568, 578 (N.D. 2004).

331. However, Petitioner believes that a majority of jurisdictions do apply cumulative error analysis in evaluating claims of counsel's ineffectiveness in representation. *See e.g. Dugas v. Coplan,* 428 F.3d 317, 335C (1st Cir. 2005); *Rodriguez v. Hoke,* 928 F.2d 534, 538 (2nd Cir.1991); *Moore v. Johnson,* 194 F.3d 586, 619 (5th Cir. 1999); *Williams v. Washington,* 59 F.3d 673, 682 (7th Cir.1995); *Harris ex rel. Ramseyer v. Wood,* 64 F.3d 1432 (9th Cir.1995); *Stouffer v. Reynolds ,* 168 F.3d 1155, 1163-1164 (10th Cir. 1999); *Schofield v. Holsey,,* 642 S.E.2d 56 (Ga. 2007); Cirincione v. State,  705 A.2d 96, 113  (Md. App.,1998) *State v. Gondor,* 860 N.E.2d 77 (Ohio 2006);

*Ex parte Welborn,* 785 S.W.2d 391 (Tex. Crim. App.1990); and *State v. Thiel,* 665 N.W.2d 305, 321-22 (Wis. 2003) (noting split in authority). Other courts have suggested that cumulative analysis of defective performance is appropriate. *Buehl v. Vaughn,* 166 F.3d 163, 180 (3d Cir.1999); *Seymour v. Walker,* 224 F.3d 542, 557, (6th Cir.2000).

332. Rejection of cumulation is contrary to the clear language of the Supreme Court's holding in *Strickland v. Washington,* 466 U.S. 668, 687 (1984), in which the Court specifically addressed the question of Sixth Amendment guarantee of effective assistance of counsel in terms of "showing that counsel's *errors* were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." (emphasis added). That the Court contemplated cumulative consideration of counsel's performance, as well as individual errors, is clear from the repeated reference to the plural, "errors," in the opinion. 466 U.S. at 678, 679, 682, 693, 694, 695 and 696.

333. In Petitioner's case, the cumulative errors effect of counsel's errors at resentencing compromised his right to a fair sentencing proceeding and just sentence. Buckley was denied effective assistance in the sentencing proceeding, *Glover v. United States,* 531 U.S. 198 (2001), and is entitled to relief from the sentence imposed, 28 years on two counts to be served

consecutively for delivery of less than one-half of a gram of cocaine. [T2, 282-83].

334.  Buckley preserves this claim for federal review because the Arkansas court and this Court have misinterpreted *Strickland* and relied on an unreasonable application of *Strickland* in rejecting assessment of cumulative deficiencies in counsel's performance for Sixth Amendment ineffectiveness analysis.

335.  Petitioner is entitled to federal habeas relief from the sentence imposed in this case based upon the cumulative errors demonstrating counsel's ineffectiveness in representing him at the resentencing proceeding. Because the state court's interpretation of the Sixth Amendment guarantee is contrary to the Supreme Court's holding in *Strickland*, which has been affirmed in *Smith v. Robbins, supra*, and applied to sentencing proceedings in *Glover, supra*, the Court should order relief from the sentence imposed and upheld in state appeal and postconviction proceedings against his constitutional claims.

## CONCLUSION AND PRAYER FOR RELIEF

Based on Claims I through III and supporting argument, Petitioner moves the Court issue the writ, set this cause for additional hearing, if necessary, and upon review, order relief from the convictions and judgment in this cause, and further;

Based upon Claim IV and supporting argument, Petitioner moves the Court order disclosure of the videotape of informant Livsey referenced in Claim IV for production before the Court and upon disclosure, grant Petitioner leave to amend the petition; order an evidentiary hearing, and upon hearing, grant relief from the convictions and judgment in this cause, and; further

Based upon Claims V through XII, Petitioner moves the Court issue the writ and order appropriate relief from the sentence imposed by the state court in this cause.  Petitioner prays for all appropriate relief.

Respectfully submitted,

*J. Thomas Sullivan*

J. Thomas Sullivan
Attorney for the Petitioner
Arkansas Bar No. 2006019
P.O. Box 17007
Little Rock, AR  72222
501/324-9940
501/324-9992 (FAX)

## AFFIDAVIT

STATE OF ARKANSAS }
                      } ss.
COUNTY OF PULASKI }

I, J. Thomas Sullivan, do solemnly swear and affirm, that the following information is true and correct.

I represented Gyronne Buckley in the Arkansas state courts on his direct appeal from resentencing; in filing his petition for postconviction relief under Rule 37.1; in his initial appeal from the summary denial of relief on the petition for postconviction relief; in filing his motion for leave to file the petition for writ of error coram nobis; and in petitioning the United States Supreme Court for review of the state court dispositions on direct appeal from resentencing and denial of postconviction relief. I withdrew from representation and testified as a fact witness and was also qualified as an expert witness at the hearing conducted on the Rule 37.1 petition following remand from the Arkansas Supreme Court.

I prepared the petition for writ of habeas corpus addressed to the United States District Court and have been authorized to prepare and sign this petition for habeas relief by the Petitioner, Gyronne Buckley. I am aware of the contents of this petition and familiar with the entire state trial and appellate record.

Pursuant to 28 U.S.C. § 2242, I have authority to sign this petition and state that the allegations in this petition are true and correct.

FURTHER AFFIANT SAYETH NOT.

J. Thomas Sullivan

## ACKNOWLEDGEMENT

STATE OF ARKANSAS}
                  } ss.
COUNTY OF PULASKI }

On this day before the undersigned, a Notary Public, duly qualified and acting in and for the county and state aforesaid, personally appeared J. Thomas Sullivan, known to me to be the person whose name is subscribed to in the foregoing Affidavit, and he stated that he had executed the same for the consideration and purposes therein mentioned and set forth.

IN WITNESS WHEREOF, I hereunto set my hand and seal on this 28th day of May, 2008.

_Jerre Ann Jones_
NOTARY PUBLIC

My commission expires:

_July 25, 2015_

(official seal)



IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS

GYRONNE BUCKLEY,                        §
                                        §
        Petitioner,                     §
                                        §
                                        §
        v.                              §      NO._____
                                        §
                                        §
LARRY NORRIS, DIRECTOR,                 §
ARKANSAS DEPARTMENT of                  §
CORRECTIONS,                            §
                                        §
        Respondent.                     §

PETITION FOR WRIT OF HABEAS CORPUS
PURSUANT TO 28 U.S.C. § 2254

APPENDIX

---

EXHIBIT A:      Findings and Conclusions of State Postconviction Court
                in Rule 37.1 Litigation

EXHIBIT B:      Opinion in *Buckley v. State*, 2007 WL 1509323 (Ark.)
                [*Buckley IV*]

EXHIBIT C:      Opinion in *Buckley v. State,* 2007 WL 2955980 (Ark.)
                [*Buckley V*]

EXHIBIT D:      Affidavit of Patrick Benca

EXHIBIT A:       Findings and Conclusions of State Postconviction Court
in Rule 37.1 Litigation

IN THE CIRCUIT COURT OF CLARK COUNTY, ARKANSAS
CRIMINAL DIVISION

STATE OF ARKANSAS                                        PLAINTIFF

VS.                              CR-1999-13

GYRONE BUCKLEY                                           DEFENDANT

## ORDER

On the 20th, 26, and 27th days of September, 2005, came on to be heard the Petition of the Defendant for relief and the Court having considered the testimony of the witnesses, the exhibits introduced into evidence, and the arguments of counsel, does hereby FIND and ORDER:

1. The Defendant was tried by jury on May 25, 1999 for the offense of Delivery of a Controlled Substance, Crack Cocaine, two counts, both Class Y felonies. He was represented at trial by Mr. Austin Porter, Attorney at Law. The jury returned a guilty verdict on both counts and a life sentence on both counts. The Defendant was sentenced to two life sentences, consecutive, by the Court. On June 23, 1999, the Defendant filed a Notice of Appeal and Designation of Record. On July 27, 2000, the Mandate: Reversed and Remanded was filed with the Clark County Circuit Clerk's Office on March 27, 2001, the re-sentencing portion of the was tried before a jury and the Defendant was sentenced to twenty-eight years and a $25,000.00 fine on both counts, to run

2

consecutive. The Defendant was represented by Mr. Jack Lasiter at the re-sentencing phase.

2. Officer Roy Bethell of the Arkadelphia Police Department and Officer Linda Card of the Drug Task Force testified at both the original jury trial and the re-sentencing jury trial. Officer Keith Ray of the Drug Task Force testified at the original jury trial on behalf of the State, but was not called as a witness by the State or by the defense at the re-sentencing trial.

3. The initial jury trial of the Defendant, Gyrone Buckley, was on May 25, 1999. On July 12, 1999, a hearing was held in Clark County Case No. CV-1998-25, a replevin action filed March 10, 1998, by Rodney Bragg to recover a 1987 Ford Mustang and contents, which were seized on March 1, 1994, after the vehicle was allegedly used in a drug buy on that date. The issue July 12, 1999, was whether Rodney Bragg failed to respond to a Notice of Seizure for Uncontested Forfeiture with which he was served July 29, 1994 and which resulted in an Amended Order of Uncontested Forfeiture entered July 17, 1997. The finding of Court July 12, 1999, was that Mr. Bragg failed to respond to the Notice of Seizure for Uncontested Forfeiture in a timely manner, the order entered September 2, 1994, was not timely appealed by Mr. Bragg and therefore the Defendant's Motion for Summary Judgment was granted and the replevin action was dismissed. In his written response filed October 26, 1998, to the Defendant's Motions for Summary Judgment,

CR-1999-13
State of Arkansas vs. Gyrone Buckley
Ruling

3

Mr. Bragg stated in the second paragraph that the vehicle did not belong to him on March 1, 1994, and that testimony to that effect was false and misleading.   Mr. Bragg also made that assertion at the July 12, 1999 hearing.  After the July 12, 1999 hearing, Mr. Henry Morgan, the Clark County Prosecutor, investigated Mr. Bragg's assertion and determined that the car tag, allegedly observed by Agent Keith Ray on March 1, 1994, on the 1987 Ford Mustang, was not issued until approximately twenty days later. Following his determination that Agent Ray's statement regarding the car tag was false, Mr. Morgan did not prosecute any cases in which Agent Keith Ray was a witness and did not file charges based upon Agent Ray's information

4.  The Court finds that without an investigation of the records of the Department of Finance and Administration, Motor Vehicle Section, the proof was not conclusive that Agent Ray's testimony regarding the car tag at the July 1999 trial was false.

5.  The Prosecuting Attorney, Mr. Henry Morgan, did not know of this false statement by Agent Ray until after the trial of the Defendant, Gyrone Buckley. After the Prosecutor's investigation of the motor vehicle records and determination of the facts, the Prosecutor informed the Defendant's attorney of said false statement of Agent Keith Ray prior to the re-sentencing trial of the Defendant.

CR-1999-13
State of Arkansas vs. Gyrone Buckley
Ruling

4

6. Officer Roy Bethel and Officer Linda Card testified at the original trial that they observed Mr. Livsey, a confidential informant, go to the residence of Gyrone Buckley to purchase the controlled substance. They testified that they monitored the buy by sight and observed the informant with the Defendant. The conversation between Mr. Buckley and the confidential informant was taped. The confidential informant testified at the trial and the jury heard the tape recording. These witnesses were cross-examined by the Defendant's attorney and the jury was able to judge their credibility. There was no testimony or other proof presented at the hearing on the Defendant's petition for relief that his attorney at trial, Mr. Austin Porter, was ineffective in his representation of the Defendant.

7. Considering the passage of time from May 25, 1999, to September, 2005, the Court finds that the testimony of Officer Roy Bethell and Officer Linda Card is consistent and credible. Although the Defendant has argued at all stages of this case that the officers could not have observed the Defendant and the confidential informant, the Defendant has failed to provide proof that the officers view of the scene was not as they testified at the original trial and the subsequent hearings.

8. The information of Agent Keith Ray's false statement in a 1994 report was not exculpatory information, but would certainly have been used for

CR-1999-13
State of Arkansas vs. Gyrone Buckley
Ruling

Impeachment purposes by the Defendant's Attorney. However, this evidence did not undermine the confidence in the outcome of the trial and there was no prejudice to the Defendant because the jury heard the testimony of Officer Bethell, Officer Card, and Cory Livsey and heard the tape recording and was able to judge the credibility of the evidence. The tape recording of the drug buys, which was monitored by the Officers Bethel and Card, supports the credibility of their testimony.

9.  Based upon the evidence and testimony presented in the hearing on the Petitioners request for relief, the Court finds that he was represented by counsel at the re-sentencing trial, that his attorney Mr. Jack Lassiter, knew of Agent Keith Ray's previous false statement in the 1994 report, and for strategic purposes chose not to call Agent Ray as witness. Also, for strategic purposes, Mr. Lasiter chose to leave juror Cheryl Jones on the jury because he thought she might be more prejudiced against the State. Additionally, her response to Mr. Lasiter's question was that she could be impartial. The Court finds that the petitioner has failed to provide proof that Mr. Lasiter's representation was ineffective.

10. The Court denies the Petitioner's assertion of cumulative error because there is no proof of error to accumulate.

CR-1999-13
State of Arkansas vs. Gyrone Buckley
Ruling

6

11. The Petitioner's assertion concerning counsel's decision to call or not call witnesses, and objections to evidence at trial were matters of strategy determined by the Petitioner's attorneys. Those decisions are in the discretion of each attorney and there is no evidence that any of those strategic decisions rendered their representation of the Petitioner ineffective.

Wherefore, for the reasons stated herein and the evidence produced at the hearing, the Court finds that the Petitioner's due process was not violated at trial, that the State did not willfully or intentionally suppress or withhold impeachment evidence; and there was sufficient credible evidence presented at the trial independent of Agent Ray's testimony to sustain the jury's verdict and the sentence of the Court. The petitioner's request for relief is denied.

IT IS SO ORDERED.

File for Record 20 day of Oct. DS at 11:00 Clock
Penny R/ Ross, Circuit Clerk
By Russia Hart Deputy Clerk

John A. Thomas
Circuit Judge 9-E

October 18th, 2005
Date

CR-1999-13
State of Arkansas vs. Gyrone Buckley
Ruling

EXHIBIT B:        Opinion in *Buckley v. State*, 2007 WL 1509323 (Ark.)
                  [*Buckley IV*]

Ark.,2007.
Buckley v. State
Not Reported in S.W.3d, 2007 WL 1509323 (Ark.)

Appeal from the Circuit Court of Clark County, CR 99-13; John Alexander Thomas, Judge.

PER CURIAM.

*1)In 1999, a jury found appellant Gyronne Buckley guilty of two counts of delivery of a controlled substance, for which he received a sentence of two consecutive life terms. This court reversed and remanded for resentencing. Buckley v. State, 341 Ark. 864, 20 S.W.3d 331 (2000) (Buckley I ). Appellant appealed after resentencing, and the new sentence, two consecutive terms of 336 months' imprisonment, for a total term of 672 months' imprisonment, was then affirmed. Buckley v. State, 349 Ark. 53, 76 S.W.3d 825 (2002) (Buckley II ). Appellant timely filed a petition for postconviction relief under Ark. R.Crim. P. 37.1, which was denied without a hearing. On appeal, this court reversed and remanded for hearing as to at least the first four points in appellant's petition and findings of fact as to all points. Buckley v. State, CR 04-554 (Ark. June 16, 2005) (per curiam). The trial court conducted a hearing and entered an order following that hearing that once again denied postconviction relief. Now before us is the appeal of that order.

Appellant alleges twelve points of error, as follows: (1) the trial court abused its discretion in denying relief based upon appellant's claim that two police officers, Roy Bethell and Linda Card, committed perjury, and that this misconduct, as the officers were a part of the prosecution team, was imputed to the prosecutor and violated appellant's right to due process; (2) the trial court erred in denying relief on the basis that the prosecuting attorney failed to disclose to the defense exculpatory evidence concerning conduct of a third police officer, Keith Ray, which ultimately resulted in a federal habeas proceeding determination that Officer Ray had provided material false testimony in another case; [FN1] (3) the cumulative effect of the prosecutor's failure to disclose exculpatory evidence as detailed in the first two points concerning the three police officer's testimony violated appellant's right to due process; (4) the trial court abused its discretion and erred in denying relief based upon newly discovered evidence that Officer Ray had committed perjury; (5) the trial court erred in failing to find ineffective assistance of counsel for failure to object to jury instructions, or request an instruction, so as to establish a burden of proof for extraneous offenses offered as evidence by the prosecution; (6) the trial court erred in failing to find ineffective assistance of counsel for failure to object to admission of evidence concerning a drug transaction for which appellant was not charged and involving other individuals than appellant; (7) the trial court erred in failing to find ineffective assistance of counsel for failure to object to Officer Card's testimony concerning appellant's source of income and business; (8) the trial court erred in failing to find ineffective assistance of counsel for failure to object to statements by the prosecution during closing arguments advancing a "golden rule" argument; (9) the trial court erred in failing to find ineffective assistance of counsel for

failure to object to a statement by the prosecution during closing arguments that referenced investigation of appellant for dealing drugs for a period of ten years; (10) the trial court erred in failing to find ineffective assistance of counsel for failure to object to testimony and argument concerning an alleged delivery of drugs to witness Reginald Brim that Brim testified was tied to a murder committed by Johnny Rucker; (11) the trial court erred in finding ineffective assistance of counsel for failure to object to the order that appellant's sentences run consecutively; (12) trial counsel's cumulative deficiencies amounted to ineffective assistance. The State asserts that we should summarily affirm as to appellant's third, fourth, fifth and eleventh points of error because, aside from the State's alternative arguments, appellant failed to obtain a ruling. Appellant counters as to the third and fourth point by asserting the cumulation argument was addressed by the trial court's ruling as to prosecutorial misconduct, in that the ruling addressed all arguments raised concerning prosecutorial misconduct. Appellant argues the remaining two points were addressed through the general ruling as to ineffective assistance of counsel.

FN1. In our previous opinion ordering remand for findings of fact in this case, we referenced the prosecuting attorney here as having some participation in the proceedings in Bragg v. Norris, 128 F.Supp.2d 587 (E.D.Ark.2000). Mr. Henry Morgan, the prosecutor at appellant's trial, testified during the Bragg proceedings, but was not the prosecutor who brought the charges against Mr. Bragg in Nevada County that were the subject of the Bragg proceedings. The Bragg opinion makes that clear, and our opinion did not intend to imply otherwise. To the extent such could be inferred, the result was inadvertent.

*2)
We affirm the denial of postconviction relief as to all of appellant's arguments concerning prosecutorial misconduct in his first three points on appeal, regardless of whether the trial court in fact addressed appellant's third issue, because our decision in Howard v. State, 367 Ark. 18, --- S.W.3d ---- (2006), clearly holds that claims of prosecutorial misconduct are not cognizable in a proceeding pursuant to Rule 37.1. Prior to that decision and our order remanding for findings of fact, we had disposed of a number of claims in Rule 37.1 proceedings without directly addressing that issue, and the State had conceded what was, at the time, the open possibility that we might entertain claims of prosecutorial misconduct in the form of perjury in a Rule 37.1 proceeding. Our decision in Howard now forecloses further consideration of those claims in this proceeding. A petitioner may seek relief for prosecutorial misconduct at trial, in a motion for new trial, or through error coram nobis proceedings, but not through a petition for postconviction relief under Rule 37.1.

Appellant's fourth claim alleges the trial court erred in determining relief was not merited on the basis of newly discovered evidence. Rather than prosecutorial misconduct, the basis of the claim is that the evidence of Officer Ray's misconduct, whether wrongly withheld by the prosecution or not, was not available to the defendant at trial and should justify relief. This court has held that newly discovered evidence is a direct effort to have the judgment vacated, and not a proper basis for relief under our postconviction rule. Cigainero v. State, 321 Ark. 533, 906 S.W.2d 282 (1995) (citing Chisum v. State, 274 Ark. 332, 625 S.W.2d 448 (1981)).

Appellant's fifth through eleventh points of error are claims of ineffective assistance of counsel provided by Mr. Jack Lassiter during the original appeal following the first trial and during the resentencing hearing. A different attorney, Mr. Austin Porter, Jr., represented appellant at trial. Only Mr. Lassiter's conduct is at issue here.

In an appeal from a trial court's denial of postconviction relief on a claim of ineffective assistance of counsel, the question presented is whether, based on the totality of the evidence, the trial court clearly erred in holding that counsel's performance was not ineffective under the standard set forth by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). See Jackson v. State, 352 Ark. 359, 105 S.W.3d 352 (2003). A finding is clearly erroneous when, although there is evidence to support it, the appellate court, after reviewing the entire evidence, is left with the definite and firm conviction that a mistake has been committed. Flores v. State, 350 Ark. 198, 85 S.W.3d 896 (2002). The Strickland standard is a two-part test. To prevail on a claim of ineffective assistance of counsel under this standard, a defendant must first show that counsel's performance was deficient, with errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment, and second, the defendant must also show that this deficient performance prejudiced his defense through a showing that petitioner was deprived of a fair trial. Noel v. State, 342 Ark. 35, 26 S.W.3d 123 (2000).

*3)

There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Id. The defendant claiming ineffective assistance of counsel has the burden of overcoming that presumption by identifying the acts and omissions of counsel which, when viewed from counsel's perspective at the time of trial, could not have been the result of reasonable professional judgment. Burton v. State, 367 Ark. 109, --- S.W.3d ---- (2006). The petitioner must show that, but for counsel's errors, the fact-finder would have had a reasonable doubt respecting guilt and that the decision reached would have been different absent the errors. Id.

Briefly, the evidence at trial showed that the Arkadelphia Police Department received information from a confidential informant, Corey Livsey, concerning appellant, and contacted the South Central Drug Task Force for assistance in the investigation. Two officers from the task force, Officer Card and Officer Ray, along with Officer Bethell from the Arkadelphia Police Department, conducted controlled buys from appellant at his home on two successive evenings, the 12th and 13th of January, 1999.

Officer Ray, on both occasions, took Livsey, who was wearing a body microphone to record conversations, to a location near appellant's house, searched him to be sure that he had no drugs on his person, and provided him with the cash for the purchase. Livsey testified that he made the buys using slang terms, but the tape did not contain conversation clearly indicating that a drug transaction was taking place. After the buy, Officer Ray picked Livsey up, took the drugs, and searched Livsey to be sure he no longer had the buy money.

Officers Card and Bethell observed Livsey during the purchases from a position at a nearby intersection, and Officer Card stated that she observed appellant place his hands on a rafter on the porch. During a search of appellant's house the day after the last buy, Officer Card looked in the rafters and found tweezers, aluminum foil with marijuana seeds in it, a pill bottle and sandwich bag with drug residue.

Appellant's fifth point and first claim of ineffective assistance concerns counsel's failure to request that the jury instructions include the burden of proof as to the evidence admitted concerning offenses other than those charged. At the resentencing hearing, evidence was presented that implicated appellant in drug transactions, other than the two buys conducted through Livsey that resulted in charges. On appeal of the sentencing hearing, counsel argued error based upon the failure of the jury to be instructed that the burden of proof as to these prior offenses was preponderance of the evidence.

As noted earlier, the State asserts that the trial court failed to provide a ruling on this issue and on another issue of ineffective assistance raised in appellant's eleventh point, that counsel was ineffective for failure to object to the trial court's decision to run the sentences consecutively. We do not agree that the trial court's general finding that counsel was not ineffective should suffice. The trial court did provide some additional findings as to appellant's other claims of ineffective assistance, and clearly neglected to address the issues of the jury instruction and the decision to run the sentences consecutively. Failure to obtain a ruling on an issue at the trial court level, including a constitutional issue, precludes review on appeal. See Howard, 367 Ark. at 31, --- S.W.3d at ----; Beshears v. State, 340 Ark. 70, 8 S.W.3d 32 (2000).

*4)

Appellant argues that because this case was remanded for findings of fact, we should make an exception to this rule concerning findings of fact. He also suggest that there is no procedure by which to obtain a ruling. Appellant does not develop any argument as to why remand should alter our general rule and none is apparent. This court does not research or develop arguments for appellants. Hester v. State, 362 Ark. 373, 208 S.W.3d 747 (2005). In addition, appellant is mistaken that no procedure permits him to obtain a ruling. In Beshears, this court noted that a petitioner may request the court to modify its order to include the omitted issue through a motion for reconsideration, without violation of the prohibition against rehearing in Ark. R.Crim. P. 37.2(d). Beshears, 340 Ark. at 73, 8 S.W.3d 34. We do not address the fifth and eleventh points as appellant did meet his burden to obtain a ruling on the issues.

In his next point, appellant argues that counsel at the resentencing hearing was ineffective for failure to object to evidence of a drug transaction between Livsey and Eli McGhee. Appellant acknowledges that counsel did object on the grounds of hearsay to testimony identifying McGhee's voice saying, "Gyronne told me to give you this." A limiting instruction was provided by the court concerning the hearsay, but there was no further objection to the testimony concerning admission of the transaction. Appellant argues that if the transaction did not implicate appellant as the supplier of the drugs, it was not relevant and should not have been admitted. Counsel's testimony was that he had no clear memory of any specific reason why he did not object, but that he may not have wanted to call further attention to the testimony when appellant's name was not mentioned. The trial court found that counsel's failure to object was trial strategy.

We cannot say that the trial court was clearly erroneous to determine that the failure to object was trial strategy, and further we must conclude that appellant failed to carry his burden under the second prong of the Strickland test to show prejudice. Where the trial court has determined a decision by counsel was a matter of trial tactics or strategy, and that decision is supported by reasonable professional judgment, then a decision not to call a witness or challenge a statement may not be a proper basis for relief under Rule 37.1.

Weatherford v. State, 363 Ark. 579, 215 S.W.3d 642 (2005) (per curiam). Experienced advocates might differ about when, or if, objections are called for because, as a matter of trial strategy, further objections from counsel may succeed in making the comments seem more significant to the jury. Nance v. State, 339 Ark. 192, 4 S.W.3d 501 (1999).

Matters of trial strategy and tactics, even if arguably improvident, fall within the realm of counsel's professional judgment and are not grounds for a finding of ineffective assistance of counsel. Noel, 342 Ark. at 41, 26 S.W.3d 127. Even though another attorney may have chosen a different course, trial strategy, even if it proves unsuccessful, is a matter of professional judgment. Id. The trial court here did determine that this decision was a matter of trial strategy.

*5)

When counsel was questioned, he did not have a distinct recollection of his reasons but concluded that he most likely did not want to call further attention to the testimony. Without the testimony, the jury could have determined that the evidence did not show a connection between the appellant and this particular drug sale; but, considering the sale's proximity in time and place to the transaction in which Livsey approached appellant for drugs, the weight of that evidence was properly within the jury's prerogative to determine. Judicial review of counsel's performance must be highly deferential, and a fair assessment of counsel's performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from counsel's perspective at the time. Andrews v. State, 344 Ark. 606, 42 S.W.3d 484 (2001) (per curiam). We cannot say that counsel's decision was not supported by reasonable professional judgment.

Nor did appellant meet his burden to show prejudice. The State asserts, and appellant does not contest, that the sentences received by appellant were well within the statutory range for the charges. A defendant who has received a sentence less than the maximum sentence for the offense cannot show prejudice from the sentence itself. Smith v. State, --- Ark. ----, ---S.W.3d ---- (Feb. 1, 2007) (citing Franklin v. State, 351 Ark. 131, 89 S.W.3d 865 (2002)). Under that holding, we must conclude that prejudice was not shown as a matter of law because appellant received less than the maximum sentence for the offense charged. Appellant would challenge our holding in Smith on the basis that it conflicts with the United States Supreme Court's decision in Glover v. United States, 531 U.S. 198 (2001). Yet Glover is not applicable to the case before us.

Glover concerned a defendant who attacked his sentence by a showing of deficient performance through his counsel's failure to object to an error of law affecting the calculation of a sentence. A lower court had found that the enhanced sentence did not meet a baseline standard of prejudice. In reversing the lower court's ruling, the Court specifically noted a distinction between the situation in Glover and a case where trial strategies, in retrospect, might be criticized for leading to a harsher sentence. Glover, 531 U.S. at 204. The distinction noted in Glover is precisely what is at issue here--a matter of trial strategy. There was no error in the calculation of the sentence itself; appellant argues that he would have received a less harsh sentence if his attorney had chosen a different tactic concerning the evidence submitted to the jury. Appellant would argue that the weight of this evidence in the jury's deliberations was much greater than the value attributed to it by counsel, and the prejudice flowed from the additional weight given to it.

Although, in his reply brief, appellant for the first time attempts to characterize this and other evidence as hearsay, he has not demonstrated that it was introduced without personal knowledge of the witness and, moreover, he did not raise that argument below. Clearly, as to this point, counsel did object to the testimony that was hearsay, but the objection appellant argues his attorney failed to make was not a hearsay objection. Rather than a hearsay objection that might have put into issue a deprivation of a substantive or procedural right, the objection appellant asserted in his petition was an evidentiary issue-- the balancing of probative value against unfair prejudice. Under these circumstances, we consider the fundamental fairness of the proceedings, in addition to whether the decision might have been different, and conclude that no legitimate prejudice occurred here because appellant did not receive the maximum sentence. See Williams v. Taylor, 529 U.S. 362 (2000).

*6)

Appellant's seventh and tenth points of error involve assertions that counsel failed to object to testimony, with the seventh point addressing Officer Card's efforts to establish appellant's source of income and business and the tenth point directed at Brim's testimony that related to a drug transaction where the drugs sold were then shared with the killer in a notorious murder case. These issues also included assertions that counsel failed to make objections based upon the danger of unfair prejudice outweighing the probative value of the evidence. Appellant argues as to the latter point that the evidence was so inflammatory as to violate his right to due process.

 Counsel testified that his research had shown that Officer Card's testimony and the evidence of other drug transactions were admissible during the sentencing phase. As to the transaction involving the murder, he chose instead to bring out on cross-examination that appellant was not involved with the murder. Appellant did not argue below that there was a basis for a hearsay objection to this evidence, and counsel's conclusion that the evidence was generally admissible was supported by our decision in Buckley I. In appellant's first direct appeal, we stated that evidence of his prior drug sales may be admissible during the sentencing phase, but the evidence would still be subject to the rules of evidence. Buckley I, 341 Ark. at 874-875, 20 S.W.3d 338-339. Counsel's strategic decision bearing upon how to limit the prejudice of that evidence falls into the same category with that in his sixth point of error. Once again, appellant cannot show that he was prejudiced by any error of this type because he did not receive the maximum sentence. The fact that appellant did not receive the maximum sentence also counters his argument that the evidence was so inflammatory as to violate due process.

 Appellant's eighth and ninth points allege ineffective assistance through counsel's failure to object to remarks by the prosecutor during closing arguments. Because many lawyers refrain from objecting during opening statement and closing argument, absent egregious misstatements, the failure to object during closing argument and opening statement is within the wide range of permissible professional legal conduct. Howard, 367 Ark. at 44-45, --- S.W.3d at ----. Neither remark here was such an egregious misstatement.

 The first remark by the prosecutor of which appellant complains was a statement that appellant characterizes as a "golden rule" argument. The prosecutor argued to the jury, "This man has been selling drugs--he just hasn't been caught--over, and over, and over again in Arkadelphia, Arkansas, to your friends and family." The State contends this statement was a "send-a-message" argument, rather than a "golden rule" argument, citing

Lee v. State, 340 Ark. 504, 11 S.W.3d 553 (2000). As we noted in Lee, a "golden rule" argument is an impermissible argument where the jury is implored to put themselves in the position of the victim, while a "send-a-message" argument is allowed because it urges the jury to deter criminal behavior and foster respect for the law. Id. at 517, 11 S.W.3d at 561. While the prosecutor's remark here was similar to that in King v. State, 317 Ark. 293, 877 S.W.2d 583 (1994), where the prosecution urged the jury to send a message to those who might harm the jury's own family members, and would have supported an objection, we cannot say that this was the type of misstatement that is so egregious that it requires counsel to object during closing argument.

*7)

Appellant argues that trial counsel did not make a strategic decision to withhold his objection, pointing to counsel's testimony that he believed at the time that the argument was not objectionable. Yet, even had he realized that an objection would be sustained, counsel might well have made a strategic decision not to call attention to the statement through an objection. Had counsel raised the objection, the likely result would have been a specific limiting instruction as was provided in King. An attorney may reasonably decide not to object under those circumstances, preferring not to draw attention to the remark. For that reason, appellant has not met his burden to show the omission could not have been the result of reasonable professional judgment. The action was not error under the circumstances, even if actually based upon an erroneous assumption, because it could still have been the result of reasonable professional judgment. In other words, the misstatement was not so egregious as to merit departure from our general rule concerning objections during closing arguments.

Similar reasoning leads us to the same conclusion in connection with the second contested statement by the prosecution. In appellant's ninth point, he argues that counsel should have objected when the prosecutor indicated that the drug task force had been investigating appellant's business records for over ten years. Appellant argues that the prosecutor was making substantially the same argument made during appellant's first trial that was based upon impermissible hearsay evidence. But the testimony of Officer Card during the resentencing hearing supported this argument, with the exception that the investigation had covered a period of eight years rather than ten. Counsel testified that he did not want to object to a misstatement of two years. We cannot say that decision was not supported by reasonable professional judgment.

Appellant's last point is an argument alleging that trial counsel's errors should be considered cumulatively to determine whether counsel failed to provide effective assistance. Appellant acknowledges that we do not recognize the doctrine of cumulative error. In fact, this court has consistently refused to recognize the doctrine of cumulative error in allegations of ineffective assistance of counsel. Weatherford, 363 Ark. at 589-588, 215 S.W.3d at 649- 650. We decline to reconsider that holding now.

The trial court was not clearly erroneous in denying appellant's claims of prosecutorial misconduct or newly discovered evidence, or in finding that counsel was not ineffective. Having found no reversible error in the trial court's order, we affirm the denial of postconviction relief.

Affirmed.

EXHIBIT C:       Opinion in *Buckley v. State*, 2007 WL 2955980 (Ark.)
                 [*Buckley V*]

Buckley v. State, WL 2955980 (Ark.).

Motion for Leave to File Petition for Writ of Error Coram Nobis [Clark County Circuit Court, CR 99-13].
Motion Treated as Petition to Reinvest Jurisdiction in the Trial Court to Consider a Petition for Writ of Error Coram Nobis and Denied.

PER CURIAM.
*1 In 1999, a jury found petitioner Gyronne Buckley guilty of two counts of delivery of a controlled substance, for which he received a sentence of two consecutive life terms. This court reversed and remanded for resentencing. *Buckley v. State,* 341 Ark. 864, 20 S.W.3d 331 (2000) ( *Buckley I* ). Petitioner appealed after resentencing, and the new sentence, two consecutive terms of 336 months' imprisonment, for a total term of 672 months' imprisonment, was then affirmed. *Buckley v. State,* 349 Ark. 53, 76 S.W.3d 825 (2002) ( *Buckley I* ). Petitioner next timely filed in the trial court a petition for postconviction relief under Ark. R.Crim. P. 37. 1, which was denied without a hearing. On appeal, this court reversed and remanded. *Buckley v. State,* CR 04-554 (Ark. June 16, s2005) (per curiam). The trial court conducted a hearing and once again denied postconviction relief. We affirmed. *Buckley v. State,* CR 06-172 (Ark. May 24, 2007) (per curiam).

Petitioner now brings this motion in which he requests this court grant leave to file a petition for writ of error coram nobis.[FN1] Petitioner appears to mistakenly assume that the petition would be filed in this court based upon the trial court's rulings on evidence presented in the Rule 37.1 proceedings. Upon any grant by this court of leave to proceed, a petition for the writ is filed in the trial court so that the trial court may conduct an appropriate evidentiary hearing and provide rulings based upon consideration of the issues presented by, and application of the standards appropriate to, an error coram nobis proceeding. A petition filed in this court for leave to proceed in the trial court is necessary because the circuit court can entertain a petition for writ of error coram nobis after a judgment has been affirmed on appeal only after we grant permission. *Dansby v. State,* 343 Ark. 635, 37 S.W.3d 599 (2001) (per curiam). We therefore treat petitioner's motion as a petition to reinvest jurisdiction in the trial court to consider a petition for writ of error coram nobis.

FN1. For clerical purposes, the instant motion was assigned the same docket number as the direct appeal on resentencing.

As the State notes, petitioner's pleading to this court does not address our standards for reinvesting jurisdiction in the trial court to consider a petition for writ of error coram nobis. While petitioner does not address grounds for reinvesting jurisdiction, the petition he has attached does provide the basis under which he claims he is entitled to the writ. In the interest of judicial economy, we will consider the claims for relief in the appended petition as a part of the entire petition presented to this court. Petitioner's three claims are as follows: (1) that two of the police officers that testified at petitioner's trial knowingly gave false testimony concerning their observations of petitioner; (2) that the prosecuting attorney failed to disclose information relating to a false report and perjury committed by another police officer who provided testimony at petitioner's trial; (3) that the State suppressed a videotaped statement of the informant who testified against petitioner.

Coram nobis proceedings are attended by a strong presumption that the judgment of conviction is valid. *Penn v. State*, 282 Ark. 571, 670 S.W.2d 426 (1984) (citing *Troglin v. State*, 257 Ark. 644, 519 S.W.2d 740 (1975)). The function of the writ is to secure relief from a judgment rendered while there existed some fact which would have prevented its rendition if it had been known to the trial court and which, through no negligence or fault of the defendant, was not brought forward before rendition of judgment. *Cloird v. State*, 357 Ark. 446, 182 S.W.3d 477 (2004). For the writ to issue following the affirmance of a conviction, the petitioner must show a fundamental error of fact extrinsic to the record. *Larimore v. State*, 327 Ark. 271, 938 S.W.2d 818 (1997). A writ of error coram nobis is an extraordinarily rare remedy, more known for its denial than its approval. *Larimore v. State*, 341 Ark. 397, 17 S.W.3d 87 (2000).

*2 There is no specific time limit for seeking a writ of error coram nobis, but due diligence is required in making an application for relief and in the absence of a valid excuse for delay, the petition will be denied. *Echols v. State*, 360 Ark. 332, 201 S.W.3d 890 (2005). Due diligence requires that: (1) the defendant be unaware of the fact at the time of trial; (2) the defendant could not have, in the exercise of due diligence, presented the fact at trial; (3) upon discovering the fact, the defendant did not delay bringing the petition. *Id.* Petitioner has failed to show due diligence as to his first two claims.

Petitioner's first claim is based upon his allegation that police officers Roy Bethell and Linda Card committed perjury during petitioner's trial. Officers Card and Bethell testified that they observed the confidential informant, Corey Livsey, during the drug transactions from a position at a nearby intersection, and Officer Card stated that she observed the petitioner place his hands on a rafter on the porch. Evidence admitted at trial was found in the rafters during a search following Officer Card's observation of this behavior.

Petitioner asserts that it was physically impossible for the police officers to have made these observations. He references testimony of four attorneys concerning their efforts to duplicate those observations provided during the evidentiary hearing on petitioner's Rule 37.1 petition following remand. Yet the physical condition of the location was known at the time of trial and available to petitioner to assert. In fact, trial counsel was one of the four attorneys who testified at the Rule 37.1 proceeding concerning his efforts to duplicate the observations. Counsel did attempt to impeach the officers during trial concerning their ability to observe the location, although the issue was not raised on direct appeal.

A writ of error coram nobis is appropriate only when an issue was not addressed or could not have been addressed at trial because it was somehow hidden or unknown and would have prevented the rendition of the judgment had it been known to the trial court. _Coulter v. State_, 365 Ark. 262, 227 S.W.3d 904 (2006); _Clark v. State_, 358 Ark. 469, 192 S.W.3d 248 (2004). This issue was addressed at trial.

*3 Petitioner's second claim concerns allegations that the prosecution had knowledge of perjury committed by Keith Ray, another police officer who testified at petitioner's trial. In _Bragg v. Norris_, 128 F.Supp.2d 587 (E.D.Ark.2000), the district court detailed misconduct by Officer Ray, which conduct included knowingly giving false testimony against the defendant in that case, that the court found to constitute perjury. Petitioner alleges that the basis for the allegations examined in _Bragg_ were contained in a replevin action, and that the prosecutor had received service on that action before petitioner's trial. Officer Ray's testimony was pivotal to the prosecution's case against petitioner, and petitioner claims that, had the prosecution disclosed the information concerning the replevin action, petitioner would have been able to impeach that testimony.

The *Bragg* decision was handed down in 2000. Petitioner delayed filing his request for error coram nobis relief for over six years. Petitioner argues that our prior decision to remand on the Rule 37.1 petition rejected an argument by the State that foreclosed consideration of claims of prosecutorial misconduct in Rule 37.1 proceedings and mandated such claims be raised by writ of error coram nobis. He contends that our decision in *Howard v. State*, 367 Ark. 18, --- S.W.3d ---- (2006), which holds that claims of prosecutorial misconduct are not cognizable in a proceeding pursuant to Rule 37.1, announced a new procedural rule, and that, because we had rejected the State's argument previously, he should be excused from pursuing the writ while he pursued his Rule 37.1 petition.[FN2]

> FN2. Petitioner makes this argument in a tendered reply to the State's response. As petitioner acknowledges, our rules do not provide for such a reply. While we are not therefore required to address petitioner's arguments, under the circumstances in the instant case, we elect to do so.

Petitioner is mistaken in concluding that we previously addressed any argument concerning his right to initiate a proceeding for writ of error coram nobis on claims of prosecutorial misconduct. In remanding on petitioner's Rule 37.1 petition, we specifically noted that the State conceded the possibility, at that time, that claims of prosecutorial misconduct might be brought in a Rule 37.1 proceeding. We further noted that the cases cited by the State were not controlling, as those cases did not address claims of prosecutorial misconduct. We declined to address the issue in the decision on petitioner's Rule 37.1 petition and *Howard* addressed what had been an open question concerning cognizable claims in Rule 37.1 proceedings. We did not address error coram nobis relief.

Regardless as to whether petitioner's claims were cognizable in a Rule 37.1 proceeding, he was not foreclosed from initiating a proceeding for leave to file a petition for writ of error coram nobis. As the State points out, the two proceedings are not exclusive and may be pursued simultaneously. *See, e.g., Echols*, 360 Ark. at 335, 201 S.W.3d at 892; *Dansby*, 343 Ark. at 637, 37 S.W.3d at 600; *Larimore*, 341 Ark. at 400, 17 S.W.3d at 88. Petitioner could have pursued the writ while the Rule 37.1 proceedings were pending, but elected not to do so.

*4 In his third claim, petitioner asserts that the State suppressed a videotaped statement made by the informant. Officer Card testified during the hearing on remand in petitioner's Rule 37.1 proceeding that she had videotaped a statement by Corey Livsey. That videotape was not made available to petitioner before trial, and petitioner avers that the videotape has not yet been produced, despite repeated requests. While Officer Card testified that she did not believe that the tape included any exculpatory material, the prosecutor had not been provided a copy in order to make any assessment.

Although petitioner's attempts to obtain the tape demonstrate diligence in pursuing this issue, he does not present a claim that is meritorious. This court will grant permission to reinvest jurisdiction in the trial court to consider a petition for writ of error coram nobis only when it appears that the proposed attack on the judgment is meritorious. *Echols v. State*, 354 Ark. 414, 125 S.W.3d 153 (2003). In making such a determination, we look to the reasonableness of the allegations of the petition and to the existence of the probability of the truth thereof. *Id.*

The writ is allowed only under compelling circumstances to achieve justice and to address errors of the most fundamental nature. *Pitts v. State*, 336 Ark. 580, 986 S.W.2d 407 (1999) (per curiam). We have held that a writ of error coram nobis was available to address certain errors that are found in one of four categories: insanity at the time of trial, a coerced guilty plea, material evidence withheld by the prosecutor, or a third-party confession to the crime during the time between conviction and appeal. *Pitts*, 336 Ark. at 583, 986 S.W.2d at 409. Petitioner's claim falls within the third category, but does not meet the criteria required to support such a claim in an error coram nobis proceeding.

Petitioner asserts a violation of the right to due process as guaranteed by *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). There are three elements of a *Brady* violation, as follows: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) that evidence must have been suppressed by the State, either willfully or inadvertently; (3) prejudice must have ensued. *Larimore*, 341 Ark. at 404, 17 S.W.3d at 91. As a part of our review of a decision on a petition for writ of error coram nobis that makes such a claim, we determine whether there is a reasonable probability that the judgment of conviction would not have been rendered, or would have

been prevented, had the claimed exculpatory evidence been disclosed at trial. *See Larimore,* 341 Ark. at 408, 17 S.W.3d at 94.

Because petitioner cannot show, at this time, that any exculpatory evidence was suppressed, he cannot make the required showing that his claim is meritorious. Until petitioner can point to specific exculpatory evidence in the videotape, petitioner cannot make a showing as to how the disclosure of any evidence could have prevented rendition of the judgment of conviction. We cannot say that he has as yet stated facts so as to justify reinvesting jurisdiction in the trial court to consider a petition for writ of error coram nobis on this claim.

**\*5** Motion treated as petition to reinvest jurisdiction in the trial court to consider a petition for writ of error coram nobis and denied.

Ark.,2007.
Buckley                                    v.                                      State
Not    Reported    in    S.W.3d,    2007    WL    2955980    (Ark.)

EXHIBIT D:    Affidavit of Patrick Benca

## AFFIDAVIT

STATE OF ARKANSAS}
              }ss.
COUNTY OF PULASKI}

I, Patrick Benca, do solemnly swear and affirm, that the following information is true and correct.

I represented Gyronne Buckley in his proceedings regarding a Rule 37 Petition that was filed in Clark County Circuit Court. That petition was denied and an appeal was filed. *See Buckley v. State,* CR06-172. This matter is currently pending before the Court.

At the Rule 37 hearing Linda Card testified that she recalled a videotape of the main witness in Buckley's trial. The main witness was Corey Livsey. I inquired about this videotape and was told that those files, including the videotape, were likely destroyed. When the hearing was concluded, Caran Curry, who at that time was working at the Clark County Prosecuting Attorney's Office, contacted my office and indicated that the videotape that Card referenced in her testimony was found. At that time, Henry Morgan was the Clark County Prosecuting Attorney. I made several requests for this videotape by contacting Mr. Morgan's office. To this date, I have never received a copy of this videotape.

FURTHER AFFIANT SAYETH NOT.

Patrick J. Benca

## ACKNOWLEDGEMENT

STATE OF ARKANSAS}

} ss.

COUNTY OF PULASKI}

On this day before the undersigned, a Notary Public, duly qualified and acting in and for the county and state aforesaid, personally appeared Patrick Benca, known to me to be the person whose name is subscribed to in the foregoing Affidavit, and he stated that he had executed the same for the consideration and purposes therein mentioned and set forth.

IN WITNESS WHEREOF, I hereunto set my hand and seal on this 20th day of July, 2007

_____

Notary Public

My Commission Expires:



SHERRYL BRUNO
Pulaski County
My Commission Expires
August 30, 2012

(official seal)